Tagged opinion

ORDERED in the Southern District of Florida on September 22, 2008



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| In re: | : | Case No. 08-10928-BKC-JKO |
|---|---|---|
| | : | |
| TOUSA, INC., et al. | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

ORDER GRANTING EMERGENCY MOTION FOR ENTRY OF AN ORDER
PURSUANT TO SECTIONS 363(b) AND 363(f) OF THE BANKRUPTCY CODE
APPROVING THE DEBTORS' ENTRY INTO FIRST AMENDMENT TO LOT
PURCHASE AND SALE AGREEMENT WITH PHILIP FREY, JR., AS TRUSTEE OF
THE FREY LIVING TRUST AND SALE OF PROPERTY PURSUANT THERETO

**THIS MATTER** came before the Court for hearing on September 17, 2008, upon TOUSA Homes, Inc. ("TOUSA Homes") and its affiliated debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (collectively, the "Debtors") Emergency Motion to Approve the Debtors' Entry Into First Amendment to Lot Purchase and Sale Agreement with Philip Frey, Jr., as Trustee of the Frey Living Trust and Sale of Property Pursuant Thereto (the "Motion") [DE 1437]. After reviewing the Debtors' Motion and its Post Hearing Brief in Support

of the Motion [DE 1798] and Meadow Run at Palm City, LLC's ("Zuckerman") Objection to Debtors' Proposed Sale of Lots in Fox Grove and Memorandum of Law in Support [DE 1393], the Supplemental Brief in Opposition to Debtors' Motion [DE 1775], the Post Hearing Brief in Opposition to Debtors' Motion [DE 1795] and the Reply to Debtors' Post Hearing Brief [DE 1800], I conclude that the Motion should be granted.

The Debtors seek the authority of the Court under 11 U.S.C. § 363 to enter into a sale agreement for the sale of 20 residential lots located in the community known as Meadow Run, which is located in Martin County, Florida (the "Property"). The Debtors' propose to sell the Property in bulk for $3 million, which amounts to $150,000 for each parcel.

TOUSA Homes is a party to an agreement with Zuckerman (the "Zuckerman Contract'). *See* "Exhibit D" attached to the Motion. Section 3 of the Zuckerman Contract provides that "TOUSA [Homes] hereby agrees that for so long as Zuckerman owns any Lots within the Property, TOUSA [Homes] shall not sell any Lot within the Property for a purchase price of less than $325,000.00." The Zuckerman Contract is not recorded, however this is not dispositive as TOUSA Homes was a party to the Zuckerman Contract and thus has always had notice of the restrictive covenant. *See S. Motor Co. v. Carter-Pritchett-Hodges, Inc (In re MMH Automotive Group, LLC)*, 385 B.R. 347, 367-68 (Bankr. S.D. Fla. 2008).

For this analysis I accept the proposition that violation of a restrictive covenant under Florida law generally entitles its beneficiary to injunctive relief. *See Autozone Stores, Inc. v. Northeast Plaza*, 934 So.2d, 670, 673 (Fla. 2d DCA 2006). Zuckerman's right is not avoidable as the restrictive covenant creates a non-monetary property interest under Florida law and thus is not a "claim" under the Bankruptcy Code. *In re Willets*, 262 B.R. 552, 555-56 (Bankr. N.D. Fla. 2001);

*Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir. 1994). Further, a restrictive covenant generally creates an interest in property that would prevent me from permitting a § 363 sale free and clear of all liens, claims and encumbrances as sought by the Debtors here. *See Silverman v. Ankari (In re Oyster Bay Cove, Ltd.)*, 196 B.R. 251, 255 (E.D. N.Y. 1996); *Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir. 1994). However, Florida law renders the restriction here unenforceable because it is unreasonable, thus permitting the Debtor to sell the Property free and clear under section 363.

Under Florida law, unreasonable restraints on alienation of property are unenforceable. *See, e.g., Igehart v. Philips*, 383 So. 2d 610, 614-15 (Fla. 1980). Absolute restrictions on a homeowner's right to sell are inapplicable under the law and are against public policy. *Davis v. Geyer*, 9 So.2d 727, 151 Fla. 362 (Fla.1942). In determining the validity of restraints on alienation, Florida courts look primarily to whether the terms of a restrictive covenant are "of such duration that they prevent the free alienation of property." *Igehart*, 383 So. 2d *at* 614. "When determining the validity of restraints on alienation, courts must measure such restraints in terms of their duration, type of alienation precluded, or the size of the class precluded from taking." *Camino Gardens Ass'n, Inc. v. McKim*, 612 So.2d 636, 639 (Fla. 4th DCA 1993). *See also Metro. Dade County v. Sunlink Corp.*, 642 So.2d 551 (Fla. 3d DCA 1992);

It is understandable, as argued by Zuckerman at the September 17th hearing, that as a small "mom and pop" shop in comparison to the market share TOUSA holds, Zuckerman required certain restraints on TOUSA so as to ensure a competitive market. This makes practical sense in a burgeoning market, where the market could sustain such a limitation on alienation. However, given the current economic downturn and the debilitating effects it has had on the real estate markets, this restrictive covenant has morphed into a mechanism by which Zuckerman has indentured the Debtors

to indefinitely maintain their ownership of the Property. The result is the Debtors' inability to sell the Property while Zuckerman has free reign to market and sell his parcels at the deteriorating market rate, thus creating a tremendous competitive edge.

As the Debtors state, "a result of the tumultuous real estate market, the contractual floor established in 2006 is now radically above what the market will bear: the proposed Sale Agreement, which the Debtors believe reflects a fair price after appropriate marketing, contemplates a sale price of $150,000 per lot." *See* Motion at ¶ 10. I take this representation to be true. I have been provided with no substantive evidence to contradict the reasonable value of the proposed sale, which is supported by the Creditors Committee. Based on the current state of the housing and land markets in Florida, there is nothing on the record to suggest that this bulk sale valuation of $150,000 per unit is unreasonable and/or an attempt to undercut the market. It is necessarily the case that bulk sales result in a discount of the per unit price. Zuckerman argues that the proposed price of this sale is not commensurate with the actual value of the Property. As support for this assertion, Zuckerman alleges that the "only Lot sale in the last year was approximately $300K . . ." *See* n1 in [DE 1775]. This statement is telling in that there has been only one sale of any of the lots in this development over the past year and that the closing price was still at least $25,000 under what the restrictive covenant would allow.

To permit Zuckerman such control over the Debtors' ability to alienate the Property, especially in light of the extent and severity of the real estate market crisis, is in direct opposition to Florida law prohibiting the unreasonable restraints on alienation of real property. As it stands, the softening market, combined with the restrictive covenant, has the actual effect of allowing Zuckerman to prevent the alienation of the Property with no sight in end. The real estate market

could and very likely will take years to return to the heady valuations of 2005 - 2006. It is therefore likely that enforcement of the restrictive covenant would completely prevent TOUSA from disposing of the Property for years to come. To require TOUSA to bear the carrying costs with no ability to sell the Property is counter to the long standing proposition that land needs to be reasonably alienable. Thus, equity must intervene in this matter and render the restrictive covenant unenforceable. *See In re Walker*, 2008 WL 1781181, Case No. 07-14797 (Bankr. S.D. Fla. 2008) (applying Florida law to authorize a debtor to sell property free and clear of a restrictive covenant because such covenant permitted non-debtor party to reject a buyer of the debtor's property for any reason and for an indefinite period of time).

Further, Florida case law provides that under certain circumstances the nature of a restrictive right is so impractical given material intervening events, that enforcing it would be unjust. In *Port St. Joe Dock & Terminal Railway Co. v. Fred Maddox*, 140 Fla. 110 (Fla. 1939), the Court held that it would be inequitable to enforce a restrictive covenant relating to a price floor on structural development because of certain changed circumstances. Specifically, the sales agreement entered into by the parties provided that the land could only be developed for "residential purposes" and it further prevented the buyer from building a residence on the property if the value of any finished construction appraised at an amount less than $3,500. *Id*. at 111 & 116. Over the intervening thirteen years from the execution of the restrictive covenant agreement, the make-up of the area had become predominately industrial, thereby severely diminishing the residential attributes and amenities once offered in that locality. *Id*. at 114-16. The Florida Supreme Court affirmed the lower court's ruling which disallowed the enforceability of the contractual restriction based in part on the fact that the price floor was well above what the now-industrial neighborhood could bear. *See also*

*Osius v. Barton*, 109 Fla. 556, 563 (Fla. 1933)(internal citations omitted) (holding that it has, "been uniformly held that where the equitable enforcement of building restrictions would be oppressive and unreasonable because of an entire change in the circumstances and in the neighborhood of the property, and the character of the improvements and the purposes to which they are applied, equity may refuse to enforce observance of the restrictions, and leave the parties to their action at law").

Although the intervening facts are quite different in *Port St. Joe Dock* and *Osius*, which revolve around the change in the community make-up – a transition from residential to industrial – the legal principles involved apply here. Succinctly stated, restrictive rights are enforceable unless intervening circumstances render the covenant unfeasible and thus unenforceable. The restrictive covenant in this matter is premised on maintaining a competitive market. However, the collapse of the Florida residential real estate market over the past year has had the effect of transforming the competitive pricing restriction into a *de facto* prohibition on alienation. The restrictive covenant is therefore unenforceable.

One might argue that the property markets will recuperate; after all, Florida real estate markets have gone through boom and bust many times before. But it is now completely unclear as to when the markets will reach a level which could sustain a $325,000 sale minimum for the property at issue. It could and very likely will take years. Under Florida law, this uncertainty in duration is far from *de minimis* and renders enforcement of the restrictive covenant inequitable. This is not to say that regular real estate market swings would necessarily render such a covenant unenforceable. The same can be said for once-residential areas that have become industrial: There is always the possibility that the industrial area may revert at some point back to a residential community.

However, that prospect is purely conjectural and, given the circumstances now present, equity will invalidate the restrictive covenant before me.

There has been a drastic change in the Florida real estate market since the Zuckerman Contract was entered into by the parties. As the Debtors state "[u]nder the circumstances, and given that the Property has been marketed for two years and TOUSA Homes is simply unable to find a buyer at the minimum sale price established in the contract provision, it would be unreasonable to enforce that [restrictive covenant and] . . . .forego the highest and best offer received to date." *See* ¶ 3 in [DE 1798]. As the balance of equity both under Florida and bankruptcy law support this assertion, I will grant the sale of the Property under 11 U.S.C. § 363.

Accordingly, it is **ORDERED** that the Debtors' Motion [DE 1437] is **GRANTED**.

###

Copies furnished to:

Paul Steven Singerman
200 Biscayne Boulevard, Suite 1000
Miami, FL 33131

Alan J. Perlman
350 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301

Attorney Singerman is directed to serve a conformed copy of this order on all interested parties not listed above.