

**ORDERED in the Southern District of Florida on January 29, 2010.**

**John K. Olson, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) Chapter 11 Cases |
| | ) Case No. 08- 10928-JKO |
| TOUSA, INC., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**ORDER UNDER 11 U.S.C. §§  105(a), 363 AND 365 AND FED. R. BANKR.**
**P. 2002, 6004, 6006 AND 9014 (I) APPROVING ASSET PURCHASE**
**AGREEMENT WITH STARWOOD LAND VENTURES, L.L.C., (II)**
**AUTHORIZING (A) SALE OF SUBSTANTIALLY ALL FLORIDA ASSETS OF**
**TOUSA HOMES INC. AND TOUSA HOMES FLORIDA, L.P. FREE AND**
**CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B)**
**ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES AND (C) ASSUMPTION OF**
**CERTAIN LIABILITIES AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated November 30, 2009 [D.E. #3355] (the "Sale Motion"),[1] of

the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking,

among other things, entry of an order (the "Sale Order") pursuant to sections 105, 363 and 365 of

_____

[1]  Capitalized terms used and not otherwise defined shall have the meanings ascribed to them in the Sale
Motion or Agreement (as defined below), as applicable

title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") (A) authorizing and approving the sale (the "<u>Sale</u>") of the Property (as defined in the Agreement (defined below) (together, the "<u>Sellers</u>") free and clear of all liens, claims, interests and encumbrances (other than Permitted Liens and Assumed Liabilities), in accordance with the terms of the Agreement of Purchase and Sale, dated as of October 20, 2009 (the "<u>Original Agreement</u>"), as amended by the First Amendment to Agreement of Purchase and Sale, dated November 19, 2009 (the "<u>First Amendment</u>"), and by the Second Amendment to Agreement of Purchase and Sale, dated January 20, 2010 (the "<u>Second Amendment</u>", and together with the Original Agreement and the First Amendment, the "<u>Agreement</u>") by and among Sellers and Starwood Land Ventures, L.L.C. (the "<u>Buyer</u>"), a copy of which is annexed to the Sale Motion as Exhibit A; (B) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases pursuant to the Agreement (the "<u>Contracts</u>"); (C) authorizing Buyer's assumption of certain liabilities of Sellers (the "<u>Assumed Liabilities</u>"); and (D) granting related relief;

WRHjr

 The Court having entered an order on December 21, 2009 [D.E. #3432] (the "<u>Bidding Procedures Order</u>"), authorizing Sellers to solicit and consider offers for the Property and conduct the Auction in accordance with the terms and conditions of the Bidding Procedures and approving, *inter alia,* (i) Sellers' Bidding Procedures, (ii) the form and manner of notice of the Auction and Sale Hearing and (iii) the Contract Notice;

 The Auction having occurred on January 22, 2009 in accordance with the Bidding Procedures Order, and Buyer having committed to the highest and best offer for the Property of $81,000,000, with Paulson RERF Acquisition Corp. ("<u>Paulson</u>") being selected as the Back-Up Bidder at a purchase price of $80,500,000; and

2

A hearing on the Sale Motion having been held on January 29, 2010 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion and attachments thereto, (ii) all objections, responses, and comments relating to the Sale Motion, the Sale, or the assumption and assignment of the Contracts, (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of Sellers, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing and all other pleadings and proceedings in these cases, including the Sale Motion; and after due deliberation thereon; and good cause appearing therefore,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

      A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and this matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.    The statutory predicates for the relief requested herein are sections 105(a), 363(b), (f), (m) and (n) and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.

      C.    As evidenced by the affidavits of service filed with the Court, proper, timely, adequate and sufficient notice of the Sale Motion, the Agreement (without schedules and exhibits), the Bidding Procedures Order, the Bidding Procedures, the Auction, the Sale Hearing

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as applicable, in accordance with Fed. R. Bankr. P. 7052. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated into this Sale Order to the extent not inconsistent herewith.

and the assumption and assignment of the Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and the Bidding Procedures Order.  Further, as evidenced by the affidavit of publication filed with the Court [D.E. #3945], the Sale Notice was published in the Naples Daily News, Tampa Tribune, Florida Times-Union, South Florida Sun-Sentinel, St. Petersburg Times, Palm Beach Post, Miami Herald, Orlando Sentinel, South Florida Business Journal and/or Wall Street Journal, among others, in accordance with Bankruptcy Rules 2002(l) and 9008.  Such notice was good, sufficient, and appropriate under the particular circumstances and no other or further notice of the Sale Motion, the Sale Hearing, or entry of this Sale Order is or shall be required.

D.     A reasonable opportunity to object or be heard with respect to the Sale and the relief granted by this Sale Order has been afforded to all interested persons and entities, including:  (i) the official committee of unsecured creditors appointed in Sellers' chapter 11 bankruptcy cases (the "Committee"); (ii) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, including but not limited to all such taxing authorities or recording offices in the jurisdictions in which Sellers have offices or other facilities or in which any of the Property is located; (iii) all parties having expressed within the past six (6) months a bona fide interest in acquiring the Property; (iv) all entities (or counsel therefor) known to have asserted any lien, claim, encumbrance, right of refusal, or other interest in or upon Sellers or the Property; (v) the United States Attorney's Office; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the United States Trustee for the Southern District of Florida; (vii) all counterparties (collectively, the "Counterparties") to the Contracts, (viii) counsel to the agent for the Debtors' prepetition first lien facilities, (ix) counsel to the agent for the Debtors'

prepetition second lien facility, (x) counsel to the *ad hoc* group of lenders, assignees or participants with respect to the Debtors' prepetition second lien facility, (xi) the indenture trustee for each of the Debtors' outstanding bond issuances; and (xii) all parties who have filed notices of appearance and requests for pleadings in these chapter 11 cases.

       E.     Sellers have demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code outside of a chapter 11 plan exist in that, among other things, (a) there is substantial risk of deterioration of the value of the Property if the sale is not consummated quickly; (b) the Agreement constitutes the highest or best offer received for the Property; (c) the Agreement and the Closing (as defined in the Agreement) represent the best opportunity to maximize the value of the Property; and (d) unless the sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

       F.     The Sale reflects the exercise of Sellers' sound business judgment. Approval of the Agreement and the consummation of the Sale contemplated thereby are in the best interests of Sellers, their estates, their creditors and all other parties in interest.

       G.     The Debtors and their professionals (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Property, and (ii) afforded interested potential purchasers a full, fair and reasonable opportunity to conduct due diligence and submit offers prior to the Bid Deadline. As of the Bid Deadline, the Sellers received offers for the Property from the Buyer, Paulson and RyanDune JV LLC.

H.     As evidenced by Sellers' extensive marketing efforts, the consideration provided by Buyer for the Property pursuant to, and the other terms of, the Agreement (i) are fair and reasonable, (ii) are the highest or otherwise best offer for the Property, (iii) will provide a greater recovery to Sellers' estates than would be provided by any other practical available alternative and (iv) constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

I.     Subject only to entry of this Sale Order, Sellers have (i) full corporate or other appropriate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate or other appropriate action of Sellers, (ii) all of the corporate or other appropriate power and authority necessary to consummate the transactions contemplated by the Agreement, (iii) taken all corporate or other appropriate action necessary to authorize and approve the Agreement and the consummation of the Sale by such Sellers, and no consents or approvals, other than those expressly provided for in the Agreement, are required for Sellers to consummate such transactions.

J.     The transfer of the Property by Sellers to Buyer is or will be a legal, valid and effective transfer of the Property and vests or will vest Buyer with good title to the Property free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery,

6

claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of Sellers or Sellers' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of Sellers' chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including any rights, claims or causes of action based on theories of transferee or successor liability under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof, or the District of Columbia (other than as expressly provided in the Agreement with respect to Permitted Liens and Assumed Liabilities; collectively, "Liens, Claims, Interests and Encumbrances") with such Liens, Claims, Interests and Encumbrances to attach to the proceeds of the Sale in the same priority as existed prior to the Closing.  Except as specifically provided in the Agreement or this Sale Order, Buyer shall not assume or become liable for any Liens, Claims, Interests and Encumbrances relating to the Property being sold by Sellers.  The transfer of the Property by Seller to Buyer, however, shall be subject to the terms and conditions of permits issued by the St. Johns River Water Management District and South Florida Water

Management District that pertain in any way to the properties transferred to or acquired by the Buyer or the projects and water management works/systems permitted and the Buyer shall accept the transfer of, be bound by and required to comply with all St. Johns River Water Management District and South Florida Water Management District Environmental Resource Permits (ERP), Water Use (WU) permits, Surface Water Management Permits and Consumptive Use Permits (CUP). The Buyer's obligations shall include, but not be limited to, timely providing required certifications signed and sealed by licensed Florida Professional Engineers (P.E.) and mitigation monitoring reports, timely correcting all permit compliance deficiencies and violations, timely completing/submitting all permit conversion/transfer forms and timely responding to any Requests for Additional Information (RAI). Additionally, the Buyer and the Property transferred shall be subject to the full force and effect of the St. Johns River Water Management District Regulations, Title 40C, Florida Administrative Code, the South Florida Water Management District's Regulations, Title 40E, Florida Administrative Code, conservation easements, water management maintenance easements, Chapter 373, Florida Statutes, and both the St. Johns River Water Management District's and South Florida Water Management Districts' regulatory authority and jurisdiction.

           K.     The transfer of the Property to Buyer free and clear of all Liens, Claims, Interests and Encumbrances will not result in any undue burden or prejudice to any holders of any Liens, Claims, Interests and Encumbrances as all such Liens, Claims, Interests and Encumbrances of any kind or nature whatsoever shall attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property. All persons having Liens, Claims, Interests or Encumbrances of any kind or nature whatsoever against, on, or in any Seller or the Property shall be forever barred, estopped and

permanently enjoined from pursuing such claims or asserting such liens, interests or encumbrances against Buyer, any of its assets, property, successors or assigns, or the Property, other than with regard to the Permitted Liens and Assumed Liabilities.

L.    Buyer would not have entered into the Agreement and would not consummate the Sale contemplated thereby if the sale of the Property, the assignment of the Contacts to Buyer, and the assumption of the Assumed Liabilities by Buyer, were not free and clear of all Liens, Claims, Interests and Encumbrances, other than with regard to the Permitted Liens and Assumed Liabilities, or if Buyer would, or in the future could, be liable for any Liens, Claims, Interests, or Encumbrances other than the Permitted Liens and Assumed Liabilities.

M.    Other than with regard to the Permitted Liens and Assumed Liabilities, Sellers may sell the Property free and clear of all Liens, Claims, Interests and Encumbrances because, in each case, one or more of the standards set forth in section 363(f) and 365(f) of the Bankruptcy Code have been satisfied.   Those holders of Liens, Claims, Interests and Encumbrances and Counterparties to Contracts who did not object or who withdrew their objections to the Sale, entry of this Sale Order, and/or the assumption and assignment of any Contract are deemed to have consented pursuant to sections 105 and 363(f)(2) of the Bankruptcy Code.   Those holders of Liens, Claims, Interests and Encumbrances and Counterparties to Contracts who did object, but fall within one or more of the other subsections of section 363 or 365 of the Bankruptcy Code, are adequately protected by being paid or by having their claims, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they claim Liens, Claims, Interests or Encumbrances, in the same order of priority that existed prior to the Sale and subject to all objections, counterclaims, recoupments, setoffs, and other defenses of Sellers' estates.

N.      Sellers have demonstrated that it is an exercise of their sound business judgment to assume and assign the Contracts to Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Contracts is in the best interests of Sellers, their estates and their creditors.  The Contracts being assigned to, and the liabilities thereunder being assumed by, Buyer are an integral part of the Sale and, accordingly, such assumption and assignment of the Contracts and the post-Closing Date liabilities thereunder are reasonable and enhance the value of Sellers' estates.

O.      Buyer has (i) cured and/or has provided adequate assurance of prompt cure of any default existing prior to the Closing Date under any of the Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any party other than Sellers for any actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of Buyer's future performance of and under the Contracts following the Closing Date within the meaning of 365(b)(l)(C) of the Bankruptcy Code.

P.      The terms and conditions of the Agreement are fair and reasonable and were negotiated in good faith and at arm's-length and without collusion.  Buyer is not affiliated with any of Sellers, is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code, and is a Buyer in good faith of the Property and, thus, is entitled to the protections afforded a good faith Buyer by section 363(m) of the Bankruptcy Code.  In the absence of a stay pending appeal, Buyer will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time after the entry of this Sale Order and cause has been shown as to why this Sale Order should not

be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).  Neither Sellers nor Buyer have engaged in any conduct that would cause or permit the Agreement and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code.

Q.    The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of Buyer and Sellers and/or Sellers' estates, there is not substantial continuity between Buyer and Sellers, there is no common identity between Sellers and Buyer, there is no continuity of enterprise between Sellers and Buyer, Buyer is not a mere continuation of Sellers or their estates, and Buyer does not constitute a successor to Sellers or their estates.  Accordingly, the transfer of the Property to Buyer and assumption and assignment to, and assumption by Buyer of, the Contracts and Assumed Liabilities will not subject Buyer to any liability with respect to the operation of the Property prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of successor or transferee liability.

R.    The sale of the Property outside of a chapter 11 plan pursuant to the Agreement neither impermissibly restructures the rights of Sellers' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for Sellers.  The sale does not constitute a *sub rosa* chapter 11 plan.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.    The Sale Motion is granted in its entirety, as further described herein.

2.    All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and to the extent that objections to the Sale Motion or the relief

requested therein have not been withdrawn, waived, or settled, such objections and all reservations of rights included therein are overruled on the merits.  Those parties who did not object, or who withdrew their objections, to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

## Approval of the Agreement

3.      The terms and conditions of the Agreement, including, without limitation, all Exhibits and Schedules thereto, and the Sale of the Property contemplated thereby, are hereby authorized and approved in all respects, pursuant to sections 105(a), 363(b) and 365(f) of the Bankruptcy Code.

4.      Pursuant to sections 105(a), 363(b),(f),(m) and (n) and 365(f) of the Bankruptcy Code, and subject to the other provisions of this Sale Order, Sellers are hereby authorized, directed and empowered to (a) fully perform under, consummate and implement the terms of the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale contemplated thereby and (b) take all further actions as may reasonably be requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring to Buyer, or reducing to possession any or all of the Property, Contracts, or Assumed Liabilities, or as may be necessary or appropriate to the performance of Sellers' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.  Sellers' obligations under the Agreement shall constitute administrative expenses of Sellers' estates under sections 503(b) and 507(a)(i) of the Bankruptcy Code.

5.      Nothing contained in any chapter 11 plan confirmed in these cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of

the Agreement or this Sale Order, and to the extent of any conflict or derogation between or from this Sale Order or the Agreement and such future plan or order, the terms of this Sale Order and the Agreement shall control to the extent of such conflict or derogation.

## Transfer of Property

6.      Pursuant to sections 105(a), 363(f) and 365(f) of the Bankruptcy Code, upon the closing of the Agreement, the Property shall be transferred to Buyer free and clear of all Liens, Claims, Interests and Encumbrances, except for the Assumed Liabilities and Permitted Liens, with all such Liens, Claims, Interests and Encumbrances to attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property.

7.      Except to the extent expressly included in the Permitted Liens or Assumed Liabilities, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, Sellers, the Debtors, the Committee, all debt security holders, equity security holders, Sellers and Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Interest, or Encumbrance of any kind or nature whatsoever against, in or with respect to any of Sellers or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Property, the operation of Sellers' business prior to the Closing Date or the transfer of the Property to Buyer, shall be forever barred and estopped from asserting, prosecuting or otherwise pursuing such Lien, Claim, Interest, or Encumbrance, whether by payment, setoff, or otherwise, directly or indirectly, against Buyer or any affiliates, successors or assigns thereof and each of their

respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity) or the Property.

8.    The transfer of the Property to Buyer shall be a legal, valid, and effective transfer of the Property, authorized pursuant to the Bankruptcy Code, and shall vest Buyer with all right, title, and interest of Sellers in and to the Property free and clear of all Liens, Claims, Interests and Encumbrances (other than the Permitted Liens and Assumed Liabilities). Following the Closing, except with respect to the Permitted Liens and Assumed Liabilities, no holder of any Lien, Claim, Interest, or Encumbrance on, in, or against the Property may interfere with Buyer's use and enjoyment of the Property based on or related to such Lien, Claim, Interest or Encumbrance, or any actions that the Debtors may take in their chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Sale Order.

9.    Upon the occurrence of the Closing, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Property acquired by Buyer under the Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Property to Buyer.

10.   If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens, Claims, Interests or Encumbrances on, in, or against Sellers or the Property shall not have delivered to Sellers before the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, Interests, or Encumbrances that the person or entity has with respect to Sellers or the Property or otherwise,

14

then with regard to Property purchased by Buyer pursuant to the Agreement and this Sale Order, (a) Sellers are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property and (b) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Interests or Encumbrances on, in, or against the Property of any kind or nature whatsoever (other than the Permitted Liens and Assumed Liabilities).

11.    To the fullest extent available under applicable law, as now in effect or as may in the future be in effect, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of Sellers with respect to the Property, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date.  The transfer of the Property by Seller to Buyer, however, shall be subject to the terms and conditions of permits issued by the St. Johns River Water Management District and South Florida Water Management District that pertain in any way to the properties transferred to or acquired by the Buyer or the projects and water management works/systems permitted and the Buyer shall accept the transfer of, be bound by and required to comply with all St. Johns River Water Management District and South Florida Water Management District Environmental Resource Permits (ERP), Water Use (WU) permits, Surface Water Management Permits and Consumptive Use Permits (CUP).  The Buyer's obligations shall include, but not be limited to, timely providing required certifications signed and sealed by licensed Florida Professional Engineers (P.E.) and mitigation monitoring reports, timely correcting all permit compliance deficiencies and violations, timely completing/submitting all

permit conversion/transfer forms and timely responding to any Requests for Additional Information (RAI). Additionally, the Buyer and the Property transferred shall be subject to the full force and effect of the St. Johns River Water Management District Regulations, Title 40C, Florida Administrative Code, the South Florida Water Management District's Regulations, Title 40E, Florida Administrative Code, conservation easements, water management maintenance easements, Chapter 373, Florida Statutes, and both the St. Johns River Water Management District's and South Florida Water Management Districts' regulatory authority and jurisdiction.

<u>**Assumption and Assignment of Contracts**</u>

12.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, subject to and conditioned upon the Closing of the Sale and on the terms set forth in and as limited by the Agreement, the Bidding Procedures Order and herein, Sellers' assumption and assignment of the Contracts to Buyer, and Buyer's assumption of such Contracts are hereby approved, and the requirements of section 365 of the Bankruptcy Code with respect to the Contracts are determined to have been satisfied. Accordingly, Sellers are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code and the Agreement to (a) assume and assign to Buyer, effective upon the Closing of the Sale, the Contracts free and clear of all Liens, Claims, Interests and Encumbrances, other than the Permitted Liens and Assumed Liabilities, (b) assign to Buyer, effective upon the Closing of the Sale, the Assumed Liabilities, which Buyer shall assume subject to all objections, claims, counterclaims, rights of setoff or recoupment, and other defenses of Sellers with respect to such Assumed Liabilities and (c) execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Contracts and the Assumed Liabilities to Buyer and such assumptions and assignments shall be deemed to have occurred on the Closing Dale without further order of the Court.

13.    The Contracts shall be transferred to, and remain in full force and effect for the benefit of Buyer and the relevant Counterparties to the Contracts.  The Contracts shall be assigned to Buyer, in accordance with their respective terms, notwithstanding any provision in any Contract or in any applicable law (including those of the type described in sections 365(b)(l) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions in any way such assignment or transfer, including, without limitation, change of control, payment or liabilities triggered by the sale of the Property or any portion thereof.  Each Counterparty to a Contract shall be forever barred from asserting any claims arising on or before the date of this Sale Order against Sellers, Buyer or its affiliates, or property of any of them, with respect to such Contract, and, absent any defaults by Buyer subsequent to the date hereof, each such Counterparty is hereby directed to perform all of its obligations under the Contract.

14.    At Closing, or as promptly as practicable thereafter, and in accordance with the Agreement, Buyer shall deliver to the Counterparties to the Contracts, an amount of cash equal to the applicable Cure Amounts thereunder as determined by the Bankruptcy Court pursuant to the procedures and limitations established by the Bidding Procedures Order.

15.    The Cure Amounts required to be paid under section 365 of the Bankruptcy Code shall be fixed at the amounts listed in the attached Exhibit A (as may have been revised by agreement among Sellers and the Counterparty to any such Contract) subject to adjustment for any amounts already paid by Sellers to a Counterparty in respect of amounts listed in the Contract Notice or on the attached Exhibit A.

16.    Sellers and Buyer are authorized, but not directed, to enter into agreements (each an "Assignment Agreement") with Counterparties with respect to the terms of assignment, including without limitation, adequate assurance of future performance and the appropriate Cure

17

Amount or payment of other arrearages, applicable to such Counterparties' Contract without further Court approval. Notwithstanding anything else in this Sale Order to the contrary, with respect to the Contracts, the appropriate Cure Amount or other arrearages and any additional adequate assurance commitment from Buyer set forth in an Assignment Agreement shall be binding. Each Assignment Agreement is incorporated herein by reference.

17.    Nothing in this Sale Order, the Sale Motion, or in any notice or any other document is or shall be deemed an admission by Sellers that any Contract is an executory contract or unexpired lease or must be assumed and assigned pursuant to the Agreement or in order to consummate the Sale.

18.    Each Counterparty to a Contract hereby is forever barred, estopped and permanently enjoined from asserting against Sellers or Buyer, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.

19.    The failure of Sellers or Buyer to enforce at any time one or more terms or conditions of any Contract shall not be a waiver of such terms or conditions, or of Sellers' and Buyer's rights to enforce every term and condition of such Contract.

20.    Nothing in this Sale Order, the Sale Motion, or in any notice or any other document shall prejudice the rights of Sellers and Buyer to file additional motions seeking assumption and assignment of additional contracts or unexpired leases upon appropriate notice to the counterparty to each additional contract or unexpired lease placed upon any such supplemental list.

21.    Notwithstanding anything to the contrary in this Sale Order, at any time prior to the Closing Date and upon agreement with Buyer, Sellers may remove any executory

contract or unexpired lease from the list of Contracts irrespective of whether a Counterparty to such executory contract or unexpired lease received a notice of Sellers' intent to assume and assign and/or a Contract Notice (as defined in the Bidding Procedures Order) (the "Removed Contracts").  Such removals shall be effective upon Sellers' filing of the list or lists of Removed Contracts with the Court.  Sellers shall promptly provide notice of such removal(s) to the Counterparties to such Removed Contracts.  The assumption, rejection or assignment of such Removed Contracts shall be the subject of a separate motion and/or further order of the Court.

<u>**Additional Provisions**</u>

22.    The consideration provided by Buyer for the Property under the Agreement (a) is and shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia and (b) is fair and reasonable, and neither the consideration nor the Agreement may be avoided or voided under section 363(n) or any other provision of the Bankruptcy Code or applicable non-bankruptcy law.

23.    On the Closing Date of the Sale, each of Sellers' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its liens, claims interests or encumbrances on or in the Property, if any, as the same may have been recorded or may otherwise exist.

24.    This Sale Order shall be effective immediately and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the

duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property. Each such person, entity, governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

25.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Property sold, transferred or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Agreement.

26.    Any and all assessment liens and assessments of Community Development Districts established under Chapter 190 of the Florida Statutes shall not be affected in any way by this Order, or any subsequent sale order, or any associated sale, and shall constitute Permitted Liens that shall remain on the Property after the Property is conveyed to Buyer at the Closing. Further, any and all assessment liens and assessments of Community Development Districts established under Chapter 190 of the Florida Statutes shall be kept current both prior to and at the time of Closing, except as otherwise specifically provided to the contrary in Section 5(f) of the Agreement as it pertains to the Live Oak Community. Nothing herein shall be construed to limit a Community Development District's right to move for relief from stay in order to collect delinquent assessments or to otherwise enforce an assessment lien.

27.    As contemplated under the Second Amendment, Sellers are authorized to resolve all disputes with respect to the ADT Agreements, including, without limitation, payment of $250,000 in full and final satisfaction of termination costs related to the ADT Agreements.

20

28.      For purposes of determining Sellers' liabilities for postpetition amounts due and owing pursuant to sections 5(g) and 15(d) of the Agreement, the date on which all such liabilities will be determined shall be February 1, 2010; *provided*, *however*, that such amounts will be adjusted at a later date based on the actual Closing Date.

29.      This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, the Agreement (including any and all amendments thereto, any waivers and consents thereunder), and each of the agreements, documents and instruments executed in connection therewith, in all respects, and to decide any disputes concerning this Sale Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Property and any Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Property free and clear of all Liens, Claims, Interests and Encumbrances.

30.      In the absence of a stay pending appeal of this Sale Order, if Buyer consummates the Sale at any time after entry of this Sale Order, then with respect to the Sale, including any assumption and assignment of any Contracts that are assumed and assigned pursuant to this Sale Order, Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

31.    The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

32.    Any agreements authorized by this Sale Order, including the Agreement and any related agreements, documents or other instruments may be entered into, modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement has no material adverse effect on Sellers' estates or creditors.

33.    The terms and provisions of the Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon Sellers, Buyer and their respective affiliates, successors and assigns, including, without limitation, any trustee, responsible person, estate administrator, representative or similar person appointed for or in connection with Sellers' estates or affairs in these cases or in any subsequent case under the Bankruptcy Code involving any Seller and any affected third parties including, but not limited to, (i) all Counterparties to the Contracts that are assumed and assigned pursuant to this Sale Order; (ii) all creditors with respect to the Assumed Liabilities to be assumed by Buyer pursuant to the Agreement and (iii) all persons asserting a claim against or interest in Sellers' estates or any of the Property to be sold to Buyer pursuant to the Agreement.  Without limiting the generality of the foregoing, any entity providing financing to Buyer shall be entitled to enforce the provisions of this Sale Order with respect to the release of any Liens, Claims, Interests, or Encumbrances against, on, or in the Property.

34.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Property are hereby directed to surrender possession of the Property to Buyer on the Closing Date.

35.     Notwithstanding anything to the contrary contained in Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed for 14 days after its entry, but rather, shall be effective and enforceable immediately upon its entry and its provisions shall be self-executing and the Sale Motion shall be deemed to provide sufficient notice of Sellers' request for relief from such stay.  Buyer and Sellers are authorized to take all actions and enter into any and all agreements that they deem necessary or appropriate with respect to the Sale as authorized by this Sale Order, provided that such action or agreement is consistent with the relief authorized herein.

36.     Except solely to the extent Buyer assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Property by Buyer or its affiliates, nor the subsequent use by Buyer or its affiliates of any of the Property previously operated by Sellers, will cause Buyer or any of its affiliates to be deemed a successor or successor developer in any respect to Sellers' businesses within the meaning of any foreign, state or local revenue, pension, ERISA, tax, labor, condominium or homeowner association or environment law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations) or under any products liability law or doctrine with respect to Sellers' liability under such law, rule or regulation or doctrine.

37.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein.

38.    The provisions of this Sale Order are nonseverable and mutually dependent without written consent of Buyer.

### 

```
Page 2 of 25 edited in chambers to correct
reference to exhibit in [DE 3355].

                    -WRHjr for JKO
```

Submitted by:

**BERGER SINGERMAN, P.A.**
Paul Steven Singerman (Florida Bar No. 378860)
200 South Biscayne Boulevard, Suite 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340

    -and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (New York Bar No. 420712)
M. Natasha Labovitz (New York Bar No. 2813251)
Joshua A. Sussberg (New York Bar No. 4316453)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900

*Co-Counsel to the Debtors*

Copies to:
Paul Steven Singerman
*(Attorney Singerman shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*

## **Exhibit A**

**Cure Amounts**

**Exhibit A**

| | Debtor Entity | Other Contractual Party | Type of Contract | Cure Amount | Assignee |
|---|---|---|---|---|---|
| 1. | TOUSA Homes, Inc. | Aquatic Systems, Inc. | Maintenance Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 2. | TOUSA Homes, Inc. | B&C Development of Duval, Inc. | Contract of Sale | $0.00 | Starwood Land Ventures, L.L.C. |
| 3. | TOUSA Homes, Inc. | Lindemann Bentzon Bojack Engineering (f/k/a Lindenmann Bentzon Engineering Company, Inc.) | Engineer Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 4. | TOUSA Homes, Inc. | Residential Planners, Inc. | Service Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 5. | TOUSA Homes, Inc. | BSB Design of Florida, Inc. | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 6. | TOUSA Homes, Inc. | TWH Architect | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 7. | TOUSA Homes, Inc. | TWH Architect | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 8. | TOUSA Homes, Inc. | TWH Architect | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 9. | TOUSA Homes, Inc. | Bloodgood Sharp Buster | Architect Agreement | $2,053.88 | Starwood Land Ventures, L.L.C. |
| 10. | TOUSA Homes, Inc. | Beaumont & Associates, Inc. | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 11. | TOUSA Homes Florida, L.P. | Bigwater Partners, LLC | Assignment and Assumption of Developer's Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 12. | TOUSA Homes Florida, L.P. | Independence Land Development 23 LLC | Post Closing Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 13. | TOUSA Homes Florida, L.P. | Independence Apartments LLC | Agreement | $0.00 | Starwood Land Ventures, L.L.C. |

| | | | | |
|---|---|---|---|---|
| 14. | TOUSA Homes Florida, L.P. | Bigwater Partners, LLC | Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 15. | TOUSA Homes Florida, L.P. | Independence Apartments LLC | Escrow Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 16. | TOUSA Homes, Inc. | City of Daytona Beach | Common Area Improvement Agreement | $928.19 | Starwood Land Ventures, L.L.C. |
| 17. | TOUSA Homes, Inc. | Southeast Florida Cable, Inc. dba Adelphia Cable Communications | Access Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 18. | TOUSA Homes, Inc. | Walsh Engineering, Inc. | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 19. | TOUSA Homes, Inc. | Walsh Engineering, Inc. | Architect Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 20. | TOUSA Homes, Inc. | BSB Design of Florida, Inc. | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 21. | TOUSA Homes, Inc. | Bloodgood Sharp Buster Architects & Planners of Florida, Inc. | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 22. | TOUSA Homes, Inc. | Bloodgood Sharp Buster Architects & Planners of Florida, Inc. | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 23. | TOUSA Homes, Inc. | Quincy Johnson Jones Myott Williams Architects | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 24. | TOUSA Homes, Inc. | Quincy Johnson Jones Myott Williams Architects | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 25. | TOUSA Homes, Inc. | Quincy Johnson Jones Myott Williams Architects | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 26. | TOUSA Homes, Inc. | Simpad, LLC | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 27. | TOUSA Homes, Inc. | Quincy Johnson Jones Myott Williams Architects | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 28. | TOUSA Homes Inc. | Randall Stofft Architects | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 29. | TOUSA Homes, Inc. | J.A.O. Architects & Planners | Architectural Services | $0.00 | Starwood Land Ventures, L.L.C. |
| 30. | TOUSA Homes, Inc. | CW Capital Fund One, LLC | Construction Agreement | $0.00 | Starwood Land Ventures, L.L.C. |

| 31. | TOUSA Homes, Inc. | Walsh Engineering, Inc. | Master Agreement - Subcontractor | $0.00 | Starwood Land Ventures, L.L.C. |
|-----|------------------|------------------------|----------------------------------|-------|-------------------------------|
| 32. | Tousa Homes, Inc. | Monterra Community Development District | Continuing Disclosure Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 33. | Tousa Homes Florida, LP | Hammocks Community Development Agreement | Developer Funding Agreement 2006 | $0.00 | Starwood Land Ventures, L.L.C. |
| 34. | Tousa Homes, Inc. | Islands at Doral III Community Development District | Assignment and Assumption No. II | $0.00 | Starwood Land Ventures, L.L.C. |
| 35. | Tousa Homes, Inc. | Islands at Doral III Community Development District | Assignment and Assumption No. I | $0.00 | Starwood Land Ventures, L.L.C. |
| 36. | Tousa Homes, Inc. | Islands at Doral III Community Development District | Assignment and Acquisition Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 37. | Tousa Homes, Inc. | Islands at Doral III Community Development District | True Up Agreement | $0.00 | Starwood Land Ventures, L.L.C. |
| 38. | Tousa Homes, Inc. | Islands at Doral III Community Development District | Continuing Disclosure Agreement | $0.00 | Starwood Land Ventures, L.L.C. |