

**ORDERED in the Southern District of Florida on July 14, 2010.**

**John K. Olson, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) Chapter 11 Cases |
| | ) Case No. 08- 10928-JKO |
| TOUSA, INC., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**ORDER PURSUANT TO SECTIONS 105(a), 363, 365, 503 AND 507 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 (A)
APPROVING BIDDING PROCEDURES, BREAK-UP FEE AND EXPENSE
REIMBURSEMENT PURSUANT TO AGREEMENT OF PURCHASE AND SALE
AMONG TOUSA HOMES, INC., ENGLE SIERRA VERDE P5, LLC AND BEACON
HILL AT MOUNTAIN'S EDGE, LLC AND PAULSON RERF ACQUISITION CORP.
FOR THE SALE OF SUBSTANTIALLY ALL ASSETS IN THE WESTERN REGION;
(B) SCHEDULING HEARING TO CONSIDER APPROVAL OF SALE; (C)
APPROVING FORM AND MANNER OF NOTICE OF SALE; (D) APPROVING FORM
AND MANNER OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
<u>CONTRACTS AND UNEXPIRED LEASES; AND (E) GRANTING RELATED RELIEF</u>**

Upon the motion, dated June 28, 2010 [D.E. # 5691] (the "Motion"),[1] of the above-

captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking, among other

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in
the Motion or Agreement (as defined below), as applicable.

things, entry of an order (the "Bidding Procedures Order") pursuant to sections 105, 363 and 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (A) approving the bidding procedures, in substantially the form annexed to the Motion as Exhibit 1 to Exhibit B (the "Bidding Procedures"), to be employed in connection with the proposed sale (the "Sale") of the Property (as defined in the Agreement (defined below)) of TOUSA Homes, Inc., Engle Sierra Verde P5, LLC and Beacon Hill at Mountain's Edge, LLC (collectively, the "Seller"), including, without limitation, the Break-up Fee (as defined below) in accordance with the terms of the Agreement of Purchase and Sale, dated as of March 4, 2010 (as amended from time to time, the "Agreement") by and among the Seller and Paulson RERF Acquisition Corp. (the "Buyer"), a copy of which is annexed to the Motion as Exhibit B; (B) scheduling a hearing to consider approval of the Sale (the "Sale Hearing"); (C) approving the form and manner of the notice of the Bidding Procedures and auction (the "Auction") and Sale Hearing, substantially in the form annexed to the Motion as Exhibit C (the "Sale Notice"); (D) approving the form and manner of the notice of the assumption and assignment of the Contracts, substantially in the form attached to the Motion as Exhibit E (the "Contract Notice"); and, (E) granting related relief;

And the Court having determined at the hearing held on July 13, 2010 (the "Hearing") that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties-in-interest;

And upon the record of the Hearing; and the Court having considered all of the evidence presented, testimony adduced and arguments of counsel made at the Hearing; and after due deliberation thereon, and good cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[2]

A.       This Court has jurisdiction over this matter and over the property of Seller and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334;

B.       This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M) and (O);

C.       Good and sufficient notice of the relief sought in the Motion has been given in accordance with Bankruptcy Rules 2002(a)(2), (1), (i) and (k) and 6004(a), and no other or further notice is or shall be required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the proposed Bidding Procedures, the Break-up Fee and the other relief sought by the Motion) has been afforded to all parties-in-interest;

D.       The (i) Bidding Procedures, (ii) proposed Sale Notice and (iii) proposed notice and procedures with respect to Seller's assumption and assignment to Buyer of the Contracts, as described or referred to in the Agreement, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice thereof;

E.       The Bidding Procedures annexed hereto as Exhibit 1 are fair, reasonable and appropriate and are designed to maximize the recovery on Seller's Property;

F.       Seller has demonstrated a sound business justification for authorizing the payment of the Break-up Fee to Buyer under the circumstances, timing and procedures set forth in the Motion.  The Break-up Fee was negotiated by the parties in good faith and at arms' length and payment of the Break-up Fee, in accordance with the terms set forth in the Agreement, is fair and

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as applicable, in accordance with Bankruptcy Rule 7052.

reasonable and is tied to the reasonable external and internal expenses and lost opportunity costs incurred by Buyer;

G.    Buyer reserves the right to assert that payment of the Break-up Fee to Buyer, in accordance with the terms set forth in the Agreement, and as described in open Court at the Hearing, constitutes (a) an actual and necessary cost and expense of preserving Seller's estates within the meaning of Bankruptcy Code section 503(b), (b) of substantial benefit to Seller's estates, (c) reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by Buyer notwithstanding that the proposed Sale is subject to higher or better offers and (d) necessary to ensure that Buyer will continue to pursue its proposed acquisition of the Property;

H.    Seller agreed to pay the Break-up Fee, in accordance with the conditions set forth in the Agreement, in order to induce Buyer to hold open its offer to enter into the Agreement and purchase the Property.  Buyer is unwilling to hold open its offer to purchase the Property in accordance with the Agreement, unless it is assured payment of the Break-up Fee in accordance with the conditions set forth in the Agreement.  Such assurance to Buyer has had the effect of promoting and not chilling competitive bidding, inducing Buyer's bid that otherwise would not have been made, and without which bidding would have been and would continue to be limited. Further, assuring Buyer that it will receive the Break-up Fee if certain conditions set forth in the Agreement are met has induced Buyer to research Seller's businesses and submit a bid which will serve as a minimum or floor bid for all of the Property on which all other bidders may rely, thus increasing the likelihood of receiving the maximum value of the Property;

I.    Absent authorization of the payment of the Break-up Fee in accordance with the terms of the Agreement, Seller may be unable to maximize the value of the Property.  In light of

the benefits to Seller's estate realized by having a fully negotiated Agreement, the expense and risk incurred by Buyer in reaching such Agreement, and the size of the Break-up Fee in relation to the value of the transaction, ample support exists for this Court to authorize Seller to pay the Break-up Fee; and

J.      The entry of this Order is in the best interests of Seller, each of the Debtors, and their respective estates, creditors and all other parties-in-interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.      This Bidding Procedures Order constitutes the Bankruptcy Court's finding of facts and conclusions of law pursuant to Bankruptcy Rule 7052.

2.      The relief requested in the Motion is granted to the extent set forth herein.

3.      All objections to entry of this Bidding Procedures Order or to the relief provided herein and in the Motion that have not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby overruled in all respects on the merits.

### Bidding Procedures

4.      The Bidding Procedures annexed hereto as Exhibit 1 and incorporated into this Bidding Procedures Order are hereby approved.  The Debtors, including Seller, are authorized and directed to act in accordance with the Bidding Procedures, which shall be binding upon all parties-in-interest in these cases.

5.      Any Qualified Bidder desiring to submit a Bid for the Property shall submit it in accordance with the Bidding Procedures not later than 5:00 p.m. (Eastern time) on August 12, 2010 (the "Bid Deadline").    The Auction, if necessary, shall be held on

August 20, 2010, at the time and place provided for, and in accordance with, the Bidding Procedures.

6.      Payment of the Break-up Fee shall be made by Seller prior to or contemporaneously with the consummation of a Competing Transaction, or as otherwise required under the Bidding Procedures.  The Break-up Fee obligation of Seller shall be payable solely from the proceeds from a Competing Transaction; provided, however, that in the event the closing of a Competing Transaction does not yield cash proceeds sufficient to pay the Break-up Fee to Buyer, then Buyer reserves the right to seek payment of the Break-up Fee as an administrative expense of Seller's estate under sections 503(b) and 507(a) of the Bankruptcy Code.

7.      For the avoidance of doubt, no Expense Reimbursement shall be payable under any provision of the Agreement, including Sections 11(b), 16(a) and 17(m).

**Sale Hearing**

8.      The Sale Hearing shall be held before this Court on August, 25 at 1:30 p.m. (Eastern time), or as soon thereafter as counsel and interested parties may be heard.  The Sale Hearing may, with the consent of Buyer, be adjourned from time to time, without further notice to creditors or parties-in-interest other than by announcement of such adjournment before this Court or on this Court's calendar on the date scheduled for such hearing.

**Objections**

9.      Objections, if any, to the Sale, including objections with respect to the proposed Cure Amount (defined below), if any, and adequate assurance of future performance of obligations to counterparties to executory contracts and unexpired leases to be assumed and assigned to Buyer must (a) be in writing; (b) set forth the nature of the objector's claims against

6

or interests in Seller's estate, and the basis for the objection and the specific grounds therefor; (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules and Orders of this Court; (d) be filed with the Court and served upon Seller, Buyer, the Committee, Citicorp North America, Inc. (the "First Priority Agent"), in its capacity as the Administrative Agent under (i) the Second Amended and Restated Revolving Credit Agreement, originally entered into on March 6, 2002 and amended at various times and (ii) the First Lien Term Loan Credit Agreement, dated as of July 31, 2007 by and amongst TOUSA, Inc. and its various debtor subsidiaries and the lender parties thereto and the United States Trustee for the Southern District of Florida, so as to be RECEIVED no later than 5:00 p.m. (Eastern time) on August 18, 2010 (the "Objection Deadline"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale or the consummation and performance of the Agreement.

**Notice**

10.    The Sale Notice, Publication Notice and the Contract Notice are hereby approved in all respects.

11.    Notice of the Bidding Procedures, the Auction, the Sale Hearing and the remainder of the relief requested in the Motion, as described in the Motion, shall be good and sufficient notice thereof, and any requirements for other or further notice shall be waived and dispensed with pursuant to Bankruptcy Rules 2002, 6004, 6006 and 9007 and pursuant to this Court's powers under section 105 of the Bankruptcy Code, if not later than July 20, 2010, Seller shall have caused a copy of the Motion, this Bidding Procedures Order, the Bidding

Procedures and the Agreement (without Schedules and Exhibits) to be served on the following persons by first class mail with postage prepaid or by hand delivery:  (i) the Committee and the First Priority Agent; (ii) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, including but not limited to all such taxing authorities or recording offices in the jurisdictions in which Seller has offices or other facilities or in which any of the Property is located; (iii) all parties having expressed within the past six (6) months a bona fide interest in acquiring substantially all of the Property; (iv) counsel for Buyer; (v) all entities (or counsel therefor) known to have asserted any lien, claim, encumbrance, right of refusal, or other interest in or upon Seller or the Property; (vi) the United States Attorney's Office; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the United States Trustee for the Southern District of Florida; (x) all counterparties to the Contracts; (xi) counsel to the agent for the Debtors' prepetition first lien facilities; (xii) counsel to the agent for the Debtors' prepetition second lien facility; (xiii) counsel to the *ad hoc* group of lenders, assignees or participants with respect to the Debtors' prepetition second lien facility; (xiv) the indenture trustee for each of the Debtors' outstanding bond issuances; and (xv) all parties who have filed notices of appearance and requests for pleadings in these chapter 11 cases.  Parties-in-interest can obtain copies of the non-confidential Schedules and Exhibits to the Agreement by contacting the Debtors' claims and noticing agent, Kurtzman Carson Consultants, LLC at 866-381-9100.

12.    As soon as practicable after entry of this Bidding Procedures Order, but in no event later than July 26, 2010, Seller shall cause the Sale Notice to be published, at Seller's expense, in the *Arizona Republic*, *Las Vegas Review Journal*, *Denver Post*, *Rocky Mountain*

*News*, *Los Angeles Times* and/or *Wall Street Journal*, pursuant to Bankruptcy Rules 2002(l) and 9008. Such notice, together with the notice prescribed in paragraph 10 above, is good and proper notice to all interested parties, including those whose identities are unknown to Seller.

## Assumption and Assignment of Executory Contracts and Unexpired Leases

13.     As soon as practicable after entry of this Bidding Procedures Order, but in no event later than July 20, 2010, Seller shall serve the Contract Notice on the counterparties to the Contracts, the Committee, the First Priority Agent and the United States Trustee.  The Contract Notice shall contain the following information (a) the title of the Contract to be assumed, (b) the name of the counterparty to the Contract, (c) any applicable cure amounts, whether arising prepetition or postpetition (the "Cure Amount"), (d) the identity of the proposed assignee, (e) the proposed form of order approving the assumption and assignment of the Contract and (f) the deadline by which any such Contract counterparty must object.

14.     Any counterparty to a Contract who does not file an objection to the assumption and assignment of such Contract after having received actual or constructive notice of such assumption and assignment shall be deemed to have waived and released any right to assert an objection to the assumption and assignment of any Contract and to have otherwise consented to such assumption and assignment and such Cure Amount and shall be forever barred and estopped from asserting or claiming against Seller or Buyer (or the Successful Bidder or any other assignee of the relevant Contract) that any additional amounts are due or conditions to assumption and assignment must be satisfied under such Contract for the period prior to the date of the Sale Hearing and, absent any subsequent defaults by Buyer.

9

15. A properly filed and served objection to a Contract Notice shall reserve such objecting party's rights against Seller with respect to the relevant cure objection, but shall not constitute an objection to the remaining relief requested in the Sale Motion.

**Miscellaneous**

16. Seller is hereby authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established by this Bidding Procedures Order.

17. This Bidding Procedures Order shall be binding upon, and inure to the benefit of Seller, Buyer and their respective successors and assigns, including any chapter 7 or 11 trustee or other fiduciary appointed for Seller's estate whether in the above-captioned cases, subsequent bankruptcy cases or upon dismissal of any of Seller's bankruptcy case.

18. Notwithstanding Bankruptcy Rules 6004 and 6006, this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

19. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20. To the extent this Order is inconsistent with the Motion, or with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

21.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order, including, but not limited to the right to amend this Bidding Procedures Order.

#   #   #

Submitted by:

**BERGER SINGERMAN, P.A.**
Paul Steven Singerman (Florida Bar No. 378860)
200 South Biscayne Boulevard, Suite 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340

        -and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (New York Bar No. 4207122)
M. Natasha Labovitz (New York Bar No. 2813251)
Joshua A. Sussberg (New York Bar No. 4316453)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900

*Co-Counsel to the Debtors*

Copies to:
Paul Steven Singerman
*(Attorney Singerman shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*

**Exhibit 1**

## Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the Agreement of Purchase and Sale, dated as of March 4, 2010 (as amended from time, to time, the "Agreement"), by and among TOUSA HOMES INC., a debtor-in-possession ("Seller"), and PAULSON RERF ACQUISITION CORP. ("Buyer"), concerning, among other things, the sale, conveyance, assignment and transfer of the Property (the "Sale"); *provided*, that Buyer reserves the right to further comment on the form of the order of the Bankruptcy Court approving the Bidding Procedures. The Sale is subject to competitive bidding only as set forth herein (the "Bidding Process") and approval by the Bankruptcy Court at a hearing under sections 105, 363 and 365 of the Bankruptcy Code (the "Sale Hearing"). The following Bidding Procedures and related bid protections are designed to reimburse Buyer for its efforts and agreements to date and to facilitate a full and fair process designed to maximize the value of the Property for the benefit of Seller's estate and creditors.

## "Stalking Horse"

Buyer has been designated by Seller to be the "stalking horse" bidder for the proposed transactions contemplated by the Agreement.

## Participation Requirements

In order to participate in the Bidding Process, each person or entity (each, a "Potential Bidder") other than Buyer, which is and shall be deemed to be a Qualified Bidder for all purposes, must deliver (unless previously delivered) to Seller:

(i)      An executed confidentiality agreement provided by Seller, which shall be no more favorable in the aggregate to the Potential Bidder than that delivered by Buyer;

(ii)     Current audited financial statements of (A) the Potential Bidder, or (B) if the Potential Bidder is an entity formed for the purpose of acquiring the Property of Seller, current audited financial statements of the equity holder(s) of the Potential Bidder who shall either guarantee the obligations of the Potential Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement reasonably acceptable to Seller and its advisors; and

(iii)    A preliminary (non-binding) proposal regarding (a) the purchase price range, (b) any assets expected to be excluded, (c) the structure and financing of the transaction (including the amount of equity to be committed and sources of financing), (d) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals, (e) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (f) the nature and extent of additional due diligence it may wish to conduct.

As promptly as practicable after a Potential Bidder delivers all of the materials required by subparagraphs (i), (ii), and (iii) above, Seller, in consultation with the statutory committee of

unsecured creditors appointed in the Chapter 11 Case (the "Committee") and with Citicorp North America, Inc. (the "First Priority Agent"), in its capacity as the Administrative Agent under (i) the Second Amended and Restated Revolving Credit Agreement, originally entered into on March 6, 2002 and amended at various times and (ii) the First Lien Term Loan Credit Agreement, dated as of July 31, 2007 by and amongst TOUSA, Inc. and its various debtor subsidiaries and the lender parties thereto, shall determine whether the Potential Bidder is a Qualified Bidder, and shall notify the Potential Bidder and Buyer of such determination. After Seller notifies the Potential Bidder that it is a Qualified Bidder, Seller shall provide to the Qualified Bidder (i) access to the same confidential evaluation materials provided by Seller to Buyer containing financial information and other data relative to the Property and/or such other information as the Qualified Bidder may reasonably request (provided, that all such additional information shall also be provided to Buyer); (ii) the results of Buyer's investigations, studies, tests, memoranda, analyses and other work product to the extent that Buyer in Buyer's sole discretion has elected to give Seller such results; and (iii) a copy of the Agreement, marked to delete references to the Break-up Fee (as defined below), which is payable only to Buyer and Section 17(m) on exclusivity, which is applicable only to Buyer.

Due Diligence

Only Qualified Bidders may conduct due diligence and only until the Bid Deadline (as defined below). Due Diligence access may include management presentations as may be scheduled by Seller, access to physical and online data rooms, on-site inspections and such other matters which a Qualified Bidder may reasonably request and as to which Seller, in its reasonable exercise of discretion, may agree. Seller will designate employee(s) or other representative(s) to coordinate all reasonable requests for additional information and due diligence access from a Qualified Bidder. If any Qualified Bidder receives any information related to the Property from Seller not theretofore given to Buyer, Seller shall within twenty-four (24) hours provide Buyer with such information. Seller may, in its discretion, coordinate due diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or on-site inspections. Neither Seller nor any of its affiliates (or any of their respective representatives) are obligated to furnish any information relating to the Property to any person other than to Qualified Bidders who make an acceptable preliminary proposal. Qualified Bidders are advised to exercise their own discretion before relying on any information regarding the Property provided by anyone other than Seller or its representatives. It is expressly understood and agreed to between the parties that the results of Buyer's investigations, studies, tests, memorandums, analysis and other work product are strictly confidential; provided, however, that if Buyer, in Buyer's sole discretion, elects to give such results to Seller, Seller shall have the right to disclose any information regarding the results of Buyer's investigations, studies, tests, memorandums, analysis and any other work product to any Potential Bidder.

Bid Deadline

All Bids (as defined below) must be submitted to Seller c/o Lazard Frères & Co. LLC, 190 South LaSalle Street, 31st Floor, Chicago, Illinois 60603, Fax: 312-407-6620 (attn: Sachin Lulla), so as to be received not later than 5:00 p.m. (Eastern Time) on August 12, 2010 (the "Bid

2

Deadline"), which Bid Deadline shall in any event be no later than thirty (30) days following the date on which the Bidding Procedures Order has been entered. Copies of all Bids shall simultaneously be provided by facsimile transmission, electronic mail, personal delivery or reliable overnight courier service in accordance with Exhibit F to counsel to Buyer, counsel to the Committee and counsel to the First Priority Agent. For purposes of the Agreement, "Bid" shall mean one or more letters from a Qualified Bidder stating that (i) such Qualified Bidder offers to purchase all or substantially all of the Property upon the terms and conditions set forth in a copy of the Agreement, together with all Exhibits and Schedules thereto (the "Definitive Sale Documentation"), marked to show those amendments and modifications to the Definitive Sale Documentation, including, but not limited to, price and the time of closing, that such Qualified Bidder proposes, (ii) such Qualified Bidder is prepared to enter into and consummate the transaction within not more than eleven (11) days after entry by the Bankruptcy Court of the Sale Order, and (iii) each such Qualified Bidder's offer is irrevocable until the closing of a purchase of all or substantially all of the Property.

Qualified Bids

Only Qualified Bids will qualify for consideration at the Auction (as defined below). A Bid received from a Qualified Bidder will constitute a "Qualified Bid" only if such Bid includes the documents and meets the requirements set forth below. In particular, a "Qualified Bid" is a Bid that:

(i)    is received by the Bid Deadline (as may be extended, as described below);

(ii)    identifies the proponent of the Bid and an officer who is authorized to appear and act on behalf of the Qualified Bidder and provides evidence of authorization and approval from the Qualified Bidder's board of directors or comparable governing body with respect to the submission, execution, delivery and closing of the Qualified Bid;

(iii)    provides for the purchase by the Qualified Bidder of all or substantially all of the Property;

(iv)    is a proposal which Seller, in consultation with the Committee and the First Priority Agent, determines is not materially more burdensome or conditional than the terms of the Agreement and has a value greater than or equal to the sum of (a) the Purchase Price *plus* (b) the Break-up Fee *plus* (z) $500,000 (with the $500,000 amount to have been $1,000,000 had there not been a commission payable under the Agreement which would not be payable in connection with a Qualified Bid of another party);

(v)    includes a copy of a definitive purchase agreement in form and substance similar to the Agreement signed by an authorized representative of such Qualified Bidder in addition to a marked copy of such agreement to reflect the Qualified Bidders modifications to the Agreement;

(vi)    is generally on the same or more favorable terms in the aggregate to Seller as set forth in the Agreement;

3

(vii)    is not subject to termination except on the same terms as the Agreement;

(viii)    includes written evidence of a commitment for financing (by a credit worthy bank or financial institution) that shall provide such financing without alteration of conditions or delays that is not contingent as of the Auction or other evidence of ability, as determined in the reasonable business judgment of the Debtors, after consultation with the Committee and the First Priority Agent, to consummate the transaction;

(ix)    is accompanied by a deposit (by means of a certified bank check from a U.S. bank or by wire transfer) equal to seven and one-half percent (7.5%) of the amount of such Bid (the "Deposit"); and

(x)    is not conditioned on the outcome of any unperformed due diligence by the bidder, the receipt of equity or debt financing, or the approval of any board of directors, shareholder, or other corporate approval;

(xi)    is not conditioned upon approval by the Bankruptcy Court of any bid protections, such as a termination fee, expense reimbursement or similar type of payment;

(xii)    is irrevocable until the closing of the Sale if such Qualified Bidder is selected as Successful Bidder or Back-up Bidder; and

(xiii)    contains a Purchase Price allocation on Exhibit R which is consistent with fair market value.

Whether the Bid of a Qualified Bidder meets the foregoing requirements to become a Qualified Bid shall be determined by the Debtors, in their reasonable business judgment, after consultation with the Committee and the First Priority Agent. The Debtors shall notify Buyer, the Committee, and the First Priority Agent promptly if they determine any Potential Bidder is a Qualified Bidder.

The Debtors, in their reasonable business judgment, after consultation with the Committee and the First Priority Agent, may reject any proposal that is on terms that are more burdensome or conditional than the terms of the Agreement, entitles the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment that is not in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Rules of the Bankruptcy Court, or is contrary to the best interests of the Debtors or their estates.

If Seller does not receive any Qualified Bids by the Bid Deadline, Seller shall report the same to the Bankruptcy Court and shall proceed with a sale of the Property to Buyer pursuant to the terms of the Agreement. The Agreement executed by Buyer, as it may be amended, modified, or supplemented, shall constitute a Qualified Bid for all purposes.

<u>Auction, Bidding Increments, and Bids Remaining Open</u>

If Seller receives one or more Qualified Bids, Seller will conduct an auction (the "Auction") at the offices of Berger Singerman, 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Fax: 305-714-4340, beginning at 10:00 a.m. (Eastern Time) on August 20, 2010**,** or such later time or other place as Seller shall notify all Qualified Bidders who have submitted Qualified Bids.  The Debtors, after consultation with the Committee and the First Priority Agent, shall evaluate all Qualified Bids received and shall determine which Qualified Bid reflects the highest or best offer for the Purchased Assets.  At least three (3) days prior to the Auction, Seller shall give Buyer, the Committee, the First Priority Agent, and all other Qualified Bidders a copy of the highest and best Qualified Bid received and copies of all other Qualified Bids.  Only Buyer, Seller, representatives of the Committee, the First Priority Agent and any Qualified Bidders (including such parties' respective advisors) who have timely submitted Qualified Bids shall be entitled to attend the Auction, and only Buyer and such Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

At the Auction, Qualified Bidders will be permitted to increase their Bids, and all Bids shall be made and received in one room on an open basis.  All participating Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each participating Qualified Bidder shall be fully disclosed to all other Qualified Bidders and that all material terms of each Bid will be fully disclosed to all other participating Qualified Bidders throughout the entire Auction.  All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

Bidding at the Auction shall be in increments of $500,000 and shall continue until such time as the highest and best Qualified Bid is determined by Seller, in consultation with the Committee.  The Debtors, in consultation with the Committee and the First Priority Agent, shall have the right to modify the bidding increments throughout the course of the Auction.  For the purpose of evaluating the value of the consideration provided by each subsequent Qualified Bid (including any subsequent Bid by Buyer) at the Auction, the value shall be the net consideration payable to Seller (after taking into account the Assumed Liabilities and the brokerage commission payable in connection with the transaction contemplated by the Agreement) after giving effect to any Break-up Fee payable to Buyer under the Agreement.  At the conclusion of the bidding, Seller, after consultation with the Committee and the First Priority Agent, shall announce its determination as to the Qualified Bidder submitting the successful Bid (the "Successful Bidder" and "Successful Bid"), which shall be submitted to the Bankruptcy Court for approval at the Sale Hearing, and the second highest and best Qualified Bid (the "Back-up Bid").  Seller will be deemed to have accepted any Qualified Bid only when such Qualified Bid is determined to be the Successful Bid and has been approved by the Bankruptcy Court.  Buyer shall be deemed a party-in-interest with standing to appear and be heard in connection with any motion, hearing, or other proceeding relating to the Agreement, any subsequent Bids, and the Auction.

The Debtors, after consultation with (i) their counsel and financial advisors, and (ii) the Committee and the First Priority Agent may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to

make subsequent Bids) for conducting the Auction provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or of any other applicable court entered in connection herewith and (ii) disclosed to each Qualified Bidder at the Auction.

<u>Break-up Fee</u>

If Seller (i) accepts a Qualified Bid, other than a bid of Buyer, as the highest or best offer, Seller shall pay Buyer at the closing of such Competing Transaction as reasonable compensation for Buyer's efforts in connection with the negotiation and execution of the Agreement and the transactions contemplated thereby an amount equal to 3% of the Purchase Price (the "Break-up Fee"). For the avoidance of doubt, no Break-up Fee will be due and owing unless and until the Feasibility Period has passed and the Bidding Procedures have been approved and Buyer is not the winning bidder in the Auction.

If within six (6) months after the conclusion of the Auction (or, if no Auction is actually held, the date on which the Auction had been scheduled to commence), Seller enters into any letter of intent, agreement in principle, agreement or understanding regarding the sale of any part of the Property sold (other than any part referenced in Section II of <u>Exhibit P</u> to the Agreement and other than any sale pursuant to the preceding paragraph), then Seller shall pay to Buyer at the closing of such sale a fee equal to three percent (3%) of the purchase price of that portion of the Property sold (other than any part referenced in Section II of <u>Exhibit P</u> to the Agreement and other than any sale pursuant to the preceding paragraph); provided, however, that in no event shall the fee(s) paid to Buyer pursuant to this paragraph exceed, in the aggregate, the amount equal to three percent (3%) of the Purchase Price under the Agreement.

The Break-up Fee obligation of Seller shall be payable solely from the proceeds from a Competing Transaction or other sale of the Property or any portion thereof, as applicable; *provided, however*, that in the event the closing of a Competing Transaction or other sale of the Property or any portion thereof, as applicable, does not yield cash proceeds sufficient to pay the Break-up Fee to Buyer, then Buyer reserves the right to seek payment of the Break-up Fee as an administrative expense of Seller and Seller's estate under sections 503(b) and 507(a) of the Bankruptcy Code, with the United States Trustee for the Southern District of Florida's objection to said request being hereby reserved.

<u>The Sale Hearing</u>

The Sale Hearing is presently scheduled to take place on August 25, 2010 at 1:30 p.m. (Eastern time) before the Honorable John K. Olson, United States Bankruptcy Judge for the Southern District of Florida. At the Sale Hearing, Seller will seek entry of the Sale Order, among other things, authorizing and approving the Sale (i) to Buyer, if no other Qualified Bid is received and accepted as the Successful Bid, pursuant to the terms and conditions set forth in the Agreement or (ii) to the Successful Bidder, if a Qualified Bid is received and accepted by Seller as the Successful Bid, as determined by Seller in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Agreement or marked agreement submitted by the Successful Bidder

If, following the entry of the Sale Order by the Bankruptcy Court, the Successful Bidder fails to consummate a transaction with Seller in respect of such Successful Bid because of a breach or failure to perform on the part of such Qualified Bidder, then the Back-up Bid shall be deemed to be the Successful Bid, and Seller shall be authorized, but not required, to consummate a transaction in respect of the Back-up Bid without further order of the Bankruptcy Court.

The Sale Hearing may be adjourned or rescheduled without notice, including by an announcement of the adjourned date at the Sale Hearing.

### Failure to Consummate Purchase

If the Successful Bidder (other than Buyer) fails to consummate the Sale, and such failure is the result of a breach by the Successful Bidder, the Successful Bidder's Deposit shall be forfeited to Seller and, except to the extent provided in the Agreement or marked agreement, Seller specifically reserves the right to seek all available damages from such person.

### Return of Good Faith Deposit

The Deposits of all Qualified Bidders (other than Buyer) shall be retained by Seller and held in escrow in an interest bearing account and all Qualified Bids will remain open, notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a Successful Bid by a Qualified Bidder, until 48 hours after the closing of the sale of the Property (the "Return Date"). On the Return Date, Seller shall return the Deposits of all Qualified Bidders, except the Successful Bidder, with the accrued interest.

### Modifications

The Debtors, in consultation with the Committee and the First Priority Agent, may (a) determine, in their business judgment, which Qualified Bid, if any, is the highest or otherwise best offer, (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Agreement, or (iii) contrary to the best interests of Seller, its estate and creditors and other parties-in-interest, and (c) with the prior consent of Buyer, extend the Bid Deadline; provided, however, that if Buyer submits the only Qualified Bid, the provisions of clauses (a) and (b) above shall be inoperative.