

**ORDERED in the Southern District of Florida on September 30, 2010.**

**John K. Olson, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) Chapter 11 Cases |
| | ) Case No. 08- 10928-JKO |
| TOUSA, INC., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

**SEVENTH FINAL ORDER (I) AUTHORIZING LIMITED**
**USE OF CASH COLLATERAL PURSUANT TO SECTIONS**
**105, 361 AND 363 OF THE BANKRUPTCY CODE, (II) GRANTING**
**REPLACEMENT LIENS, ADEQUATE PROTECTION AND SUPER**
**PRIORITY ADMINISTRATIVE EXPENSE PRIORITY TO SECURED LENDERS**

Upon the (I) motion [D.E. # 5904] (the "*Cash Collateral Motion*") dated July 28, 2010 of

TOUSA, Inc. (the "*Debtor*" or "*TOUSA*") and its affiliated debtors, as debtors and debtors in

possession (each individually a "*Debtor*" and, collectively with TOUSA, the "*Debtors*")[1] for the

entry of an order authorizing the Debtors to, subject to the terms and limitations contained

_____

[1]    All references to "*Other Debtors*" contained herein shall mean all Debtors other than TOUSA and TOUSA
Homes, L.P. ("*Homes LP*").

herein, continue to use Cash Collateral (as that term is defined in section 363(a) of title 11 of the United States Code (the "*Bankruptcy Code*)) of the Debtors' prepetition first and second lien lenders (together, the "*Prepetition Secured Lenders*"), and (II) the supplement to the Cash Collateral Motion dated August 20, 2010 (the "*Supplemental Cash Collateral Motion*" and, together with the Cash Collateral Motion, the "*Motion*"), and the Court having considered the Cash Collateral Motion and the *Response of the Official Committee of Unsecured Creditors of TOUSA, Inc. et al. to Debtors' Seventh Motion for Authority to Use Cash Collateral* [D.E. # 6030]; and a final hearing on the use of Cash Collateral having been held and concluded on September 29, 2010 (the "*Hearing*"); and upon all of the pleadings filed with the Court and all of the proceedings held before the Court related to the Motion, and after due deliberation and consideration and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:

A.    Petition Date. On January 29, 2008 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. A statutory committee of unsecured creditors (the "*Creditors' Committee*") was appointed in the Debtors' chapter 11 cases (collectively, the "*Chapter 11 Cases*") on February 13, 2008.

B.    Jurisdiction. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction

over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Prior Cash Collateral Orders:  On January 31, 2008, this Court entered an interim order approving, among other things, the interim use of Cash Collateral (the "*Interim DIP Order*") [D.E. # 113].  On June 20, 2008, this Court entered an order (the "*First Cash Collateral Order*") [D.E. #1226] which, among other things, authorized the Debtors to use Cash Collateral in accordance with the terms thereof.  On December 4, 2008, this Court entered an order (the "*Second Interim Cash Collateral Order*") [D.E. # 2234] which, among other things, authorized the Debtors to use Cash Collateral in accordance with the terms thereof.  On January 28, 2009, the Court entered an order (the "*Second Final Cash Collateral Order*") [D.E. #2402] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On April 29, 2009, the Court entered an order (the "*Third Cash Collateral Order*") [D.E. #2726] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On September 10, 2009, the Court entered an order (the "*Fourth Interim Cash Collateral Order*") [D.E. #3177] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On September 24, 2009, the Court entered an order (the "*Fourth Final Cash Collateral Order*") [D.E. #3207] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On October 28, 2009, the Court entered an order (the "*Fifth Interim Cash Collateral Order*") [D.E. #3262] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On January 8, 2010, the Court entered an order (the "*Fifth Final Cash Collateral Order*") [D.E. #3480] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On April 15, 2010, the Court entered an order (the "*Sixth Interim Cash*

*Collateral Order*") [D.E. #5419] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On May 18, 2010, the Court entered an order (the "*Sixth Final Cash Collateral Order*") [D.E. # 5580] authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.  On August 27, 2010, the Court entered an order (the "*Seventh Interim Cash Collateral Order*," and, together with the Interim DIP Order, the First Cash Collateral Order, the Second Interim Cash Collateral Order, the Second Final Cash Collateral Order, the Third Cash Collateral Order, the Fourth Interim Cash Collateral Order, the Fourth Final Cash Collateral Order, the Fifth Interim Cash Collateral Order, the Fifth Final Cash Collateral Order, the Sixth Interim Cash Collateral Order and the Sixth Final Cash Collateral Order, the "*Prior Financing Orders*") [D.E. #6046]), authorizing the Debtors to use Cash Collateral in accordance with the terms thereof.

      D.   <u>Revolver Obligations</u>.  Subject in all respects to the outcome of appeals relating to the Committee Complaint (as defined in paragraph 14(c) below), and subject to the time limitations and other restrictions specified in (a) paragraph 14 of the Seventh Interim Cash Collateral Order, (b) paragraph 14 of the Sixth Final Cash Collateral Order, (c) paragraph 14 of the Sixth Interim Cash Collateral Order, (d) paragraph 14 of the Fifth Final Cash Collateral Order, (e) paragraph 13 of the Fifth Interim Cash Collateral Order, (f) paragraph 13 of the Fourth Final Cash Collateral Order, (g) paragraph 13 of the Fourth Interim Cash Collateral Order, (h) paragraph 14 of the Third Cash Collateral Order, (i) paragraph 14 of the Final Second Cash Collateral Order, (j) paragraph 14 of the Second Interim Cash Collateral Order and (k) paragraph 16 of the First Cash Collateral Order and the provisions specified in paragraph 14 below, the Debtors acknowledge, admit and confirm the following as of the Petition Date:

(1)      Pursuant to that certain Revolving Credit Agreement, dated March 6, 2006 (as amended, restated, supplemented or otherwise modified from time to time, including the Second Amended and Restated Revolving Credit Agreement, dated as of July 31, 2007, the "*Revolver*"), by and among TOUSA, as Administrative Borrower and certain of the direct and indirect subsidiaries of TOUSA (including all of the Debtors), as borrowers (each, individually, a "*Borrower*" and, collectively including TOUSA, the "*Borrowers*") named therein, Citicorp North America, Inc. ("*CNAI*") or one of its affiliates, as administrative agent (in such capacity, the "*Revolver Agent*") for the Revolver Lenders (as defined below) and certain financial institutions and other entities as lenders and letters of credit issuers party thereto from time to time (collectively, the "*Revolver Lenders*"), and together with all guarantees, subordination agreements, intercreditor agreements, blocked account or deposit control agreements, indentures, notes, mortgages, pledges, guarantees, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith, including, without limitation, the Loan Documents (as defined in the Revolver) (collectively, and as amended, restated, supplemented or otherwise modified from time to time, together with the Revolver, the "*Revolver Financing Documents*" and the obligations thereunder, the "*Revolver Obligations*");

(2)      Pursuant to the Revolver and other Revolver Financing Documents, the Debtors were, as of the Petition Date, indebted to the Revolver Agent and the Revolver Lenders for the principal amount of the Revolver Indebtedness (as defined below), exclusive of accrued but unpaid interest, costs, fees and expenses, of approximately $208,412,116 owed under the Revolver (in addition to contingent obligations under outstanding letters of credit) as of the Petition Date.  For purposes of this Order, the term "*Revolver Indebtedness*" shall mean and

include, without duplication, any and all Revolver Obligations (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under, *inter alia*, Sections 2.11 and 10.3 of the Revolver), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other Obligations outstanding thereunder.

(3)     Pursuant to certain security agreements, pledge agreements, blocked account and deposit control agreements, mortgages, deeds of trust, assignments and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "*Revolver Security Documents*"), and the other Revolver Financing Documents, the Debtors granted to and/or for the benefit of the Revolver Agent and Revolver Lenders first priority and continuing pledges, liens and security interests (collectively, the "*Revolver Liens*") to secure the Revolver Indebtedness and any guarantees thereof, in and upon the Debtors' property and assets, whether real or personal, tangible or intangible and wherever located, including state and federal tax refunds or rebates, whether now or hereafter existing or acquired, including any state and federal tax refunds or rebates, and all of the proceeds, products, offspring, rents and profits thereof, all as described in the Revolver Security Documents.  All Collateral (solely for the purpose of this subparagraph D(3), such term is used as defined in the Revolver) and any other collateral provided under any Revolver Financing Document, including that described in this subparagraph D(3), that existed as of the Petition Date and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits thereof shall hereafter be referred to as the "*Prepetition Revolver Collateral.*"

6

(4)      (a) The Revolver Financing Documents are valid and binding agreements of the Debtors, (b) the Revolver Agent (on its behalf and on behalf of the Revolver Lenders) properly perfected its security interests and liens in and on the Prepetition Revolver Collateral, and (c) the Revolver Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens on the Prepetition Revolver Collateral and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(5)      (a) The Revolver Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms, (b) the Debtors have no objection, offset, defense or counterclaim of any kind or nature to the Revolver Indebtedness and (c) the Revolver Indebtedness, and any amounts previously paid to the Revolver Agent or any Revolver Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(6)      The value of the Prepetition Revolver Collateral exceeds the amount of the Revolver Indebtedness as of the Petition Date.

E.      The First Lien Term Obligations.  Subject in all respects to the Committee Judgment and subject in all respects to any appeal, amendment or modification thereof, and subject to the time limitations and other restrictions specified in (a) paragraph 14 of the Seventh Interim Cash Collateral Order, (b) paragraph 14 of the Sixth Final Cash Collateral Order, (c) paragraph 14 of the Sixth Interim Cash Collateral Order, (d) paragraph 14 of the Fifth Final Cash Collateral Order, (e) paragraph 13 of the Fifth Interim Cash Collateral Order, (f) paragraph 13 of

7

the Fourth Final Cash Collateral Order, (g) paragraph 13 of the Fourth Interim Cash Collateral Order, (h) paragraph 14 of the Third Cash Collateral Order, (i) paragraph 14 of the Final Second Cash Collateral Order, (j) paragraph 14 of the Second Interim Cash Collateral Order and (k) paragraph 16 of the First Cash Collateral Order and the provisions specified in paragraph 14 below, the Debtors acknowledge, admit and confirm the following as of the Petition Date:

(1)     Prior to the Petition Date, the Debtors entered into that certain First Lien Term Loan Credit Agreement, dated as of July 31, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*First Lien Term Loan*"), by and among TOUSA, the other borrowers and Borrowers named therein, CNAI, as administrative agent (in such capacity, the "*First Lien Agent*" and, together with the Revolver Agent, the "*First Lien Agents*") for the certain financial institutions and other entities as lenders party thereto from time to time (collectively, the "*First Lien Term Loan Lenders*" and, together with the Revolver Lenders, the "*First Lien Lenders*"), and together with all guarantees, subordination agreements, intercreditor agreements, blocked account or deposit control agreements, indentures, notes, mortgages, pledges, guarantees, instruments and any other agreements and documents delivered pursuant thereto or in connection therewith, including, without limitation, the Loan Documents (as defined in the First Lien Term Loan) (collectively, and as amended, restated, supplemented or otherwise modified from time to time, the "*First Lien Term Loan Financing Documents*" and together with the Revolver Financing Documents, the "*First Lien Financing Documents*"); the First Lien Agent and the First Lien Term Loan Lenders made certain senior loans, advances and other financial accommodations to or for the benefit of TOUSA and Homes LP to fund the July 31 Transaction (as defined in the Committee Judgment).

8

(2)      Pursuant to the First Lien Term Loan and other First Lien Term Loan Financing Documents, TOUSA and Homes LP were, as of the Petition Date, indebted to the First Lien Agent and the First Lien Term Loan Lenders for the principal amount of the First Lien Term Loan Indebtedness (as defined below), exclusive of accrued but unpaid interest, costs, fees and expenses, of approximately $199,000,00.00 owed under the First Lien Term Loan as of the Petition Date.  For purposes of this Order, the term "*First Lien Term Loan Indebtedness*" shall mean and include, without duplication, any and all Obligations of TOUSA and Homes LP under the First Lien Term Loan (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under, *inter alia*, Sections 2.11 and 10.3 of the First Lien Term Loan or any other First Lien Term Loan Financing Document, and together with the Revolver Indebtedness, the "*First Lien Indebtedness*"), and any and all obligations and liabilities, contingent or otherwise, owed in respect of other Obligations of TOUSA and Homes LP outstanding thereunder.   For the avoidance of doubt, as a result of the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, all such Obligations are Obligations solely of TOUSA and Homes LP and are not Obligations of any of the Other Debtors.

(3)      Pursuant to certain security agreements, pledge agreements, blocked account and deposit control agreements, mortgages, deeds of trust, assignments and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "*First Lien Term Loan Security Documents*"), and the other First Lien Term Loan Financing Documents, TOUSA and Homes LP granted to and/or for the benefit of the First Lien Agent and First Lien Term Loan Lenders first priority and continuing pledges, liens and

9

security interests (collectively, the "*First Lien Term Liens*") to secure the First Lien Term Loan Indebtedness, in and upon the Prepetition Revolver Collateral and the Prepetition Term Loan Collateral (as defined below), all as described in the First Lien Term Loan Security Documents; *provided, however,* pursuant to the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, the Court invalidated certain of the First Lien Term Liens and, as such, such liens remain valid only with respect to TOUSA's and Homes LP's property and assets, whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all of the proceeds, products, offspring, rents and profits thereof (the "*Prepetition Term Loan Collateral*");  the First Lien Term Liens are not assertable against the property and assets of the Other Debtors.

(4)    (a) Pursuant to the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, the First Lien Term Loan Financing Documents are valid and binding agreements solely of TOUSA and Homes LP, (b) the First Lien Agent (on its behalf and on behalf of the First Lien Term Loan Lenders) properly perfected their security interests and liens in and on the Prepetition Term Loan Collateral, and (c) the First Lien Term Liens granted by TOUSA and Homes LP (i) constitute valid, binding, enforceable and perfected first priority security interests and liens on the Prepetition Term Loan Collateral and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by TOUSA or Homes LP pursuant to the Bankruptcy Code or applicable non-bankruptcy law.   For the avoidance of doubt, as a result of the Committee Judgment, all such obligations are obligations solely of TOUSA and Homes LP and are not obligations of any of the Other Debtors.

10

(5)      (a) The First Lien Term Loan Indebtedness constitutes the legal, valid and binding obligation solely of TOUSA and Homes LP, enforceable in accordance with its terms, and (b) TOUSA and Homes LP have no objection, offset, defense or counterclaim of any kind or nature to the First Lien Term Loan Indebtedness.  For the avoidance of doubt, as a result of the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, all such obligations are obligations solely of TOUSA and Homes LP and are not obligations of any of the Other Debtors.

F.      <u>Second Lien Secured Obligations</u>.  Subject in all respects to the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, and subject to the time limitations and other restrictions specified in (a) paragraph 14 of the Seventh Interim Cash Collateral Order, (b) paragraph 14 of the Sixth Final Cash Collateral Order, (c) paragraph 14 of the Sixth Interim Cash Collateral Order, (d) paragraph 14 of the Fifth Final Cash Collateral Order, (e) paragraph 13 of the Fifth Interim Cash Collateral Order, (f) paragraph 13 of the Fourth Final Cash Collateral Order, (g) paragraph 13 of the Fourth Interim Cash Collateral Order, (h) paragraph 14 of the Third Cash Collateral Order, (i) paragraph 14 of the Final Second Cash Collateral Order, (j) paragraph 14 of the Second Interim Cash Collateral Order and (k) paragraph 16 of the First Cash Collateral Order and the provisions specified in paragraph 14 below, the Debtors acknowledge, admit and confirm the following as of the Petition Date:

(1)      Prior to the Petition Date, the Debtors entered into that certain Second Lien Term Loan Credit Agreement, dated as of July 31, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*Second Lien Credit Agreement*", and, together with all agreements, documents, notes, instruments and any other agreements delivered pursuant

thereto or in connection therewith, the "*Second Lien Financing Documents*" and, together with the Revolver Financing Documents and the First Lien Term Loan Financing Documents, the "*Prepetition Financing Documents*"), among TOUSA and certain of the Debtors, as borrowers or Borrowers and Wells Fargo Bank, N.A., as successor administrative agent (in such capacity, the "*Second Lien Agent,*" and the lenders from time to time party thereto (collectively, the "*Second Lien Lenders*"), the Second Lien Lenders made loans and extended other financial accommodations (the "*Second Lien Secured Facilities*") to or for the benefit TOUSA and Homes LP to fund the July 31 Transaction.  The Revolver Agent, the First Lien Agent and the Second Lien Agent are hereinafter collectively referred to as the "*Prepetition Agents*").

(2)      Pursuant to the Second Lien Credit Agreement and other Second Lien Financing Documents, TOUSA and Homes LP were, as of the Petition Date, indebted to the Second Lien Agent and Second Lien Lenders pursuant to the Second Lien Credit Agreement in the aggregate principal amount of $317,101,998.00, plus, as of the Petition Date, (a) accrued and unpaid interest thereon and (b) fees, costs, expenses and other obligations accrued or owing with respect thereto (collectively, and including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under Section 2.11 and 10.3 of the Second Lien Credit Agreement or any other Second Lien Financing Documents, the "*Second Lien Indebtedness*" and, together with the First Lien Indebtedness, the "*Prepetition Secured Indebtedness*").  For the avoidance of doubt, as a result of the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, all such obligations are obligations solely of TOUSA and Homes LP and are not obligations of any of the Other Debtors.

(3)     Pursuant to certain security agreements, pledge agreements, blocked account and deposit control agreements, mortgages, deeds of trust, assignments and other documents and agreements (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "*Second Lien Security Documents*"), and the other Second Lien Financing Documents, the TOUSA and Homes LP granted to the Second Lien Agent, for its benefit and the benefit of the Second Lien Lenders, second priority liens (collectively, the "*Second Lien Liens*" and, together with the Revolver Liens and the First Lien Term Loan Liens, the "*Prepetition Liens*") on all of the Prepetition Revolver Collateral and Term Loan Collateral; *provided, however,* pursuant to the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, the Court invalidated certain of the Second Lien Liens and, as such, such liens only remain valid with respect to the Term Loan Collateral.

(4)     (a) Pursuant to the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, the Second Lien Financing Documents are valid and binding agreements solely of TOUSA and Homes LP, (b) the Second Lien Liens granted by TOUSA and Homes LP constitute valid, binding, enforceable and perfected second priority security interests and liens, subject only to the Revolver Liens, the First Lien Term Liens, and other Permitted Liens (as defined in the Second Lien Credit Agreement), but only to the extent such other Permitted Liens are valid, enforceable, non-avoidable liens and security interests that were perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Second Lien Liens under applicable

13

law and after giving effect to any applicable subordination or intercreditor agreements and (c) the Second Lien Liens granted by TOUSA and Homes LP are not subject to avoidance, reduction, disallowance, impairment or subordination (other than subordination to the Revolver Liens and the First Lien Term Liens) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. For the avoidance of doubt, as a result of the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, this paragraph F(4)(a) only applies to TOUSA and Homes LP and not the Other Debtors.

(5)    (a) The Second Lien Indebtedness constitutes the legal, valid and binding obligation solely of TOUSA and Homes LP, enforceable in accordance with its terms, and (b) TOUSA and Homes LP have no objection, offset, defense or counterclaim of any kind or nature to the Second Lien Indebtedness.  For the avoidance of doubt, as a result of the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, this paragraph F(5)(a) only applies to TOUSA and Homes LP and not the Other Debtors.

G.    <u>Stipulations in Prior Financing Orders</u>.  In light of, and subject in all respects to, the Committee Judgment and subject in all respects to any appeal, amendment or modification thereto, any and all stipulations of the Debtors contained in the Prior Financing Orders relating to the validity and enforceability of each of the First Lien Term Loan, the First Lien Financing Documents, the First Lien Term Loan Indebtedness, the First Lien Term Loan Security Documents, the First Lien Term Liens, the Second Lien Credit Agreement, the Second Lien Financing Documents, the Second Lien Indebtedness, and the Second Lien Liens against any of the Other Debtors should be vacated and deemed to be of no further force and effect as if never made.

14

H.    <u>Adequate Protection Liens and Adequate Protection Claims Granted to the</u> <u>First Lien Agent (on behalf of itself and the Prepetition First Lien Term Loan Lenders) and the</u> <u>Second Lien Agent (on behalf of itself and the Second Lien Lenders) Under the Prior Financing</u> <u>Orders</u>.  In light of, and subject in all respects to, the Committee Judgment and any appeal, amendment or modification thereto, any and all Adequate Protection Liens and Adequate Protection Claims granted to the First Lien Agent (on behalf of itself and the Prepetition First Lien Term Loan Lenders) and the Second Lien Agent (on behalf of itself and the Second Lien Lenders) under the Prior Financing Orders against any of the Other Debtors should be vacated and disallowed, as applicable, and deemed to be of no further force and effect as if never granted.

I.    <u>Intercreditor Agreement</u>.  The First Lien Agents, on behalf of the First Lien Lenders and the Second Lien Agent, on behalf of the Second Lien Lenders (collectively, with the Second Lien Agent, the "*Second Lien Secured Parties*") entered into that certain Intercreditor Agreement, dated as of July 31, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "*Intercreditor Agreement*").

J.    <u>Immediate Need</u>.  An immediate and critical need exists for the Debtors to continue to use Cash Collateral, including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Revolver Collateral and Term Loan Collateral (together, "*Cash Collateral*") in accordance with the Budget (as defined below), in order to continue the operation of their businesses under chapter 11 of the Bankruptcy Code. Accordingly, the relief granted herein is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and their creditors.  Good,

15

adequate and sufficient cause has been shown to justify the granting of the relief provided herein and the immediate entry of this Order.

K.    <u>Good Faith</u>.  Based upon the record before the Court, the terms of the use of the Cash Collateral as provided in this Order have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.  The Prepetition Agents and the First Lien Lenders are not consenting to the use of their respective Cash Collateral, if any, and object to the use of such Cash Collateral, if any, to fund the expenses of the Creditors' Committee related to the Committee Complaint (as defined below).

L.    <u>Notice</u>.  Notice of the Final Hearing was delivered on or before September 6, 2010 via United States mail, first class postage prepaid, to the following parties in interest: (i) the United States Trustee for the Southern District of Florida (the "*U.S. Trustee*")*;* (ii) counsel to the First Lien Agents; (iii) counsel to the Second Lien Agent; (iv) counsel to the Informal Group of Second Lien Lenders (the "*Second Lien Lenders Group*"); (v) the Internal Revenue Service; (vi) all parties requesting service papers pursuant to Bankruptcy Rule 2002; and (ix) counsel to the Creditors' Committee (collectively, the "*Notice Parties*").  Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and (c) of the Bankruptcy Code, and no further notice of the Motion or this Order is necessary or required.

NOW, THEREFORE, IT IS HEREBY ORDERED, STIPULATED AND AGREED:

1.      <u>Motion Granted</u>.   The relief granted herein is granted on an interim basis subject to the provisions hereof and all objections have either been withdrawn or are hereby overruled.   Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits or no longer relevant.

2.      <u>Use of Cash Collateral</u>.   Except as otherwise set forth herein, as long as the Debtors comply with the terms and conditions of this Order, the Debtors are hereby authorized to use Cash Collateral for working capital and general corporate purposes that is not materially inconsistent with the budget (the "*Budget*") annexed hereto as Exhibit "A," subject to a variance as set forth in paragraph 3 below, *provided* that the Prepetition Secured Lenders are granted adequate protection as hereinafter set forth, and *provided, further*, that, absent the written consent of the Revolver Agent and the First Lien Agent (solely with respect to the Term Lender Collateral), the Debtors shall cease to be authorized to use Cash Collateral (other than the Carve-Out described hereinafter) pursuant to this Order upon the occurrence of the Cash Collateral Termination Date.

3.      <u>Budgets and Covenants</u>.

(a)      The annexed Budget contains monthly budgets covering the period beginning September 1, 2010 through January 31, 2011 (the "*Budget Period*").   Subject to the provisions of paragraphs 3 and 10 of this Order, the Debtors are hereby authorized to use Cash Collateral in a manner that is not materially inconsistent with the Budget.   The Debtors are authorized, without further order of the Court, to make modifications to the Budget with the written consent of the Revolver Agent, with such consent to be granted in the Revolver Agent's sole discretion; *provided, however,* the Debtors shall be allowed to make a maximum of one request per month for modifications to the Budget and any requested modifications to the Budget shall be submitted

17

to the Prepetition Agents and the Creditors' Committee on or before the 20th calendar day of the month and, if consented to by the Revolver Agent, shall be effective on the 1st day of the subsequent calendar month. The Debtors' authorization to use Cash Collateral (the "*Cash Collateral Period*") shall terminate upon the earlier to occur of (i) the Cash Collateral Termination Date or (ii) expiration of the Budget Period unless the Debtors shall have proposed and the Revolver Agent, in its sole discretion, shall have approved, after five (5) business days notice to the Second Lien Agent and the Creditors' Committee and absent an objection by the Creditors' Committee thereto, an extension of the Cash Collateral Period (as provided in subparagraph 15(a) herein) and a budget for periods beyond the Budget Period.

(b)    The Debtors' use of Cash Collateral is conditioned upon compliance by the Debtors with the financial covenants set forth herein (collectively, the "*Financial Covenants*").

(c)    The Financial Covenants shall be measured as follows: (i) actual monthly Operating Cash Flow must not be less than the projected monthly Operating Cash Flow set forth in the Budget minus $10 million; and (ii) cumulative Operating Cash Flow for the applicable period set forth below must be no less than the amounts set forth below for the applicable period:

| Minimum Operating Cash Flow (expressed in thousands) | Period |
|---|---|
| $(16,578) | September 1 through September 30, 2010 |
| $(25,817) | October 1, 2010 through October 31, 2010 |
| $(33,140) | November 1, 2010 through November 30, 2010 |
| $(42,245) | December 1, 2010 through December 31, 2010 |
| $(48,815) | January 1, 2011 through January 31, 2011 |

The term "Operating Cash Flow" means, for the applicable period, the Debtors' consolidated operating receipts (excluding proceeds and expenses from asset sales made pursuant to the Non-Core Asset Sale Order or another order from the Court authorizing the sale of assets outside the ordinary course pursuant to section 363 of the Bankruptcy Code) *less* the Debtors'

18

consolidated operating expenses (excluding financing fees, debt service and expenses relating to the Chapter 11 Cases such as court filing fees and fees incurred by Professionals (as defined below)).  TOUSA shall deliver to the Prepetition Agents and the Creditors' Committee within seven (7) days of the last day of each applicable period a Certificate of a Responsible Officer of TOUSA calculating in reasonable detail the covenant set forth in this subparagraph 3(c) for such period.

(d)     The Debtors shall provide to the Prepetition Agents and the Creditors' Committee monthly variance reports by 1:00 p.m. (prevailing Eastern Time) on the 7th day of each month during the Budget Period (or the next business day if such day is not a business day).  Such variance reports shall (i) include prior month actual and cumulative financial results compared to the budgeted amounts for each such month and a detailed explanation of material variances and (ii) certify the Debtors' compliance with the Financial Covenants showing such calculations and support as reasonably requested by the First Lien Agents.

4.     Use of Asset Sale Proceeds.

(a)     Notwithstanding anything herein to the contrary, it is a condition to each use of any Cash Collateral authorized in this Order that at all times during the Budget Period all proceeds received by the Debtors from any sale, lease, assignment or other disposition (including by way of merger or consolidation) of any property to any party, excluding (i) inventory sold in the ordinary course of business pursuant to the Final Order (A) Authorizing the Debtors to Sell Homes Free and Clear of Liens, Claims, Encumbrances and Other Interests and (B) Establishing Procedures for the Resolution and Payment of Lien Claims (the "*Ordinary Course Sale Order*") [D.E. #455] entered on February 28, 2008, (ii) any sale or discount, in each case without recourse, of accounts receivable in the ordinary course of business, but only in connection with

the compromise or collection thereof in the ordinary course of business, (iii) dispositions of cash and cash equivalents, (iv) conveyances, sales, leases, subleases, assignments, transfers, exchanges or dispositions between the Debtors so long as the Prepetition Liens continue to apply to such property after giving effect to such sale, transfer or disposition and (v) Asset Swaps (as defined in the Revolver and First Lien Term Loan), consummated pursuant to the procedures authorized by the Interim Order Establishing Procedures for Non-Core Asset Sales Order (the "*Non-Core Asset Sale Order*") [D.E. #495], or any other order of this Court, are greater than or equal to the amount attributed to the assets being sold in such sale in the Borrowing Base as reported on the most recently delivered Borrowing Base Certificate (as such terms are defined in the Third Cash Collateral Order), provided under the Third Cash Collateral Order; *provided* that in connection with any bulk sale (as such term is used in the Ordinary Course Sale Order), absent separate order of the Court, the aggregate proceeds received from such bulk sale are greater than or equal to the amount attributed to the aggregate assets being sold in such bulk sale in the Borrowing Base as reported on the most recently delivered Borrowing Base Certificate without regard to the amount attributed to any individual asset being sold in such bulk sale in the Borrowing Base.

(b)     Notwithstanding the foregoing authorization to use Cash Collateral, all proceeds of any sale or disposition of any assets of the Debtors pursuant to (i) the Non-Core Asset Sale Order or (ii) any other order of the Court approving any sale of assets of the Debtors outside of the ordinary course of business (collectively, "*Asset Sale Proceeds*") received by the Debtors after the date of entry of this Order, shall be held by the Debtors in the segregated, interest bearing bank account (the "*Proceeds Account*") established pursuant to the First Cash Collateral Order pending (i) further order of the Court or (ii) written consent of the Revolver Agent for the

20

Debtors to otherwise utilize such segregated Cash Collateral in the ordinary course of business, a copy of such written consent being provided to the Second Lien Agent and the Creditors' Committee contemporaneously with the delivery thereof to the Debtors.

(c)     With respect to any sale and leaseback transaction entered into during the Cash Collateral Period where the proceeds are deposited into the Proceeds Account, the applicable lease payments for the Cash Collateral Period may be paid out of the Proceeds Account; provided, however, the Debtors shall not enter into any sale and leaseback transactions covering property with an aggregate fair market value in excess of $30,000,000.

(d)     Any sale or other disposition of the Debtors' assets in the ordinary course of the Debtors' business shall comply with Section 6.18 of the Revolver.

5.     Adequate Protection.  The (i) Revolver Agent and the Revolver Lenders with respect to the Prepetition Revolver Collateral and (ii) subject in all respects to the Committee Judgment and any appeal, amendment or modification thereto, the First Lien Agents, Second Lien Agent, First Lien Lenders and Second Lien Lenders, solely with respect to Prepetition Term Loan Collateral, the existence of which, and any diminution in value thereof, is in all respects subject to a determination by the Court, are hereby granted the following as adequate protection, as applicable (which the Prepetition Agents acknowledge, subject to paragraph 12 below, are acceptable to them):

(a)     Revolver Adequate Protection Liens.  Subject in all respects to the Carve-Out and paragraphs 14, 18, and 19 below, as adequate protection of the interests of the Revolver Agent and Revolver Lenders with respect to the Prepetition Revolver Collateral, to the extent of any diminution in the value of such collateral (including Cash Collateral), as applicable, from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale

21

or lease of the Prepetition Revolver Collateral, including the use of the Cash Collateral, the Revolver Agent is hereby granted for their benefit and the benefit of the Revolver Lenders, replacement liens (the "*Revolver Adequate Protection Liens*") (in the Prepetition Revolver Collateral (including Cash Collateral)) in the Prepetition Revolver Collateral (including Cash Collateral), subject only to the Carve-Out (as hereinafter defined) and to such other liens, if any, as may be senior, under applicable law, to the Revolver Liens in the Prepetition Revolver Collateral, on all of the Debtors' rights, title and interest in, to and under all personal and real property and other assets, whether now existing or at any time hereafter acquired and regardless of where located, including, but not limited to, all contracts of sale, pledged equity interests, tax refunds, general intangibles, copyrights, patents, trademarks, books and records, customer lists, credit files, computer files, programs, printouts, other computer materials and records related thereto, commercial tort claims, documents, letters of credit issued in favor of the Debtors, excess proceeds returned to the Debtors from letter of credit beneficiaries, equipment, fixtures, goods, inventory, machinery, pledged deposits (excluding the rights of customers in customer deposits held in escrow or required to be segregated), chattel paper, securities accounts, deposit accounts (including any amounts remaining in the Professional Fees Accounts (as defined below) after all allowed fees and expenses of Professionals entitled to be paid therefrom have been paid in full), and all other demand, time, savings and cash management, passbook and similar accounts, and all monies, securities, instruments and other investments deposited or required to be deposited in such accounts, (collectively, including the Prepetition Revolver Collateral, the "*Revolver Collateral*"); *provided, however,* for the avoidance of doubt, the Revolver Adequate Protection Liens shall not include liens on the Debtors' estates' claims and causes of action under chapter 5 of the Bankruptcy Code or any avoidance action under the Bankruptcy Code or

applicable state law (the "*Avoidance Actions*") and any proceeds or property recovered, unencumbered or otherwise, the subject of successful Avoidance Actions (collectively, the "*Avoidance Proceeds*").  Except as provided in this Order and subject to paragraph 18 hereof, the Revolver Adequate Protection Liens shall not be made subject to or *pari passu* with any lien on the Collateral by any order subsequently entered in the Chapter 11 Cases and shall be granted the benefits of paragraph 8 hereof as applicable (subject in all respects to paragraph 12 below).  For the avoidance of doubt, the determination that the Revolver Adequate Protection Liens are subject only to the Carve-Out and to such other liens, if any, as may be senior, under applicable law, to the Revolver Liens in the Prepetition Revolver Collateral, is in all respects subject to paragraph 18 hereof.

   (b)  <u>Term Lender Adequate Protection Liens</u>.  Subject in all respects to the Carve-Out and paragraphs 14, 18, and 19 below, the Committee Judgment and any appeal, amendment or modification thereto, as adequate protection of the respective interests of the First Lien Agents, Second Lien Agent, First Lien Lenders and Second Lien Lenders, solely with respect to Prepetition Term Loan Collateral, to the extent of any diminution in the value of such collateral from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale or lease of the Prepetition Term Loan Collateral, including the use of Cash Collateral that constitutes Prepetition Term Loan Collateral, the First Lien Agent and the Second Lien Agent are hereby granted for their benefit and the benefit of the First Lien Term Loan Lenders and Second Lien Lenders, respectively, replacement liens (the "*Term Lender Adequate Protection Liens*" and, together with the Revolver Adequate Protection Liens, the "*Adequate Protection Liens*") solely assertable against TOUSA and Homes L.P., subject only to the Carve-Out and to such other liens, if any, as may be senior, under applicable law, to the First Lien Term

23

Loan Liens and Second Lien Liens in the Prepetition Term Loan Collateral, on all of TOUSA's and Homes LP's rights, title and interest in, to and under all personal and real property and other assets, whether now existing or at any time hereafter acquired and regardless of where located, including, but not limited to, all contracts of sale, pledged equity interests, tax refunds, general intangibles, copyrights, patents, trademarks, books and records, customer lists, credit files, computer files, programs, printouts, other computer materials and records related thereto, commercial tort claims, documents, letters of credit issued in favor of TOUSA and Homes LP, excess proceeds returned to TOUSA and/or Homes LP from letter of credit beneficiaries, equipment, fixtures, goods, inventory, machinery, pledged deposits (excluding the rights of customers in customer deposits held in escrow or required to be segregated), chattel paper, securities accounts, deposit accounts (excluding any amounts remaining in the Professional Fees Accounts after all allowed fees and expenses of Professionals entitled to be paid therefrom have been paid in full), and all other demand, time, savings and cash management, passbook and similar accounts, and all monies, securities, instruments and other investments deposited or required to be deposited in such accounts, in each instance, only to the extent belonging to TOUSA and Homes LP (collectively, including the Prepetition Term Loan Collateral, the "*Term Loan Collateral*"); *provided, however,* for the avoidance of doubt, the Term Lender Adequate Protection Liens shall not include liens on Avoidance Actions and any Avoidance Proceeds; *provided, further, however,* for the avoidance of doubt, the Term Lender Adequate Protection Liens attach solely with respect to Prepetition Term Loan Collateral, the existence of which, and any diminution in value thereof, is in all respects subject to a determination by the Court; *provided, further, however*, that the Term Lender Adequate Protection Liens of the Second Lien Agent (on behalf of itself and the Second Lien Lenders) on any Prepetition Term Loan Collateral

24

shall be subordinate in priority to the Term Lender Adequate Protection Liens of the First Lien Agent (on behalf of itself and the First Lien Term Loan Lenders), the Revolver Adequate Protection Liens, the First Loan Liens, and the Revolver Liens. Except as provided in this Order and subject to paragraph 18 hereof, the Term Lender Adequate Protection Liens shall not be made subject to or *pari passu* with any lien on the Term Loan Collateral by any order subsequently entered in the Chapter 11 Cases and shall be granted the benefits of paragraph 8 hereof as applicable (subject in all respects to paragraph 14 below). For the avoidance of doubt, the determination that the Term Lender Adequate Protection Liens are subject only to the Carve-Out and to such other liens, if any, as may be senior, under applicable law, to the First Lien Term Loan Liens and Second Lien Liens in the Prepetition Term Loan Collateral, is in all respects subject to paragraph 18 hereof.

(c)     Revolver Adequate Protection Claims.  Subject in all respects to the Carve-Out and paragraphs 14, 18, and 19 below, as additional adequate protection of the interests of the Revolver Agent and the Revolver Lenders with respect to the Prepetition Revolver Collateral, to the extent those interests are not later determined to be invalid, the Revolver Agent, for its benefit and the benefit of the Revolver Lenders, is hereby granted allowed administrative priority claims under section 507(b) of the Bankruptcy Code (the "*Revolver Adequate Protection Claims*") for any diminution in value of the Prepetition Revolver Collateral from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale or lease of such collateral, including the use of Cash Collateral; *provided, however*, the Revolver Adequate Protection Claims shall not be satisfied from Avoidance Actions or Avoidance Action Proceeds other than the amount sufficient to reimburse the Revolver Agent and Revolver Lenders for the aggregate amount of Collateral that is subject to a valid Revolver Lien and claim

25

(including Cash Collateral) used to fund the investigation, initiation and prosecution of such Avoidance Actions or tort actions.  Subject to paragraph 18 hereof and the Carve-Out, the Revolver Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto).

(d)    _Term Lender Adequate Protection Claims_.  Subject in all respects to the Carve-Out and paragraphs 14, 18, and 19 below, the Committee Judgment, as additional adequate protection of the interests of the First Lien Agent, Second Lien Agent, First Lien Lenders and Second Lien Lenders, solely with respect to Prepetition Term Loan Collateral, to the extent those interests are not later determined to be invalid, the First Lien Term Loan Agent and the Second Lien Agent are hereby granted for their benefit and the benefit of the First Lien Term Loan Lenders and Second Lien Lenders, respectively, are hereby granted allowed administrative priority claims under section 507(b) of the Bankruptcy Code solely assertable against TOUSA and Homes LP (the "_Term Lender Adequate Protection Claims_" and, together with the Revolver Adequate Protection Claims, the "_Adequate Protection Claims_") for any diminution in value of the Prepetition Term Loan Collateral from and after the Petition Date, whether as a result of the imposition of the automatic stay, or the use, sale or lease of such collateral, including the use of Cash Collateral; _provided, however_, the Term Lender Adequate Protection Claims shall not be satisfied from Avoidance Actions or Avoidance Action Proceeds; _provided, further, however_, for the avoidance of doubt, the Term Lender Adequate Protection Claims relate solely to any

26

diminution in value of the Prepetition Term Loan Collateral, any such determination will be made by the Court; *provided, further, however*, that any claim by the Second Lien Agent (on behalf of itself and the Second Lien Lenders) to reimbursement under this subparagraph 5(d) is subject to subordination and shall be junior in priority in all respects to the First Lien Term Liens and Revolver Liens and their respective claims.  Subject to paragraph 18 hereof and the Carve-Out, the Term Loan Adequate Protection Claims shall have priority solely over all administrative expenses assertable against TOUSA and Homes LP of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise (whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto); *provided, further* that the Term Lender Adequate Protection Claims in favor of the Second Lien Agent and Second Lien Lenders shall be subordinate and junior in all respects in right of payment and otherwise, to the Adequate Protection Claims in favor of the Revolver Agent (on behalf of itself and the Revolver Lenders), the First Lien Agent (on behalf of itself and the First Lien Term Loan Lenders) and the Revolver Liens and the First Lien Term Liens.

(e)     Interest and Fees.  As further adequate protection during the Cash Collateral Period, subject to section 506(b) of the Bankruptcy Code, and, subject to paragraph 14, the Debtors shall, on a calendar monthly basis, promptly pay in cash (i) all accrued but unpaid reasonable costs and expenses of the Revolver Agent (consisting of all reasonable fees and expenses of Chadbourne & Parke LLP and Smith Hulsey & Busey LLP (solely as such fees and expenses relate to the Revolver)), for which an invoice was delivered to counsel for the Debtors

27

and counsel for the Creditors' Committee; and (ii) an amount equal to all accrued but unpaid interest on the Revolver Indebtedness at the non-default rate specified in the Revolver (with the Revolver Agent reserving its rights to seek the default rate of interest and with other parties in interest reserving their rights to challenge such assertions) and all other reasonable fees, expenses, costs and charges provided under the Revolver or any other Revolver Financing Document for which an invoice was delivered to counsel for the Debtors and counsel for the Creditors' Committee, in each case regardless of whether such amounts accrued prior to the Petition Date and all without further motion, fee application or order of the Court but subject to timely objection by the Creditors' Committee and any further resulting order of the Court.  All payments made to or for the benefit of the Revolver Agent and the Revolver Lenders pursuant to this Order, or any Prior Financing Order (including the payment of professional fees) shall be without prejudice to the right of the Creditors' Committee or a party in interest to allege, and this Court or any other court of competent jurisdiction to order that, under applicable law, all or any portion of such payments should be applied to reduce the principal obligations owing under the Revolver or should be disgorged, as applicable.  For the avoidance of doubt, no fees, costs, interest, or expenses shall be paid to the First Lien Agent, the First Lien Term Loan Lenders, the Second Lien Agent, or the Second Lien Lenders.

(f)    Adequate Protection Payments – Modification of Certification Requirements. Pursuant to subparagraph 7(e) of the First Cash Collateral Order, the First Lien Agents, the Debtors and the Creditors' Committee hereby remove the Certification requirements set forth in subparagraph 7(d) of the First Cash Collateral Order (the "*Certification Requirements*") solely with respect to those First Lien Term Loan Lenders who timely post an adequate supersedeas bond (collectively, the "*First Lien Term Loan Bonds*") pursuant to the order on motions for a

28

stay pending appeal entered by the Court on October 30, 2009 [D.E. #723][2] (as subsequently modified, amended and superseded by the District Court on November 20, 2009, the "*Bond Order*"); *provided, however,* in the event (i) any First Lien Term Loan Bond is surrendered, withdrawn, removed, terminated or otherwise eliminated in any way with respect to any First Lien Term Loan Lender, (ii) any First Lien Term Loan Lender fails to comply with the Bond Order or the terms of any First Lien Term Loan Bond, or (iii) any issuer of a First Lien Term Loan Bond fails to perform its obligations under any First Lien Term Loan Bond, the Certification Requirement with respect to such First Lien Term Loan Lender shall be reinstated absent further order of the Court after notice and hearing in accordance with the procedures set forth in paragraph 16(a) below.  Upon entry of a order by the District Court (as hereinafter defined) in the Creditors' Committee's appeal of the order dismissing claims with respect to the Revolver currently pending before the District Court of the Southern District of Florida (the "*District Court*"), Case No. 09-23425 (the "*Revolver Appeal*"), the Certification Requirements may be removed with respect to the Revolver Lenders upon either (a) agreement among the Debtors, the Creditors' Committee and the Revolver Agent, without further order of the Court, or (b) further order of the Court after notice and hearing in accordance with the procedures set forth in paragraph 16(a) below.

(g)     <u>Reporting Requirements</u>.  The Debtors shall furnish to the Prepetition Agents and the Creditors' Committee each of the following:

---

[2]     This docket entry refers to docket in the Adversary Proceeding.

(I)        <u>Weekly Cash Flow Budget</u>.  On the Wednesday of each calendar week (or, if such Wednesday is not a business day, on the next succeeding business day), (i) a Weekly Cash Flow Budget covering the period from the Monday of such calendar week to and including the date that ends thirteen weeks thereafter, (ii) a report setting forth in reasonable detail any material variances from the Weekly Cash Flow Budget on the basis of the actual prior week, (iii) a report setting forth a list of all asset sales made pursuant to the Non-Core Asset Sale Order or any other order of the Court approving asset sales made outside of the ordinary course of the Debtors' business since the date of the last report provided and (iv) a report of cumulative Net Cash Proceeds (as defined in Exhibit "B" to the Third Cash Collateral Order) received by the Debtors with respect to asset sales since the date of the last such report.

(II)        <u>Quarterly Reports</u>.  When and to the extent available after the end of each of the first three fiscal quarters of each fiscal year of TOUSA (or such later date on which TOUSA would have been required to file a Form 10-Q under the Exchange Act, including all permitted extensions), financial information regarding TOUSA and its subsidiaries consisting of consolidated and consolidating unaudited balance sheets as of the close of such quarter and the related statements of income and cash flow for such quarter and that portion of the fiscal year ending as of the close of such quarter, setting forth in comparative form the figures for the corresponding period in the prior year, in each case certified by the Chief Financial Officer of TOUSA as fairly presenting in all material respects the consolidated and consolidating financial position of TOUSA and its subsidiaries as at the dates indicated and the results of their operations and cash flow for the periods indicated in conformity with GAAP (subject to normal year-end audit adjustments); *provided, however*, that the deadline for

delivery of the financial statements as set forth herein may be extended upon request of the Debtors and the consent of the Revolver Agent, with such consent to be granted in the Revolver Agent's sole and absolute discretion, but such consent shall not be unreasonably withheld. Such financial statements shall include a variance report reflecting the variances, if any, between such financial statements and the projections for the corresponding quarter.

(III)    <u>Annual Reports</u>.  When and to the extent available after the end of each fiscal year, financial information regarding TOUSA and its subsidiaries consisting of consolidated and consolidating balance sheets of TOUSA and its subsidiaries as of the end of such year and related statements of income and cash flows of TOUSA and its subsidiaries for such fiscal year, all prepared in conformity with GAAP and certified, in the case of such Consolidated Financial Statements, by Ernst & Young LLP or another nationally recognized independent certified public accountant, together with the report of such accounting firm stating that (i) such financial statements fairly present in all material respects the consolidated financial position of TOUSA and its subsidiaries as at the dates indicated and the results of their operations and cash flow for the periods indicated in conformity with GAAP applied on a basis consistent with prior years (except for changes with which such independent certified public accountants shall concur and which shall have been disclosed in the notes to the financial statements) and (ii) the examination by such accountants in connection with such consolidated financial statements has been made in accordance with generally accepted auditing standards, and accompanied by a certificate stating that in the course of the regular audit of the business of TOUSA and its subsidiaries such accounting firm has obtained no knowledge that a Cash Collateral Termination Event (as hereafter defined) has occurred and is continuing or, if in the

opinion of such accounting firm, a Cash Collateral Termination Event has occurred and is continuing, a statement as to the nature thereof.

(IV)   <u>Cash Collateral Termination Event Notices</u>.   As soon as practicable, and in any event within five business days after a Responsible Officer (as defined in the Revolver) of TOUSA has actual knowledge of the existence of any Cash Collateral Termination Event, the Debtors shall give the Prepetition Agents and the Creditors' Committee notice specifying the nature of the Cash Collateral Termination Event, which notice, if given by telephone, shall be promptly confirmed in writing on the next business day.

(V)   <u>Inventory Aging Report and Unit Stats</u>.

(1)   No later than the 15th day of each calendar month, TOUSA shall deliver a monthly inventory aging report and schedule of home closings as of the last day of the prior month executed by a responsible officer of TOUSA.

(2)   The Revolver Agent and its agents and representatives may, upon reasonable prior notice to TOUSA and at TOUSA's sole cost and expense, make physical verifications of the Borrowing Base Assets in any reasonable manner and through any reasonable medium that the Revolver Agent considers reasonably advisable, but not more frequently than once each fiscal quarter before the occurrence of the Cash Collateral Termination Date.  TOUSA shall furnish all such reasonable assistance and information as the Revolver Agent may reasonably require in connection with any such verification.

(VI)   <u>Material Developments with Respect to Joint Ventures</u>.  TOUSA shall deliver to the Prepetition Agents and the Creditors' Committee reports with respect to the Debtors' Joint Ventures (as defined in the Third Cash Collateral Order) covering material

developments affecting any Joint Venture that would be required to be disclosed by the Joint Venture in a Form 8-K filing with the SEC if such Joint Venture were a public company, such reports to be delivered promptly following such material development.  In addition, promptly following receipt thereof, TOUSA shall deliver to the Prepetition Agents and the Creditors' Committee a copy of any notice making a claim against any Debtor for any recourse obligation, a copy of any notice or communication with respect to the termination of any Joint Venture, and a copy of any notice or communication with respect to the cancellation, termination, surrender, sale, transfer or other disposition of the interest of any Debtor or any of their subsidiaries or affiliates in any Joint Venture.

(VII)     Other Information.   Subject to all applicable privileges, the Debtors will provide the Prepetition Agents and the Creditors' Committee with such other reasonable information respecting the business, properties, condition, financial or otherwise, or operations of any Debtor, (including projections) as the Prepetition Agents and the Creditors' Committee may from time to time reasonably request.  In addition, the Debtors shall cooperate with and permit representatives of the Prepetition Agents and the Creditors' Committee to have reasonable access to their premises and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses).  All copies of reports, information and other materials provided pursuant to any clause of this subparagraph 6(d) shall, unless previously publicly filed by the Debtors, comprise confidential information under the Prepetition Financing Documents and any confidentiality agreements entered into with any Prepetition Secured Lenders and the Creditors' Committee.

6.      <u>Perfection of Adequate Protection Liens</u>.  Except as otherwise provided herein or in the Committee Judgment and subject in all respects to any appeal, amendment or modification thereof, the Adequate Protection Liens granted pursuant to this Order, the Seventh Interim Cash Collateral Order, the Sixth Final Cash Collateral Order, the Sixth Interim Cash Collateral Order, the Fifth Final Cash Collateral Order, the Fifth Interim Cash Collateral Order, the Fourth Final Cash Collateral (solely with respect to Revolver Adequate Protection Liens), the Fourth Interim Cash Collateral Order (solely with respect to Revolver Adequate Protection Liens), the Interim Third Cash Collateral Order (solely with respect to Revolver Adequate Protection Liens), the Second Final Cash Collateral Order (solely with respect to Revolver Adequate Protection Liens), the Second Interim Cash Collateral Order (solely with respect to Revolver Adequate Protection Liens), the First Cash Collateral Order (solely with respect to Revolver Adequate Protection Liens) and the Interim DIP Order (solely with respect to Revolver Adequate Protection Liens) shall be deemed to be perfected automatically as of the Petition Date (solely with respect to the applicable Debtors), without the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any collateral, *provided, however,* that if the Prepetition Agents shall, in their sole discretion and at their sole expense, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents with respect to the applicable Debtor, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the later of the Petition Date or the date upon which the applicable Debtors acquired

34

the property subject to the mortgages, financing statements, notices of liens and other similar instruments and documents at issue.  Each and every federal, state and local government agency or department is hereby directed to accept a copy of this Order as evidence of the validity, enforceability and perfection as of the Petition Date of the liens granted or authorized pursuant to this Order to or for the benefit of the Prepetition Agents and/or Prepetition Secured Lenders solely to the extent set forth herein.

7.    <u>Limitation on Charging Expenses Against Collateral</u>.  Subject in all respects to paragraph 18 hereof, except for the Carve-Out, and unless otherwise provided herein, no administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to any of the Revolver Lenders and the First Lien Lenders (solely with respect to the Term Loan Collateral) with respect to their interests in the Revolver Collateral or the Prepetition Term Loan Collateral, as applicable, for the Cash Collateral Period or any subsequent period in which the Debtors are permitted to use Cash Collateral pursuant to the terms of this Order, as applicable, pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, without the prior written consent of the Revolver Lenders and the First Lien Lenders (solely with respect to the Term Loan Collateral), as applicable, and no such consent shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Revolver Lenders and the First Lien Lenders (solely with respect to the Term Loan Collateral) , or otherwise.  Nothing herein shall otherwise preclude the incurrence of administrative expenses that are neither paid from Cash Collateral nor assessed against the Revolver Lenders and the First Lien Lenders (solely with respect to the Term Loan Collateral).

8.    <u>Priority of Obligations</u>.  Subject in all respects to paragraph 18 hereof and except as otherwise set forth herein, pursuant to Bankruptcy Code section 507(b), each of the

Debtors' obligations arising under this Order in respect of the Prepetition Secured Indebtedness, the Prepetition Revolver Collateral, the Prepetition Term Loan Collateral, or the Adequate Protection Liens (as applicable) shall constitute obligations of the applicable Debtors with priority over any and all administrative expenses or other claims arising or granted under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 546(c) or 726 with respect to each such Debtor, subject only to the payment of the Carve-Out.

9.    <u>Carve-Out</u>.  Subject to the terms and conditions contained in this paragraph 9, all liens on and security interests in the Prepetition Revolver Collateral and the Prepetition Term Loan Collateral recognized by or granted pursuant to this Order, as applicable, and all superpriority administrative claims granted pursuant to this Order shall be subordinate to the following (the "*Carve-Out*") with respect to the applicable Debtors' estates:

(a)    fees of the Clerk of the Bankruptcy Court and the United States Trustee pursuant to 28 U.S.C. § 1930(a);

(b)    in the event of a conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, the fees and expenses incurred by such chapter 7 trustee and any professionals retained by such trustee, in an aggregate amount not exceeding $50,000 (which amount shall be co-extensive and not additional to the amount provided under the Prior Financing Orders;

(c)    fees and expenses of the professionals retained by the Debtors (the "*Debtors' Professionals*"), incurred from the Petition Date until the date of this Order, *provided,* that such amounts are either paid in accordance with this Courts' Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (the "*Interim*

*Compensation Order"*) [D.E. #103] or deposited into the Professional Fees Accounts pursuant to paragraph 11 below;

(d)      fees and expenses of the professionals retained by the Creditors' Committee (the "*Committee's Professionals*" and together with the Debtors' Professionals, the "*Professionals*") incurred from the Petition Date until the date of this Order, *provided,* that such amounts are either paid in accordance with the Interim Compensation Order or deposited into the Professional Fees Accounts pursuant to paragraph 11 below;

(e)      fees and expenses of the Professionals paid by the Debtors in accordance with the Interim Compensation Order;

(f)      the amounts deposited in the Professional Fees Accounts (as defined in paragraph 11 below) to the extent that the funds therein are used to satisfy the allowed claims of the Professionals;

(g)      fees and expenses of the Debtors' Professionals incurred subsequent to a Cash Collateral Termination Event (other than as provided in 15(a)(IV)), in an aggregate amount not to exceed $1,000,000 (which amount shall be co-extensive and not additional to the amount provided under the Prior Financing Orders, *provided,* that timely applications for payment of such professional fees have been made in accordance with the Interim Compensation Order; and

(h)      fees and expenses of the Committees' Professionals incurred subsequent to a Cash Collateral Termination Event (other than as provided in subparagraph 15(a)(IV)), in an aggregate amount not to exceed $250,000 (which amount shall be co-extensive and not additional to the amount provided under the Prior Financing Orders, *provided,* that timely applications for payment of such professional fees have been made in accordance with the Interim Compensation Order.

(i)    For the avoidance of doubt, subject to appeal of the Original Committee Complaint or any Committee Complaint and subject in all respects to any appeal, amendment or modification of the Committee Judgment, amounts incurred by the Professionals in excess of the Carve-Out may be paid by the Other Debtors without regard to any limitation contained herein to the extent the Revolver is paid in full.

10.    Use of Cash Collateral for Litigation.  Notwithstanding the objections of the Prepetition Secured Parties thereto, by express Order of the Court, Cash Collateral may be used by the Creditors' Committee to object to or contest the Prepetition Secured Indebtedness or the Prepetition Liens, or to assert or prosecute any actions, claims or causes of action against any of the Prepetition Agents and/or Prepetition Secured Lenders without the consent of the applicable Prepetition Agent and/or Prepetition Lender, *provided*, *however*, in the event the District Court enters an order affirming the dismissal of the claims asserted by the Creditors' Committee with respect to the Revolver, nothing contained in this Order shall preclude the Revolver Agent from seeking, after notice and a hearing, to modify this Order, including the provisions of this paragraph 10, to seek to prohibit the Creditors' Committee use of Cash Collateral, if any, to pursue further appeal of such order.

11.    Professional Fees Accounts.  Except as may otherwise be provided in orders of the Court authorizing the retention of specific professionals, the following procedures shall apply with respect to payment of fees and expenses of Professionals:

(a)    Together with the timely delivery of each monthly statement delivered by a Professional pursuant to paragraph 2(a) of the Interim Compensation Order, such Professional shall also deliver to the Debtors, the Creditors' Committee and the Prepetition Agents a good faith estimate of its fees for professional services and reimbursable expenses for the succeeding

38

calendar month (excluding any bonuses, success fees, transaction fees, investment banking fees, restructuring fees and similar fees) (the "*Advance Estimate*").

(b)       On the date(s) that the Debtors pay all or any portion of a monthly statement described in paragraph (a) above pursuant to subparagraph 2(e) or subparagraph 2(g) of the Interim Compensation Order, the Debtors shall:

(I)       transfer to the separate segregated, interest bearing bank account in the name of the Debtors as established pursuant to the First Cash Collateral Order (the "*Professional Fees Holdback Account*") the balance of such monthly statement (or portion no longer subject to an objection pursuant to paragraph 2(g) of the Interim Compensation Order) (the "*Holdback*" and, together with the Advance Estimate, the "*Conditional Professional Fees*"), which amounts shall be disbursed from the Professional Fees Holdback Account upon further order of the Court;

(II)       transfer to the separate segregated, interest bearing bank account in the name of the Debtors as established pursuant to the First Cash Collateral Order (the "*Estimated Professional Fees Account,*" and, together with the Professional Fees Holdback Account, the "*Professional Fees Accounts*") an amount, if any, equal to the Advance Estimate; *provided, however*, that nothing herein shall prejudice or impair the rights of any Professional to request an award of compensation in excess of the Advance Estimate or the Prepetition Agents and/or Prepetition Secured Lenders to object to the amount or reasonableness of any requested Professional fees or expenses; and

(III)       (a) to the extent the balance of the Estimated Professional Fees Account exceeds the Advance Estimate (the "*Excess Estimate*") for any Professional or (b) any

amounts in the Professional Fees Holdback Account are subsequently disallowed (the "*Disallowed Holdback Fees*"), withdraw such Excess Estimate from the Estimated Professional Fees Account or the Disallowed Holdback Fees from the Professional Fees Holdback Account, as applicable, with respect to each of the Professionals and redeposit such amount(s) in the Debtors' debtor in possession operating account(s).

(c)     Funds deposited in the Professional Fees Accounts shall be available and may be used by the Debtors solely for the payment of the Conditional Professional Fees to the extent not previously paid.  Neither the Debtors nor any creditor of any of the Debtors (except for the Revolver Agent and the Revolver Lenders and the First Lien Term Loan Agent and the First Lien Term Loan Lenders (solely to the extent such amounts constitute Term Loan Collateral) shall have a claim or interest in the funds or deposits in the Professional Fees Accounts.

12.     <u>Reservation of Rights of Prepetition Agents and Prepetition Secured Lenders</u>. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the Prepetition Agents or Prepetition Secured Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Revolver Lenders to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers) or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and any agreements among the Prepetition Agents, the Prepetition Secured Lenders, the Creditors' Committee, and the Debtors, a

40

chapter 11 plan or plans for any of the Debtors;  (b) any of the rights of the Prepetition Secured Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, including prior to a Cash Collateral Termination Event or in connection with the incurrence of Professional Fees in accordance with paragraph 11 hereof, and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Revolver Lenders.  Nothing herein shall prejudice the rights of any party to oppose any of the foregoing forms of relief that may be sought by any of the Prepetition Secured Lenders; *provided, however*, that the Debtors are prohibited from challenging the acknowledgments made in paragraphs C, D, E and F herein.

13.    [Reserved].

14.    Challenge Period.

(a)    Pursuant to the First Cash Collateral Order, each Debtor in its individual capacity forever released, waived and discharged each Prepetition Secured Party, together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "*Released Parties*"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Financing Documents, any aspect of the prepetition relationship between any Debtor relating to any of the Prepetition Financing Documents or any transaction contemplated thereby, on the one hand, and any or all of the Released Parties, on the other hand, or any other acts or omissions by any or all of the Released Parties in connection with any of the Prepetition Financing Documents or their prepetition relationship with any Debtor or any affiliate thereof

41

relating to any of the Prepetition Financing Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, enforceability, or perfection of the Prepetition Liens or Prepetition Secured Indebtedness, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 or chapter 7 of the Bankruptcy Code or any other claims and causes of action and any resulting subordination or re-characterization of any payments made to the Prepetition Secured Lenders pursuant to this Order or the Prior Financing Orders (for the avoidance of doubt, (i) all parties reserved and continue to reserve their rights as to the ultimate characterization of any fees payable hereunder or under the Prior Financing Orders, as applicable as principal, interest or fees; and (ii) all Prepetition Agents and Prepetition Secured Lenders reserved their rights and continue to reserve their rights as to claims against other Prepetition Agents and Prepetition Secured Lenders) (all such claims, defenses and other actions are collectively defined as the "*Claims and Defenses*").  For the avoidance of doubt, the release by the Debtors approved in the Prior Financing Orders and in this paragraph shall not constitute a defense by the Prepetition Agents and/or Prepetition Secured Lenders to any action commenced by any party other than the Debtors consistent with this paragraph 14, paragraph 14 of the Seventh Interim Cash Collateral Order, paragraph 14 of the Sixth Final Cash Collateral Order, paragraph 14 of the Sixth Interim Cash Collateral Order, paragraph 14 of the Fifth Final Cash Collateral Order, paragraph 13 of the Fifth Interim Cash Collateral Order, paragraph 13 of the Fourth Final Cash Collateral Order, paragraph 13 of the Fourth Interim Cash Collateral Order, paragraph 14 of the Third Cash Collateral Order, paragraph 14 of the Second Final Cash Collateral Order, paragraph 14 of the Second Interim Cash Collateral Order and paragraph 16 of the First Cash Collateral Order, even if such party is prosecuting a claim or defense that was the property of any Debtor's estate at the

time of the giving of such release or such party is prosecuting such claim or cause of action in the name of any Debtor or as a representative of the estate of any Debtor.

(b)      The First Cash Collateral Order provided that any party in interest (including the Creditors' Committee as representative of the Debtors' estates), other than any Debtor, could (1) file a complaint pursuant to Bankruptcy Rule 7001, (2) object to the allowability of any of, or any portion of, the Prepetition Secured Lenders' liens or claims in accordance with Bankruptcy Code sections 502 and 1109 and Bankruptcy Rule 3007 without the need to seek further relief from this Court, or (3) take such other action or seek another mechanism seeking to invalidate, avoid, subordinate or otherwise challenge the Prepetition Secured Indebtedness, the Prepetition Liens, or any liens, claims or other obligations incurred in connection with any of the foregoing or pursue claims or causes of action against any Prepetition Secured Party (each of (1)-(3) above, a "*Challenge*"); *provided, however,* that such Challenge(s) had to be filed in this Court no later than July 26, 2008 (the "*Challenge Period*").  Pursuant to this Order, the Prior Financing Orders, the Challenge Period may only be extended either (i) by the Court pursuant to an order after notice and a hearing and for cause shown, or (ii) as may be agreed to in writing by (a) the Revolver Agent with respect to the time to file any such complaint relating to the liens and claims arising under the Revolver Financing Documents; (b) the First Lien Agent with respect to the time to file any such complaint relating to the liens and claims arising under the First Lien Term Loan Financing Documents; and (c) the Second Lien Agent with respect to the time to file any such complaint relating to the liens and claims arising under the Second Lien Financing Documents.

(c)      Committee Complaint.  On July 14, 2008, the Creditors' Committee commenced that certain adversary proceeding case number 08-01435 in the Bankruptcy Court for the

43

Southern District of Florida (the "*Adversary Proceeding*") and filed that certain Adversary Complaint (the "*Original Committee Complaint*") [D.E. # 1³ seeking to avoid as fraudulent and preferential transfers of up to $800 million of the Prepetition Secured Indebtedness. The Committee Complaint additionally sought, among other things, (1) to recover payments already made on the Prepetition Secured Indebtedness, (2) in the alternative, to recover the proceeds of the Prepetition Secured Indebtedness, and (3) to set aside as a preferential transfer the grant of a security interest in a tax refund of more than $200 million (the "*2007 Federal Tax Refund*"). Furthermore, the Committee Complaint, among other things, objects to certain claims lodged against the Debtors by the Prepetition Agents and Prepetition Secured Lenders. The Creditors' Committee amended the Original Committee Complaint on October 17, 2008 by filing the First Amended Adversary Complaint [D.E. #120], which was thereafter amended and supplemented on October 22, 2008 by the Corrected First Amended Adversary Complaint [D.E. #133] (collectively and as may have been or will be amended from time to time, the "*Committee Complaint*"). On October 13, 2009, the Court entered a Final Judgment in favor of the Committee [D.E. #659], which was amended and replaced on October 30, 2009 by the Amended Final Judgment [D.E. #721] (as amended, the "*Committee Judgment*") concluding, among other things, that (i) "[p]ursuant to 11 U.S.C. §§ 544 and 548 and under applicable New York and Florida fraudulent transfer law, (a) all obligations of the Conveying Subsidiaries to the First and Second Lien Lenders arising from the July 31 Transaction; (b) all claims of the First and Second

---

³     All docket entries in this subparagraph 14(c) refer to the Adversary Proceeding docket and all capitalized terms used in this subparagraph 14(c) but not otherwise defined in this Order shall have meanings ascribed to such terms in the Committee Judgment.

Lien Lenders asserted or assertable against the Conveying Subsidiaries; and (c) all liens granted by the Conveying Subsidiares to secure such obligations and claims, are . . . **AVOIDED** and all such claims are **DISALLOWED**" (emphasis in original). The Committee Judgment further concludes that "[p]ursuant to 11 U.S.C. § 550 and under applicable New York and Florida fraudulent transfer law, the First and Second Lien Lenders shall **DISGORGE** to the Conveying Subsidiaries' estates any and all principal, interest, costs, expenses and other fees or amounts paid to, for the benefit of, or on behalf of, the First and Second Lien Lenders or in respect of the First and Second Lien Lenders' asserted claims or obligations against the Conveying Subsidiaries' estates . . .," which "[f]or the avoidance of doubt . . . shall include, but not be limited to, any and all (a) fees and expenses paid to, for the benefit of, or on behalf of, the First and Second Lien Lenders' respective counsel and advisors, pursuant to the First and Second Lien Term Loan Agreements, and (b) payments to, for the benefit of, or on behalf of, the First and Second Lien Lenders pursuant to" the Prior Financing Orders.

(d)　　Noteholder Objection.  On January 30, 2008, certain holders of unsecured notes filed the Objection to Claims of Debtors' Pre-Petition Lenders Filed by Creditors Attentus CDO I, Ltd., Attentus CDO II, Ltd., Aurelius Capital Master, Ltd., Aurelius Capital Partners, LP, GSO Credit Opportunities Fund (Helios), L.P., GSO Special Situations Fund L.P., GSO Special Situations Overseas Master Fund Ltd., K Squared Capital Master Fund L.P., Lyxor/K Squared Capital Fund Ltd., Trapeza CDO X, Ltd. (the "*Noteholder Objection*") [D.E. #82] objecting to claims asserted by the Prepetition Agent and/or Prepetition Secured Lenders.

(e)　　Because no Challenges other than the Committee Complaint and the Noteholder Objection were filed within the Challenge Period as provided in the First Cash Collateral Order, then pursuant to this Order, the Seventh Interim Cash Collateral Order, the Sixth Final Cash

45

Collateral Order, the Sixth Interim Cash Collateral Order, the Fifth Final Cash Collateral Order, the Fifth Interim Cash Collateral Order, the Fourth Final Cash Collateral Order, the Fourth Interim Cash Collateral Order, the Third Cash Collateral Order, the Second Final Cash Collateral Order, the Second Interim Cash Collateral Order and the First Cash Collateral Order (i) any and all other Claims and Defenses other than the Committee Complaint against any of the Released Parties are hereby, without further notice to or order of the Court, deemed to have been forever relinquished, released and waived as to the Creditors' Committee and any other person or entity, and (ii) the Prepetition Secured Indebtedness and the Prepetition Liens, the releases of the Claims and Defenses against the Released Parties, and any prior payments on account of or with respect to the Prepetition Secured Indebtedness as to any of the Revolver, the First Lien Term Loan or the Second Lien Credit Agreement, respectively, shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor.

(f)    For the avoidance of doubt, any amendments or supplements to any timely Challenge filed pursuant to this paragraph, paragraph 14 of the Seventh Interim Cash Collateral Order, paragraph 14 of the Sixth Final Cash Collateral Order, paragraph 14 of the Sixth Interim Cash Collateral Order, paragraph 14 of the Fifth Final Cash Collateral Order, paragraph 13 of the Fifth Interim Cash Collateral Order, paragraph 13 of the Fourth Final Cash Collateral Order, paragraph 13 of the Fourth Interim Cash Collateral Order, paragraph 14 of the Third Cash Collateral Order, paragraph 14 of the Second Final Cash Collateral Order, paragraph 14 of the Second Interim Cash Collateral Order or paragraph 16 of the First Cash Collateral Order,

including the Committee Complaint, shall be governed by the applicable Federal Rules of Civil Procedure or other applicable law.

(g)　　In light of, and subject in all respects to, the Committee Judgment, the Creditors' Committee has successfully asserted a Challenge.  As such and subject to any appeal, amendment or modification of the Committee Judgment, pursuant to paragraph 14(g) of the Seventh Interim Cash Collateral Order, pursuant to paragraph 14(g) of the Sixth Final Cash Collateral Order, pursuant to paragraph 14(g) of the Sixth Interim Cash Collateral Order, pursuant to paragraph 14(g) of the Fifth Final Cash Collateral Order, paragraph 13(g) of the Fifth Interim Cash Collateral Order, paragraph 13(g) of the Fourth Final Cash Collateral Order, paragraph 13(g) of the Fourth Interim Cash Collateral Order, paragraph 14(g) of the Third Cash Collateral Order, paragraph 14(g) of the Second Final Cash Collateral Order, paragraph 14(g) of the Second Interim Cash Collateral Order, or paragraph 16(d) of the First Cash Collateral Order, any and all Term Loan Adequate Protection Liens and Term Loan Adequate Protection Claims granted to the First Lien Term Loan Agent (on behalf of itself and the Prepetition First Lien Term Loan Lenders) and the Second Lien Agent (on behalf of itself and the Second Lien Lenders) under the Prior Financing Orders against any of the Other Debtors are hereby vacated and disallowed, as applicable, and deemed to be of no further force and effect as if never granted.

(h)　　Pursuant to paragraph 14(g) of the Seventh Interim Cash Collateral Order, paragraph 14(g) of the Sixth Final Cash Collateral Order, paragraph 14(g) of the Sixth Interim Cash Collateral Order, paragraph 14(g) of the Fifth Final Cash Collateral Order, paragraph 13(g) of the Fifth Interim Cash Collateral Order, paragraph 13(g) of the Fourth Final Cash Collateral Order, paragraph 13(g) of the Fourth Interim Cash Collateral Order, paragraph 14(g) of the Third Cash Collateral Order, paragraph 14(g) of the Second Final Cash Collateral Order, paragraph

14(g) of the Second Interim Cash Collateral Order, or paragraph 16(d) of the First Cash Collateral Order, nothing herein shall be deemed to limit (a) the ability of this Court to further modify the scope of the Adequate Protection Liens and Adequate Protection Claims granted hereunder or under the Prior Financing Orders against a Debtor that is determined to be not liable for all or a portion of the Prepetition Secured Indebtedness or (b) the rights of any Prepetition Agent or Prepetition Secured Lender to oppose such modification.

15.     Letters of Credit.  Notwithstanding anything herein to the contrary, prior to the Cash Collateral Termination Date, the Debtors may, pursuant to this Order, request the renewal or extension of existing letters of credit, provided prior to, or contemporaneously with, the delivery of such a request, the Debtors deposit in an account designated by the Revolver Agent (the "*Letter of Credit Cash Collateral Account*") cash in an amount equal to 104.5% of the face amount of such letters of credit together with any fees associated with such renewal as provided in the Revolver.  This authorization shall not be subject to stay or injunction or affected by the Cash Collateral Termination Date, conversion of the Chapter 11 Cases to chapter 7, dismissal of the Chapter 11 Cases, the appointment of a trustee or examiner or otherwise.

16.     Cash Collateral Termination.

(a)     Notwithstanding anything herein or in the Prepetition Financing Documents to the contrary, the Debtors shall no longer be authorized to use Cash Collateral pursuant to this Order, the Prepetition Financing Documents, or otherwise, and consent to the use of Cash Collateral shall be terminated (the "*Cash Collateral Termination Date*") upon the earlier of (i) January 31, 2011; *provided, however*, and in connection with, and arising out of, any appeal of the Committee Judgment, any party shall have 10 days to file a notice of request for reconsideration of this Order stating (a) the specific provisions of this Order that the party requests be changed

48

and (b) the basis for the request (a "*Reconsideration Notice*"); *provided*, *further*, that upon the filing of any such Reconsideration Notice, a hearing on the Reconsideration Notice will be held at the next regularly scheduled omnibus hearing that is at least 7 days after the Reconsideration Notice was filed, and any objection to the Reconsideration Notice shall be filed at least 3 days before the hearing; and (ii) absent further order of the Court, the date that is 3 business days after the Revolver Agent delivers written notice to the Debtors and the Creditors' Committee of the occurrence of any of the following events (any event shall be referred to as a "*Cash Collateral Termination Event*"):

(I)　　　　material non-compliance by the Debtors with any term, covenant or provision in this Order (as it may be modified in accordance with this Order), subject to the Financial Covenant variance;

(II)　　　　the occurrence after the date hereof of a material adverse effect on any of the business, prospects, performance, assets, operations, condition (financial or otherwise), contingent and other liabilities or material agreements of the Debtors, taken as a whole;

(III)　　　　the entry of an order pursuant to Bankruptcy Code section 363 approving the sale of all or substantially all of the Debtors' assets (but only in the event that the Revolver Agent has not first consented to such sale), *provided, however*, that to the extent that the net proceeds of such sale are sufficient to satisfy all of the Revolver Indebtedness, then such sale shall not constitute a Cash Collateral Termination Event until the closing of the sale;

(IV)　　　　the effective date of any plan of reorganization or liquidation of one or more of the Debtors;

49

(V)      conversion or dismissal of the Chapter 11 Cases, *provided, however*, that if an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Order to or for the benefit of the Prepetition Agents and/or Prepetition Secured Lenders shall continue in full force and effect and shall maintain their priorities as provided in and subject to the express limitations contained in this Order until all obligations in respect thereof shall have been paid in full in cash (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) prior to dismissal, the applicable Debtors shall deliver to the Revolver Agent and the First Lien Agents and record, at the Debtors' cost, financing statements, mortgages and other documentation evidencing perfected liens in either the Revolver Collateral or the First Lien Term Loan Collateral, as applicable, and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens;

(VI)      entry of any order pursuant to sections 364(c)(1) and (d)(1) of the Bankruptcy Code authorizing the applicable Debtors to obtain credit that is payable on a senior priority or *pari passu* basis with the First Lien Indebtedness at the applicable Debtor without the written consent of the First Lien Agents, as applicable; *provided, however*, that the applicable Debtors may, upon further order of the Court, (a) obtain credit that is payable on a junior basis to the Prepetition Secured Indebtedness at the applicable Debtor and (b) incur obligations contemplated by the Budget that are secured by letters of credit or Cash Collateral; *provided, further, however*, that nothing herein shall prevent or restrict the rights of the

50

applicable Prepetition Agent and/or Prepetition Secured Lenders from objecting to the request for any such order referenced in (a) or (b) herein;

(VII)    failure of the Debtors to make the payments specified in paragraph 5 to or on behalf of the Revolver Agent and Revolver Lenders; or

(VIII)    during the Budget Period, allowed professional fees incurred by the Debtors' or the Creditors' Committee's professionals shall not exceed the respective estimates set forth in the monthly professional fee schedule (the "*Professional Fee Schedule,*" a copy of which is attached hereto as Schedule 1) agreed to by the First Lien Agents (on behalf of themselves and the First Lien Lenders) (calculated on a rolling, cumulative basis with a 10% variance); *provided*, *however*, that professional fees incurred during any month in excess of the amounts identified on the Professional Fee Schedule (calculated on a rolling, cumulative basis with a 10% variance) shall not result in a Cash Collateral Termination Event unless and until any party files a Reconsideration Notice within 10 days of receipt of a Fee Notice (defined below); *provided*, *further*, that upon the filing of any such Reconsideration Notice, a hearing on the Reconsideration Notice will be held at the next regularly scheduled omnibus hearing that is at least 7 days after the Reconsideration Notice was filed, and any objection to the Reconsideration Notice shall be filed at least 3 days before the hearing; *provided, further*, that fees incurred by a professional during any month in excess of the amounts identified on the Professional Fee Schedule (after taking into account prior budgeted amounts and fees incurred on a rolling, cumulative basis with a 10% variance) (the "*Additional Fees*") shall be transferred into the Professional Fees Holdback Account pending the submission and approval of an interim fee application (submitted in accordance with the Interim Compensation Order)

51

requesting payment of any such Additional Fees such that the given professional shall not be paid current on the Additional Fees until entry of a Court order approving such Additional Fees; *provided, further*, and for the avoidance of doubt, if a professional exceeds its budgeted amount plus 10% in a given month but such amount does not result in such professional exceeding its cumulative budgeted amounts plus 10% for the current and prior months beginning September 2010, 80% of the Additional Fees incurred by such professional shall be paid current and not be subject to additional holdback; *provided, further*, that the Debtors, the Creditors' Committee and the Revolver Agent (on its behalf and on behalf of the Revolver Lenders) may agree to modify or amend the Professional Fee Schedule without further order of the Court; *provided, further*, that the Debtors shall serve a notice on the 30th day of each month during the Budget Period indicating compliance with (or a potential default under) the Professional Fee Schedule (each, a "*Fee Notice*");  or

(IX)      this Order ceases to be in full force and effect.

(b)      <u>Revolver Agent and Revolver Lender Remedies</u>.

(I)      Upon the occurrence of a Cash Collateral Termination Event, any Revolver Lender and First Lien Lender (solely with respect to the Term Loan Collateral) shall provide three (3) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtors, counsel to the Prepetition Agents and counsel to the Creditors' Committee prior to terminating the Debtors' use of Cash Collateral under this Order.  Notwithstanding anything herein to the contrary, the First Lien Agents retain the right, in their sole discretion, to waive any such Cash Collateral Termination Event permanently or temporarily.  The Debtors, the U.S. Trustee, the Creditors' Committee and any

other parties in interest may seek within the three (3) business day notice period an expedited hearing before this Court solely for the purpose of considering whether, in fact, a Cash Collateral Termination Event has occurred and is continuing.  At the expiration of such three (3) business day period, the applicable First Lien Lenders shall be authorized, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit them to take whatever actions necessary to terminate the Debtors' use of Cash Collateral, including freezing any deposit or securities accounts.

(II)    On or after the Cash Collateral Termination Date, the Prepetition Secured Parties shall not exercise any of their respective rights and remedies hereunder, under the other Prepetition Financing Documents or under applicable law (to the extent they might be deemed remedies in respect of the Collateral and other than with respect to freezing any deposit or securities accounts as set forth in subparagraph 15(b)(I) above) in order to effect payment or satisfaction of the Prepetition Secured Indebtedness or to receive any amounts or remittances due hereunder or under the Prepetition Financing Documents, including without limitation, foreclosing upon and selling all or a portion of the Collateral, without further of the Court after notice and a hearing.

(III)    The failure or delay by any First Lien Lender or the First Lien Agent to seek relief or otherwise exercise its rights and remedies under this Order or any of the Prepetition Financing Documents shall not constitute a waiver of any of the rights of such First Lien Lender hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party or applicable Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or

Prepetition Collateral. No holder of a lien that is subject to this Order or granted by the Debtors as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the First Lien Lenders of their respective rights and remedies hereunder, under the Prepetition Financing Documents or under applicable law to effect satisfaction of the Secured Indebtedness or to receive any amounts or remittances due hereunder or under the Prepetition Financing Documents. Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein to the contrary, all of the applicable rights, remedies and benefits and protections provided to the First Lien Lenders under this Order shall survive the Cash Collateral Termination Date.

17. <u>No Granting of Liens</u>. Subject to paragraph 18, except as expressly provided in this Order, the applicable Debtors shall be enjoined and prohibited at any time during the Chapter 11 Cases from granting claims or liens in the Prepetition Revolver Collateral, the Prepetition Term Loan Collateral, as applicable, or any portion thereof to any other parties pursuant to sections 364(d), 503(b) or 507(b) of the Bankruptcy Code or otherwise; *provided, however,* and notwithstanding anything to the contrary in this Order, the statutory imposition of a materialmans', mechanics', tax, artisans', protective lien to sale-leaseback counterparties that are otherwise permitted under this agreement or other lien by operation of law without further action by the Debtors shall not violate this Order; *provided, further, however*, and subject to the written consent of the Revolver Agent, with such consent to be granted in the Revolver Agents' sole discretion, the Debtors shall be permitted to incur Liens (as defined in the First Lien Secured Facilities) as necessary in the ordinary course of business to secure obligations not in excess of $15,000,000 at any time during the Cash Collateral Period.

18.    <u>Postpetition Intercompany Transfer Protections.</u>  Notwithstanding anything to the contrary contained in (i) this Court's Interim Order dated January 31, 2008, (A) Authorizing the Debtors to Continue Using Their Existing Cash Management System, Bank Accounts and Business Forms, (B) Granting Postpetition Intercompany Claims Superpriority Status and (C) Authorizing Continued Intercompany Arrangements at Historical Practices and (D) Scheduling a Final Hearing With Respect to the Relief Granted Herein (the "*Cash Management Order*"), which, to the extent inconsistent with this Order is hereby superseded, (ii) this Order, (iii) the Prior Financing Orders or (iv) any other prior order entered in these cases, as adequate protection for each Debtor for postpetition intercompany transactions, including the continued use of the Debtors' centralized cash management system, to the extent any Debtor has transferred or transfers property (including cash and Cash Collateral) (the "*Transferring Debtor*") from and after the Petition Date, to or for the benefit of any other Debtor, the Court shall fashion a legal or equitable remedy to ensure that the position of the Prepetition Secured Parties is neither improperly enhanced nor impaired by such Transferring Debtor's transfer and that neither the Transferring Debtor and its creditors nor the Prepetition Secured Parties are improperly prejudiced by such transfer.  The Court shall proceed to fashion such legal or equitable remedy at any time, upon request from any party in interest, after notice and hearing. To the extent it is determined by final non-appealable order (or unless otherwise ordered pursuant to a chapter 11 plan(s)) that all or a portion of the 2007 Federal Tax Refund is, whether by operation of any applicable tax allocation agreements among the Debtors (including any predecessor thereof), the Internal Revenue Code, Treasury Regulations, or otherwise, property of the estate of one or more of the Debtors other than, or in addition to, TOUSA, this Court shall fashion a legal or equitable remedy to ensure that the 2007 Federal Tax Refund is transferred in such a manner that the

creditors of one Debtor are not inappropriately advantaged over the creditors of another Debtor of which, all or a portion of the 2007 Federal Tax Refund is property of such Debtor's estate. Promptly upon the entry of this Order, the Debtors shall segregate (from Cash Collateral in their general operating account), pending further order of the Court, approximately (a) $32.3 million and (b) $98.1 million (together, the "*Segregated Accounts*").  The Debtors, the Committee and the First Lien Agents reserve all rights with respect to the Segregated Accounts.  For the avoidance of doubt, the segregation of funds in the Segregated Accounts is without prejudice to any party in interest to argue, among other things, that such proceeds (i) were not properly segregated upon receipt, (ii) do not constitute tax refund funds or (iii) are otherwise free from restriction or encumbrance.

19.     Stipulations in Prior Financing Orders.  In light of, and subject in all respects to, the Committee Judgment and subject to any appeal, amendment or modification thereto, any and all stipulations of the Debtors contained in the Prior Financing Orders relating to the validity and enforceability of each of the First Lien Term Loan, the First Lien Financing Documents, the First Lien Term Loan Indebtedness, the First Lien Term Loan Security Documents, the First Lien Term Liens, the Second Lien Credit Agreement, the Second Lien Financing Documents, the Second Lien Indebtedness, and the Second Lien Liens against any of the Other Debtors is hereby vacated and deemed to be of no further force and effect as if never made.

20.     Leased Premises.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Revolver Lenders contained in this Order or the Revolver, or otherwise available at law or in equity, and subject to the terms of the Revolver, upon written notice to the Debtors and others, as specified in paragraph 15 above, and to the landlord of any leased premises that a Cash Collateral Termination Date has occurred, the

56

Revolver Lenders may enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided,* that the Revolver Lenders shall only pay rent under such leases that first accrues after provision of the Revolver Lenders' written notice referenced above and that is payable during the period of any occupancy by the Revolver Lenders, calculated on a *per diem* basis.  Nothing herein shall require the Revolver Lenders to assume any lease as a condition to the rights afforded to the Revolver Lenders in this paragraph.  Furthermore, any landlord's lien, right of distraint or levy, security interest or other lien or interest that any landlord, warehouseman or landlord's mortgagee may have in any Collateral located on such leased premises is hereby subordinated to the Prepetition Liens.

21.    <u>Successors and Assigns</u>.  The provisions of this Order shall be binding upon and inure to the benefit of each of the Prepetition Agents and Prepetition Secured Lenders and Debtors and their respective successors and assigns (including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of any Debtor or with respect to the property of the estates of any Debtor).

22.    <u>No Discharge</u>.  The obligations of the applicable Debtors under this Order shall not be discharged (and the Debtors waive the right to seek or obtain a discharge of such obligations under section 1141 of the Bankruptcy Code or otherwise) until all obligations arising or payable under this Order are indefeasibly paid in full in cash by the applicable Debtors.

23.    <u>No Modification</u>.  Subject to paragraphs 14 and 18 herein, paragraphs 14 and 18 of the Seventh Interim Cash Collateral Order, paragraphs 14 and 18 of the Sixth Final Cash Collateral Order, paragraphs 14 and 18 of the Sixth Interim Cash Collateral Order, paragraph 14

of the Fifth Final Cash Collateral Order, paragraph 13 of the Fifth Interim Cash Collateral Order, paragraph 13 of the Fourth Final Cash Collateral Order, paragraph 13 of the Fourth Interim Cash Collateral Order, paragraph 14 of the Third Cash Collateral Order, paragraph 14 of the Second Final Cash Collateral Order, paragraph 14 of the Second Interim Cash Collateral Order and paragraph 16 of the First Cash Collateral Order, based upon the findings set forth in this Order, in the event that any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any Prepetition Secured Indebtedness incurred hereunder.  Subject to paragraphs 14 and 18 herein, notwithstanding any such modification, amendment or vacation, any Prepetition Revolver Indebtedness incurred and any claim granted to the Revolver Lenders hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order, and the Revolver Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such Prepetition Secured Indebtedness and claims.

24.    No Setoff.  Notwithstanding anything herein to the contrary, this Order shall not require the Revolver Agent or any Revolver Lender to turn over or release to any party any Cash Collateral in its possession as of the Petition Date that is subject to setoff under the Bankruptcy Code (as defined in the First Lien Financing Documents); *provided* that, until the occurrence of a Cash Collateral Termination Event, no such Revolver Agent or Revolver Lender shall exercise, or seek to exercise, any such setoff rights; *provided further* that all parties hereby

reserve all of their rights as to whether any such setoff is valid and enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

25.    <u>First Cash Collateral Order</u>.  Except as expressly set forth herein, for the avoidance of doubt, and subject to terms of the Committee Judgment, the terms and conditions set forth in subparagraph 7(d) of the First Cash Collateral Order shall continue to control with respect to any Paydown Share (as defined therein) previously received, or to be received, by any Revolver Lender and each Revolver Lender shall remain subject to the disgorgement and Certification Requirements included therein.  Except as expressly set forth herein, to the extent the Committee Judgment is reversed or otherwise modified on appeal, the terms and conditions set forth in subparagraph 7(d) of the First Cash Collateral Order shall continue to control with respect to any Paydown Share (as defined therein) previously received, or to be received, by any First Lien Term Loan Lender and each First Lien Term Loan Lender shall remain subject to the disgorgement and Certification Requirements included therein until further order of the Court.

26.    <u>Affiliates</u>.  Any Affiliate (as defined by the Bankruptcy Code) of any Debtor that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court automatically and immediately, upon the filing of a petition for relief for such Affiliate, shall be deemed to be one of the "Debtors" hereunder in all respects, the chapter 11 case of such Affiliate shall be deemed to be a "Chapter 11 Case" hereunder in all respects and all of the terms and provisions of this Order, including, without limitation, those provisions granting liens on the Revolver Collateral of each of the Debtors and claims in each of the Chapter 11 Cases, automatically and immediately shall be applicable in all respects to such Affiliate and its chapter 11 estate*; provided, however*, for the avoidance of doubt, no provision of this Order

relating to the First Lien Agent, the First Lien Term Loan Lenders, the Second Lien Agent and/or the Second Lien Lenders, shall be deemed to apply to any such Affiliate and its Chapter 11 Case.

27.    To the extent any party should appeal this Order, nothing herein shall be deemed to waive, and all parties expressly reserve, the ability to file a cross-appeal, or to raise any argument or objection to any such appeal, including any objection or argument overruled or resolved by entry of this Order.

28.    This Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure § 6004(h).

29.    The provisions of this Order, including the grant of claims and liens to or for the benefit of the Prepetition Agents and the Prepetition Secured Lenders, and any actions taken pursuant hereto shall survive the entry of any order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

30.    To resolve the concerns raised in the Qualified Objection to Debtors' Third Motion for Authority to Use Cash Collateral filed by Red River/El Dorado 6500, L.L.C. ("*Red River*") and Rancho Sierra Vista, L.L.C. ("*Rancho Sierra*"), [D.E. # 2686], IT IS HEREBY ORDERED that: (1) the liens granted by the First Cash Collateral Order, the Second Interim Cash Collateral Order, the Second Final Cash Collateral Order, the Third Cash Collateral Order, the Fourth Interim Cash Collateral Order, the Fourth Final Cash Collateral Order, the Fifth Interim Cash Collateral Order, the Fifth Final Cash Collateral Order, the Sixth Interim Cash Collateral Order, the Sixth Final Cash Collateral Order, the Seventh Interim Cash Collateral Order and this Order, including, without limitation, the Adequate Protection Liens, do not prime the valid prepetition liens and interests, if any, of Red River, Rancho Sierra and Circle Cross Ranch, LLC ("*CCRLLC*"); and (2) the language of paragraph 16 of the First Cash Collateral

60

Order, paragraph 14(e) of the Second Interim Cash Collateral Order, paragraph 14(e) of the Second Final Cash Collateral Order, paragraph 14(e) of the Third Cash Collateral Order, paragraph 13(e) of the Fourth Interim Cash Collateral Order, paragraph 13(e) of the Fourth Final Cash Collateral Order, paragraph 13(e) of the Fifth Interim Cash Collateral Order, paragraph 14(e) of the Fifth Final Cash Collateral Order, paragraph 14(e) of the Sixth Interim Cash Collateral Order, paragraph 14(e) of the Sixth Final Cash Collateral Order, paragraph 14(e) of the Seventh Interim Cash Collateral Order and paragraph 14(e) of this Order will have no effect on Red River's, Rancho Sierra's and CCRLLC's rights to defend any challenge to the validity, extent, priority, perfection or enforceability of their deeds of trust and covenants that run with the land, as identified in the Proof of Claim filed at D.E. #2149, a duplicate of which was filed at D.E. #3105, and the Objections to the Debtor's Disclosure Statement filed at D.E. #'s 2101 and 2102.

31.    This Order shall constitute findings of fact and conclusions of law; *provided*, *however*, that the representations contained in paragraphs C, D, E and F herein remain subject to the provisions of paragraph 14 herein.

#   #   #

Submitted by:

**BERGER SINGERMAN, P.A.**
Paul Steven Singerman (Florida Bar No. 378860)
200 South Biscayne Boulevard, Suite 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340

      -and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (New York Bar No. 420712)
M. Natasha Labovitz (New York Bar No. 2813251)
Joshua A. Sussberg (New York Bar. No. 4316453)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900

*Co-Counsel to the Debtors*

Copies to:
Paul Steven Singerman
*(Attorney Singerman shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*

**Exhibit A**

**Budget**

TOUSA Inc.
Cash Collateral Covenants (000's)

| Period | Operating Cash Flow | | Covenant | | Allowed Variance | |
|---|---|---|---|---|---|---|
| | Monthly | Cumulative | Monthly | Cumulative | Monthly | Cumulative |
| September 2010 | $ (6,578) | $ (6,578) | $ (16,578) | $ (16,578) | $ 10,000 | $ 10,000 |
| October 2010 | (4,239) | (10,817) | (14,239) | (25,817) | 10,000 | 15,000 |
| November 2010 | (2,323) | (13,140) | (12,323) | (33,140) | 10,000 | 20,000 |
| December 2010 | (4,105) | (17,245) | (14,105) | (42,245) | 10,000 | 25,000 |
| January 2011 | (1,570) | (18,815) | (11,570) | (48,815) | 10,000 | 30,000 |

## Schedule 1

**Professional Fee Schedule**

TOUSA, Inc.
Cash Collateral Budget - September 2010 through January 2011
Estimated Professional Fees

| Constituency | Professionals | Sep-10 | Oct-10 | Nov-10 | Dec-10 | Jan-11 |
|---|---|---|---|---|---|---|
| Debtors Professionals | Kirkland & Ellis LLP | 850,000 | 850,000 | 850,000 | 850,000 | 850,000 |
| | KZC Services, LLC | 400,000 | 500,000 | 400,000 | 500,000 | 400,000 |
| | Greenberg Traurig | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| | Berger Singerman, PA | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| | Lazard Freres & Co. LLC | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Debtors Professionals Total | | 1,425,000 | 1,525,000 | 1,425,000 | 1,525,000 | 1,425,000 |
| Unsecured Creditors Committee Professionals | Akin Gump Strauss Hauer & Feld LLP | 450,000 | 1,000,000 | 450,000 | 1,000,000 | 850,000 |
| | J.H. Cohn LLP | 175,000 | 175,000 | 175,000 | 175,000 | 175,000 |
| | Robbins, Russell, Englert, Orseck, Untereiner | 500,000 | 500,000 | 200,000 | 200,000 | 200,000 |
| | Moelis & Company LLC | 155,000 | 155,000 | 155,000 | 155,000 | 155,000 |
| | Robert Charles Lesser & Co. ( RCLCO) | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| | Stearns Weaver Miller Weissler | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| | Garden City Group, Inc. | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Unsecured Creditors Committee Professionals Total | | 1,392,000 | 1,942,000 | 1,092,000 | 1,642,000 | 1,492,000 |
| Grand Total | | $2,817,000 | $3,467,000 | $2,517,000 | $3,167,000 | $2,917,000 |

**Notes:**

(1) All budgeted professional fees are subject to a cumulative rolling 10% variance per month. For the avoidance of doubt, the 10% variance applies each month. The above schedule does not include fees for the Debtors' ordinary course professionals or Kurtzman Carson Consultants, LLC (the Debtors' claims and noticing agent). In addition, the schedule does not include any contingent fees payable to Berger Singerman relating to preference recoveries. The monthly amount will be measured on a calendar month basis and pro-rated for any partial months.

(2) The figures presented herein represent estimated accrued fees and expenses for the periods indicated.

(3) The monthly fee estimates do not include any holdback payments that might be approved by the Bankruptcy Court during the Cash Collateral Budget Period. Any approved holdback payments will be funded from the Professional Fee Escrow Accounts.

(4) These estimates do not include any amounts for transaction, restructuring, consummation or success fees that might be applied for by the professional firms listed.

(5) Beginning in October 2009, Lazard Freres & Co. agreed to voluntarily reduce its monthly fee from $200,000 to $25,000. Depending upon the circumstances of these cases, Lazard Freres & Co. reserves the right to adjust its monthly fee on a go-forward basis.