## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)
www.flsb.uscourts.gov

In re:                                        Chapter 11

TOUSA, INC., *et al.*,                        Case No. 08-10928-JKO

Debtors.

_____/

### TOUSA, INC.'S, MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING TOUSA, INC. TO ENTER INTO A SETTLEMENT AGREEMENT WITH ZURICH AMERICAN INSURANCE COMPANY AND STEADFAST INSURANCE COMPANY

TOUSA, Inc. ("**TOUSA**"), a debtor and debtor in possession in the above-captioned, jointly administered chapter 11 cases, by and through its undersigned counsel, moves pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Federal Rule of Bankruptcy Procedure 9019, for an order approving a settlement agreement between and among (i) TOUSA and (ii) Zurich American Insurance Company and Steadfast Insurance Company (together, "**Zurich**").[1]  In support of this motion, TOUSA respectfully states as follows:

#### Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]     TOUSA is uncertain as to the internal relationships between Zurich American Insurance Company and Steadfast Insurance Company.  Accordingly, references to "Zurich" in this Motion are to "Zurich American Insurance Company and/or Steadfast Insurance Company."

**Factual Background**

3.      TOUSA and certain of its affiliates filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§101 et seq. (the "**Bankruptcy Code**") on January 9, 2008.  No trustee or examiner has been appointed in the bankruptcy cases.

4.      Zurich provided insurance coverage to TOUSA under various insurance policies, including what is known as the Home Builders' Protective ("**HBP**") program.

5.      TOUSA paid Zurich a total premium of $8,986,023 for HBP Insurance Policy 3697389, commencing January 1, 2007, and ending January 1, 2009 (the "**Policy**"), which was calculated based on TOUSA's estimated gross revenues during the policy period.  Under the Policy, TOUSA was entitled to an audit pursuant to which the actual earned premium is calculated based on actual gross revenues, and if TOUSA is found to have overpaid the premium, it is entitled a refund for any unearned premium paid to Zurich.

6.      After Zurich conducted its audit, Zurich determined that TOUSA's actual revenue during the applicable policy period was approximately 38% lower than its estimated revenue, and that TOUSA was entitled to a return premium refund from Zurich in the amount of $3,061,000.  TOUSA did an analysis and determined that it was entitled to a return premium refund from Zurich in the amount of $3,585,071.  Zurich declined to pay any portion of the return premium to TOUSA.

7.      As a result of Zurich's refusal to turnover the refund and in order to obtain it from Zurich, TOUSA filed a complaint against Zurich, Adversary Proceeding No. 10-03738-JKO (the "**Adversary Proceeding**"), seeking, among other things, the entry of a judgment against Zurich in the amount of $3,585,071.  Zurich filed a Counterclaim against TOUSA (Adv. No. 10-03738-JKO, DE #6) ("**Counterclaim**") on January 20, 2011, asserting that it is entitled setoff the return

premium funds against claims for settlements and defense expenses that it alleges it will incur in the future.

8.      On January 28, 2011, in accordance with this Court's January 24, 2011 *Order Granting in Part Emergency Motion of Zurich American Insurance Company and Its Affiliates as Their Interests May Appear for Relief from the Automatic Stay, to the Extent Necessary, to Assert Defenses/Counterclaims of Setoff in Its Response to the Complaint Filed by the Debtors* (DE # 6794), Zurich deposited the sum of $3,061,000 (the "**Escrowed Funds**") into an escrow account with Greenberg Traurig, P.A. (the "**Escrow Agent**") pursuant to an Escrow Agreement between TOUSA, Zurich and the Escrow Agent, dated January 20, 2011 (the "**Escrow Agreement**").

## Settlement Agreement

9.      Litigating the Adversary Proceeding, including conducting motion practice, discovery and preparing and trying the Adversary Proceeding, would be expensive for TOUSA and its estate and is subject to the risk that TOUSA might not prevail against Zurich. TOUSA and Zurich have, therefore, entered into a Settlement Agreement (the "**Settlement Agreement**") so as to compromise and settle the Adversary Proceeding.   A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A**.

10.      The most substantive terms of the Settlement Agreement are as follows:[2]

- Zurich agrees to release its interest in the Escrowed Funds and the Escrow Agent shall deliver the Escrowed Funds to TOUSA in accordance with the terms of the Escrow Agreement.
- Zurich will pay to TOUSA the sum of $506,000.
- TOUSA shall file a Notice of Dismissal of the Adversary Proceeding with this Court.

---

[2]      To the extent the description herein conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement control.

- No releases are being exchanged and the Settlement Agreement does not affect other claims filed by Zurich or its affiliates against the bankruptcy estates of TOUSA or its affiliates.

## **Legal Standard**

11.     Settlements are generally favored in bankruptcy proceedings, in that they provide for an often needed and efficient resolution in a bankruptcy case." *Tindall v. Mavrode (In re Mavrode)*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997); *see also In re Stein*, 236 B.R. 34, 37 (D. Ore. 1999) ("Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy…").  The bankruptcy court's central inquiry in determining whether to approve a settlement or compromise is whether the proposed settlement is "fair and equitable" and is in the best interests of the estate.  *See, e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (noting that "[c]ompromises are a 'normal part of the process of reorganization,'" and holding that in determining whether a settlement is in the best interests of the estate, the court considers whether the settlement is "fair and equitable") (citation omitted); *In re Southeast Banking Corp.*, 314 B.R. 250, 272-73 (Bankr. S.D. Fla. 2004) (holding a bankruptcy court considers whether a settlement is "fair and equitable"); *see also Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (setting forth four factors to be considered in review of settlements).

12.     The standard for approving a settlement or compromise is well established.  The Court must consider all of the relevant facts and evaluate whether the proposed compromise falls below the "lowest point in the range of reasonableness."  *In re Martin*, 490 F.3d 1272, 1276 (11th Cir. 2007) (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also In re Southeast Banking Corp.*, 314 B.R. at 272.  If it does not, the Court should approve the settlement.

13.     As the former Fifth Circuit Court of Appeals held in *Rivercity v. Herpel (In re Jackson Brewing Co.)*, "[t]o assure a proper compromise the bankruptcy judge must be apprised of all necessary facts for an intelligent, objective and educated evaluation.  He must compare the terms of the compromise with the likely rewards of litigation."  624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Comm.*, 390 U.S. at 425).  Approval of a settlement "does not depend upon establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable."  *Florida Trailer and Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).  Rather, the Court's responsibility is only to "canvass the issues to see 'whether the settlement falls below the lowest point in the zone of reasonableness.'"  *W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  As the court stated in *Florida Trailer*:

> [T]he very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise.  This is a recognition of the policy of the law generally to encourage settlements.  This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

284 F.2d at 571.

14.     In order to evaluate whether to approve a settlement, the Court must consider the four factors set forth by the Eleventh Circuit in *Wallis v. Justice Oaks, II, Ltd.*, *(In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (the "***Justice Oaks II* Factors**"):

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

15.     Applying each of these factors to the circumstances of this case, it is readily apparent that the Settlement Agreement falls well above the lowest point in the range of reasonableness, and accordingly should be approved.

16.     First, TOUSA and Zurich have claims against each other that can be compromised without the uncertainty and cost of protracted litigation.  While TOUSA believes that it would likely succeed in the Adversary Proceeding, it cannot be certain.  The costs of litigation, however, would almost certainly be significant.

17.     Second, while collection difficulty is not an issue per se in this analysis, even if TOUSA were successful in the Adversary Proceeding, Zurich could appeal any adverse judgment or ruling.

18.     Third, continued motion practice, conducting discovery, and preparing and trying the Adversary Proceeding would be expensive for TOUSA and its estate.

19.     Finally, the benefit to be received from the Settlement Agreement – the immediate realization to TOUSA of $3,567,000 for the benefit of creditors – greatly outweighs the costly and time-consuming expense, inconvenience and delay of protracted and costly litigation.

20.     Accordingly, TOUSA believes that the terms of the Settlement Agreement satisfy the *Justice Oaks II* Factors, and should be approved.

21.     In many instances, compromises or settlements under Bankruptcy Rule 9019 are considered to be a sale of property of the estate outside the ordinary course of business under section 363(b) of the Bankruptcy Code.  *See, e.g.*, *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999) (noting that settlements and compromises are generally considered to be a sale of property of the estate).  To the extent that the proposed entry

into and performance of the Settlement Agreement is viewed as a use of estate property, the requested relief should be considered under the business judgment standard. *See, e.g.*, *In re Friedman's Inc.*, 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005) ("Courts review a debtor's use of estate property outside of the ordinary course of business pursuant to a debtor's demonstration of sound business judgment); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that the proposed action is supported by, among other things, a good business reason).

22.    In exercising its review under both section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, a bankruptcy court gives weight to a debtor's sound business judgment. *See, e.g.*, *Friedman's Inc.*, 336 B.R. at 895 ("Courts review a debtor's use of estate property outside of the ordinary course of business pursuant to a debtor's demonstration of sound business judgment."); *In re Southeast Banking Corp.*, 314 B.R. at 273 (noting a court gives "weight to the [debtor's] informed judgment" in considering a settlement under Bankruptcy Rule 9019); *see also Abeles v. Infotechnology (In re Infotechnology)*, 1995 U.S. App. LEXIS 39883 at *4-5 (2d Cir. Nov. 9, 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor).

23.    In the instant case, TOUSA believes, in its sound business judgment, that entering into and performing under the Settlement Agreement is fair and equitable and is in the best interests of its estate and creditors. Moreover, the Settlement Agreement is the product of good faith negotiations among TOUSA and Zurich and results in a cost-efficient resolution of the Adversary Proceeding along with a recovery of more than $3,567,000 to TOUSA's estate for the benefit of creditors.

24.     Accordingly, TOUSA respectfully requests that this Court authorize TOUSA to enter into and perform under the Settlement Agreement.

## <u>Notice</u>

25.     TOUSA provided notice of this motion to: (a) the Office of the United States Trustee for the Southern District of Florida; (b) counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases; (c) counsel to the agent for the Debtors' prepetition first lien facilities; (d) counsel to the agent for the Debtors' prepetition second lien facility; (e) counsel to the ad hoc group of lenders, assignees or participants with respect to the Debtors' prepetition second lien facility; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the indenture trustee for each of the Debtors' outstanding bond issuances; (i) counsel to Zurich; and (j) all parties who have filed notices of appearance and requests for pleadings in these chapter 11 cases.  In light of the nature of the relief requested, TOUSA respectfully submits that no further notice is necessary.

WHEREFORE, TOUSA respectfully requests the entry of an Order approving the Settlement Agreement, and providing such other and further relief as the Court deems just and proper.

Dated:  May 19, 2011.                                       Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorneys for TOUSA, Inc.*
333 Avenue of the Americas
Suite 4400
Miami, Florida  33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By:/s/ *James P. S. Leshaw*
    James P. S. Leshaw
    Florida Bar No. 917745
    Email: leshawj@gtlaw.com
    Padma G. Hinrichs
    Florida Bar No. 0554758
    Email: hinrichsp@gtlaw.com
    Ari Newman
    Florida Bar No. 56575
    Email: newmanar@gtlaw.com

*MIA 181,838,734 3*

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into by and between (i) TOUSA, Inc., Debtor and Debtor-in-Possession ("TOUSA") and (ii) Steadfast Insurance Company, a Delaware corporation and Zurich American Insurance Company, a New York corporation (together, the "Zurich Defendants").

### I.    Recitals

A.    TOUSA and certain of its affiliates filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code") on January 9, 2008.  TOUSA's bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") as case nos. 08-10928-65.  No trustee or examiner has been appointed in the bankruptcy case.

B.    TOUSA commenced Adversary Proceeding Case No. 10-03738-JKO (the "Adversary Proceeding") against Zurich Defendants on November 23, 2010.  In the Adversary Proceeding, TOUSA sought, among other things, recovery of $3,585,071 from Zurich Defendants (the "Disputed Funds"), plus interest and attorneys' fees.  TOUSA alleged in the Adversary Proceeding that its entitlement to the Disputed Funds arose from an overpayment made by TOUSA in connection with a Home Builders' Protective Policy, Policy No. 3697389-03.

C.    On January 28, 2011, in accordance with this Court's January 24, 2011 Order Granting in Part Emergency Motion of Zurich American Insurance Company and Its Affiliates as Their Interests May Appear for Relief from the Automatic Stay, to the Extent Necessary, to Assert Defenses/Counterclaims of Setoff in Its Response to the Complaint Filed by the Debtors (D.E. No. 6794), Zurich Defendants deposited the sum of $3,061,000 (the "Escrowed Funds") of the Disputed Funds into an escrow account with Greenberg Traurig, P.A. (the "Escrow Agent") pursuant to an Escrow Agreement between the Parties and the Escrow Agent, dated January 20, 2011 (the "Escrow Agreement").

D.    The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action relating to the Adversary Proceeding as described in this Agreement.

NOW, THEREFORE, as material consideration and inducements to the execution of this Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## EXHIBIT A

MIA181,836,078v3

## II.    General Provisions

1.    Occurrence of Closing Date; Events Occurring on Closing Date.

   a)    Occurrence of Closing Date.  The Closing Date ("Closing Date") shall occur on the first business day that the Approval Order (defined below) is effective and not subject to a stay.  "Approval Order" means an order of the Bankruptcy Court approving this Agreement.

   b)    Events Occurring on Closing Date.  On the Closing Date, (i) the Escrow Agent shall deliver the Escrowed Funds to TOUSA in accordance with the terms of the Escrow Agreement, (ii) Zurich shall pay to TOUSA by wire transfer of immediately available funds the sum of $506,000.00 and (iii) TOUSA shall file with the Bankruptcy Court a Notice of Dismissal of the Adversary Proceeding in the form attached hereto as Exhibit 1.

2.    Representations of Zurich Defendants.  Zurich Defendants hereby represent to TOUSA that (a) they have not assigned, transferred or otherwise conveyed any claims they have or had against TOUSA; and (b) they have full power and authority to perform all of their obligations under this Agreement.

3.    Representations of TOUSA.  TOUSA hereby represents and warrants to Zurich Defendants that (a) it has not assigned, transferred or otherwise conveyed any claims it has or had against Zurich Defendants and (b) it has full power and authority (subject to approval of the Bankruptcy Court) to execute this Agreement and perform its obligations under this Agreement.

4.    No Release of Claims, Rights or Remedies.  Nothing contained in this Agreement or any exhibit to this Agreement, shall act as a release, waiver or subordination of any claim, right or remedy that any Party has against any other Party, except that all claims, rights and remedies relating to the return of premium under Policy No. 3697389-03 are released, effective on the Closing Date.

5.    Notices.  All notices, requests, demands, claims and other communications required or permitted to be delivered, given or otherwise provided under this Agreement must be in writing and must be delivered, given or otherwise provided:

   a)    by hand (in which case, it will be effective upon delivery);

   b)    by electronic mail (in which case, it will be effective upon delivery);

   c)    by facsimile (in which case, it will be effective upon receipt of confirmation of good transmission); or

   d)    by overnight delivery by a nationally recognized courier service (in which case, it will be effective on the Business Day after being deposited with such courier service);

2

in each case, to the address (or facsimile number) listed below:

| | |
|---|---|
| If to Zurich Defendants: | **William A. Peterson, Esq.**<br>S.V.P. & Associate<br>Red Brook Corporate Center<br>600 Red Brook Boulevard<br>Suite 600<br>Owings Mills MD 21117<br>Telephone: 410-559-8338 (direct)<br>Facsimile: 410-559-8333<br>Email: william.peterson@zurichna.com |
| with a copy (which shall not constitute notice) to: | **Karen "Kitt" Turner, Esq.**<br>Eckert Seamans Cherin & Mellott, LLC<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Telephone: (215) 851-8431<br>Facsimile: (215) 851-8383<br>Email: kturner@eckertseamans.com |
| If to TOUSA, to: | **Sorana Georgescu Keever , Esq.**<br>TOUSA, Inc.<br>4000 Hollywood Blvd., Suite 500N<br>Hollywood, FL 33021<br>Telephone:    (954) 364-4029<br>Facsimile:    (954) 364-4037<br>Email: sgeorgescu@tousa.com |
| with a copy (which shall not constitute notice) to: | **James P.S. Leshaw, Esq.**<br>Greenberg Traurig, P.A.<br>333 Avenue of the Americas<br>Miami, Florida 33131<br>Telephone: (305) 579-0527<br>Facsimile: (305) 961-5527<br>Email: leshawj@gtlaw.com |

Each of the Parties may specify a different address or facsimile number by giving notice in accordance with this Paragraph to each of the other Parties.

3

6.    <u>Amendments and Waivers</u>.  No amendment or waiver of any provision of this Agreement will be valid and binding unless it is in writing and signed, in the case of an amendment, by the Parties, or in the case of a waiver, by the Party against whom the waiver is to be effective.  No waiver by any Party of any breach or violation or default under or inaccuracy in any representation, warranty or covenant hereunder, whether intentional or not, will be deemed to extend to any prior or subsequent breach, violation, default of, or inaccuracy in, any such representation, warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.  No delay or omission on the part of any Party in exercising any right, power or remedy under this Agreement will operate as a waiver thereof.

7.    <u>Entire Agreement</u>.  This Agreement and the other agreements and documents to be executed and delivered pursuant hereto constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede any and all prior and contemporaneous discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral, with respect thereto.

8.    <u>Effective Agreement</u>.  This Agreement shall be effective immediately upon execution and delivery by or on behalf of each of the Parties.

9.    <u>Counterparts; Execution</u>.  This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute but one and the same instrument.  This Agreement will become effective when duly executed by or on behalf of each Party.  Facsimile or other electronically scanned and transmitted signatures shall be deemed originals and shall constitute valid execution and acceptance of this Agreement by the signing/transmitting Party.

10.    <u>Survival</u>.  The covenants and agreements and the representations and warranties set forth in this Agreement shall survive and remain in effect after the Closing.

11.    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction will not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.  If any provision hereof would, under applicable law, be invalid or unenforceable in any respect, then each Party hereto intends that such provision will be construed by modifying or limiting it so as to be valid and enforceable to the maximum extent compatible with, and possible under, applicable law.

12.    <u>Headings</u>.  The headings contained in this Agreement are for convenience purposes only and will not in any way affect the meaning or interpretation hereof.

13.    <u>Construction</u>. The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any of the

4

provisions of this Agreement. The Parties intend that each representation, warranty and covenant contained herein will have independent significance.

14.     <u>Governing Law</u>. This Agreement, the rights of the Parties and all actions arising in whole or in part under or in connection herewith, will be governed by and construed in accordance with the laws of the State of Florida, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

15.     <u>Jurisdiction; Venue; Service of Process</u>.

    a)     <u>Jurisdiction</u>. Each Party, by its execution hereof, (a) hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court for the purpose of any action between or among the Parties (or any of them) arising in whole or in part under or in connection with this Agreement, (b) hereby waives to the extent not prohibited by applicable law, and agrees not to assert, by way of motion, as a defense or otherwise, in any such action, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that any such action brought in one of the above-named courts should be dismissed on grounds of forum non conveniens, should be transferred or removed to any court other than one of the above-named courts, or should be stayed by reason of the pendency of some other proceeding in any other court other than one of the above-named courts, or that this Agreement or the subject matter hereof may not be enforced in or by such court and (c) hereby agrees not to commence any such action other than before one of the above-named courts.

    b)     <u>Service of Process</u>. Each Party hereby (a) consents to service of process in any action between the Parties arising in whole or in part under or in connection with this Agreement in any manner permitted by Florida law, (b) agrees that service of process made by registered or certified mail, return receipt requested, at its address specified in the "Notice" provision of this Agreement, will constitute good and valid service of process in any such action and (c) waives and agrees not to assert (by way of motion, as a defense, or otherwise) in any such action any claim that service of process made in accordance with clause (a) or (b) does not constitute good and valid service of process.

16.     <u>Expenses</u>. Each Party shall bear its own expenses incurred in connection with this Agreement and all matters relating to this Agreement.

17.     <u>Recitals</u>. The recitals to this Agreement are true and correct and by this reference are incorporated herein and made a part of this Agreement.

5

18.    <u>No Assignment</u>.  No Party to this Agreement may assign any of its rights or delegate any of its duties under this Agreement.

19.    <u>Time of the Essence</u>.  Time shall be of the essence for each and every provision hereof.

20.    <u>Calculation of Dates</u>.  If any date upon which, or by which, action required under this Agreement is a Saturday, Sunday or legal holiday recognized by the Federal government, then the date for such action shall be extended to the first day that is after such date and is not a Saturday, Sunday or legal holiday recognized by the Federal government.

21.    <u>**WAIVER OF JURY TRIAL**</u>.  **THE PARTIES HEREBY WAIVE, AND COVENANT THAT THEY WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING IN WHOLE OR IN PART UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLY TO WAIVE THEIR RIGHTS TO TRIAL BY JURY IN ANY ACTION WHATSOEVER BETWEEN OR AMONG THEM RELATING TO THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS, WHICH ACTION WILL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

*MIA181,836,078v3*

22.    <u>No Third Party Beneficiaries</u>.  No Party to this Agreement intends any portion of this Agreement or any exhibit to this Agreement to create any rights or interest or cause of action in favor of any person or entity not a Party to this Agreement, and no person or entity that is not a Party to this Agreement is entitled to rely upon any portion of this Agreement or be treated as third party beneficiaries in or under this Agreement or any exhibit to this Agreement.

Effective Date:  May ___, 2011

**TOUSA, Inc., Debtor and Debtor-in-Possession**

By:_____
Name:_____
Its:_____

**Zurich American Insurance Company**

By: _William A. Peter_____
Name: _WILLIAM A. PETERSON___
Its: _Asst Secy / SVP_____

**Steadfast Insurance Company**

By: _William A. Peter_____
Name: _WILLIAM A. PETERSON___
Its: _Atty Secy / SVP_____

7

Effective Date: May __, 2011

**TOUSA, Inc., Debtor and Debtor-in-Possession**

By: _____
Name: SORANA GEORGESCU
Its: Vice President and Secretary

**Zurich American Insurance Company**

By: _____
Name: _____
Its: _____

**Steadfast Insurance Company**

By: _____
Name: _____
Its: _____