Tabbed for publication



**ORDERED in the Southern District of Florida on January 16, 2014.**

John K. Olson, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:                                     Chapter 11 Cases
                                               Case No. 08-10928-JKO

TOUSA, INC., *et al.,*                      Jointly Administered

                    Debtors
_____/

### ORDER GRANTING IN PART DEBTOR'S AMENDED MOTION [ECF 9518] FOR SUMMARY JUDGMENT ON TOUSA'S OBJECTION TO CLAIM 7574 OF SUPERIOR HOMES AND INVESTMENTS, INC., AND SETTING STATUS CONFERENCE ON JANUARY 28, 2014

This matter came before the Court for hearing on the Debtor's Amended Motion [ECF 9518]

for Summary Judgment on Objection to Claim 7574 of Superior Homes and Investments, Inc., (the

"Motion for Summary Judgment"), filed by the Trustee of the TOUSA Liquidation Trust

("TOUSA"). TOUSA contends, *inter alia,* that Superior Homes and Investments, Inc. ("Superior")

is not entitled to an allowed claim as brought by Robert B. Morrison as Superior's Chapter 7 Trustee

(the "Superior Trustee"), because Superior contractually waived its right to seek monetary damages

against TOUSA, Inc. and its affiliated debtors in these consolidated and confirmed Chapter 11 cases. The issue before the Court on the Motion for Summary Judgment is whether Superior's Claim 7574 should be allowed. This in turn requires (a) interpreting the extent to which undisputed contract language limits Superior's ability to assert monetary damages for breach of specific performance and (b) reconciling any contractual limitations with the potential right to payment so as to create an allowable claim under applicable bankruptcy law. After full briefing, a hearing on the matter and a careful review of the record, the Trustee's Motion for Summary Judgment is **GRANTED** as to any claim for money damages and is **CONTINUED** as to any claim for the return of contractual deposits.

## PROCEDURAL HISTORY

TOUSA and Superior were both large and sophisticated builders and sellers of residential housing. Starting in 2003, TOUSA contracted with Superior to construct and sell homes directly to Superior. The parties entered into two separate contracts which were amended from time to time:[1] the Oakmont Contract ("Oakmont Contract") and the Regal Oaks Contract ("Regal Oaks Contract") (collectively, the "Contracts"). As the years progressed, both TOUSA and Superior failed. TOUSA filed for bankruptcy protection on January 29, 2008; a year later, on February 20, 2009, an involuntary bankruptcy case was commenced against Superior in the Middle District of Florida, where the Superior Trustee was appointed. *See* Case No. 09-1955-KSJ. As part of its reorganization efforts, TOUSA filed a Third Motion to Reject Certain Unexpired Leases and Executory Contracts [ECF 1248] which sought permission to reject the Oakmont Contract, and a Fourth Motion to Reject

---

[1] For a detailed summary of the various amendments to the Contracts and their relevant dates, *see* Amended Stipulation of Undisputed Facts for Consideration of Hearing on Motion for Summary Judgment on Objection to Claim 7574 of Superior Homes and Investments, Inc. [ECF 9629].

Certain Unexpired Leases and Executory Contracts [ECF 1369] which requested the same relief for the Regal Oaks Contact (collectively, the "Rejection Motions"). Orders granting TOUSA's Rejection Motions were entered by the Court after notice to Superior and a hearing (the "Orders Granting Rejection Motions") [ECF 1399, 1597].

In response to the Orders Granting Rejection Motions, Superior filed four separate proofs of claims seeking damages relating to the rejection of the Contracts [Proofs of Claim 2411, 3479, 4185 and 4193]. On May 17, 2010, Superior filed Claim 7574 seeking $33,840,263.67 (the "Claim") consolidating and superceding its previously filed Claims.  Included in total claim amount is a $2,341,002.02 deposit paid by Superior to TOUSA to purchase properties under the Oakmont Contact and a $1,929,843.75 deposit to purchase properties under the Regal Oaks Contract. In response to Superior's Claim 7574, TOUSA filed a Sixth Omnibus Objection to Claims ("Objection to Claim") [ECF 8950].  Superior filed a Response to the Objection to Claim [ECF 8980], requesting that the Court overrule TOUSA's objection to Claim 7574. TOUSA filed a Motion for Summary Judgment on Objection to Claim 7574 ("Motion for Summary Judgment") [amended at ECF 9518] to which Superior filed an Opposition to Debtor's Amended Motion for Summary Judgment on Objection to Claim 7574 (the "Response") [ECF 9562] and both parties filed an Amended Joint Stipulation of Undisputed Facts (the "Joint Stipulation") [ECF 9629]. On November 11, 2013, the Court heard oral arguments on the matter.[2]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Legal Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy

---

[2] An official Court transcript of the hearing can be found on the case docket [ECF 9651].

proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593 (11th Cir. 1995); *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all reasonable doubts in that party's favor. *See also Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness."  The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988) (internal citations omitted).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

The party opposing a motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings. After the moving party has met its burden of coming forward

with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 324; *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

The record here is clear and supported by documentation attached to TOUSA's Motion for Summary Judgment [ECF 9518], Superior's Response to the Objection to Claim [ECF 8950], Response to the Motion for Summary Judgment [ECF 9562] and the Joint Stipulation [ECF 9629]. The parties agree that "every version of the Regal Oaks and Oakmont Contracts for which the Trustee or Superior has obtained a copy contained identical language regarding the rights of Superior in the event of a Default." Joint Stipulation at 2. While there are additional facts in the Joint Stipulation that are deemed disputed by the parties, by its terms the standard for summary judgment provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id*. at 248. For purposes of the issues ruled on in this Order, there are no genuine issues of material fact and this dispute is ripe for adjudication as a matter of law.

### Relevant Terms of the Contracts

The Contracts (including the various amended versions of both the Oakmont and Regal Oaks

Contracts) contain language that states in the event of a default, Superior as the Buyer:

> in Buyer's sole discretion as a Buyer's sole and exclusive remedy for any such failure or breach, shall be entitled to either (i) terminate this Contract and receive from Escrow Agreement an immediate refund of so much of the Deposit as has not been applied to the Aggregate Purchase Price or (ii) exercise any and all rights and remedies available to Buyer in equity, including, without limitation, the right of specific performance . . . provided, however, **Buyer hereby waives any right it may now or in the future have, at law, in equity or otherwise, to seek or obtain money damages from Seller**. Buyer acknowledges and agrees that Seller was materially induced to enter into this Contract in reliance upon Buyer's agreement to accept the forgoing limitations on its remedies in the case of a failure to perform or breach of this Contract by Seller, and that Seller would not have entered into this Contract but for Buyer's agreement to so limit its remedies. Joint Stipulation at 2 (emphasis added)].

This contract provision (herein the "Limitation Provision") can easily be understood by a plain reading of its language. If there is a breach of the Contracts, Superior has only two remedies available:  either (a) return of the deposits paid that have not been applied to the purchase price or (b) any form of equitable relief (including specific performance). Superior expressly waives any right to monetary damages of any form, including damages connected to any equitable relief sought. TOUSA argues that Superior is not entitled to any monetary relief because it expressly waived such a right in the Limitation Provision, including monetary relief stemming from Superior's election of specific performance as an equitable remedy.  Superior further argues that if it has a right to monetary damages under Florida law (which it believes it does), then it has a claim for monetary damages against TOUSA, notwithstanding the Limitation Provision.

### Statutory Analysis

In determining whether Superior's Claim 7574 may be allowed, the Court first looks to the legal effect of TOUSA's rejection of the Contracts under 11 U.S.C. § 365(g), then moves to 11 U.S.C. § 502(c), which authorizes a bankruptcy court to estimate equitable claims, and finally to the

definition of claims under 11 U.S.C. § 101(5).

As a starting proposition, "rejection [of a contract under § 365] deprives the nondebtor party of a specific performance remedy that it might otherwise have under applicable non bankruptcy law for breach of the contract…" *Collier on Bankruptcy,* ¶ 365.10[1].  Under § 365(g), the Contracts were clearly rejected by TOUSA, and Superior was thus deprived of its specific performance remedy.

The Court next considers 11 U.S.C. § 502(c), which authorizes a bankruptcy court to estimate equitable claims if, but only if, the claim involves a right to payment.  "There shall be estimated for purpose of allowance…(2) any right to payment arising from a right to an equitable remedy for breach of performance." § 502(c)(2). However, "§502(c) presupposes that a 'right to payment' exists in the first instance:  if it does (and only if it does), then '§502(c)(2) authorizes the court to estimate the amount of payment.'" *In re Kilpatrick,* 160 B.R. 560, 565 (Bankr. E.D. Mich. 1993).  TOUSA contends that no right to payment exists in this case due to the underlying unavailability of monetary damages as a result of the Limitation Provision and that as a consequence, an estimation of Superior's equitable claims using §502(c) is inappropriate.

The Court then turns to state law in an attempt to determine whether an alternative remedy is available under applicable non bankruptcy law for breach of contract.[3]  11 U.S.C. §101(5)(B)

---

[3] As a general rule, state law controls in determining whether a right to payment exists. "When the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment,' 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 451, (2007); *see also Butner v. United States,* 440 U.S. 48, 55, (1979), ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.")

states that the term "claim" means a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment…" Taken in conjunction with the Limitation Provision, TOUSA argues that Superior holds no allowable claim arising out of its equitable remedy of specific performance because equitable relief here cannot (by contract) give rise to a right to payment.

> "[R]ights to an equitable remedy for breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" within the Code's contemplation, and would not therefore be dischargeable in bankruptcy,[4] unless such obligations could be translated into a claim for damages if breached. When there is no money damage alternative to state court ordered equitable remedies such as resulting trust, partition in kind, or deed reformation, they do not fit the definition of claim under section 101(5) and, therefore, are not subject to discharge under the Code."

2 Collier ¶ 101.05[5], at 101–47 to 101–48.

By their express terms, the Contracts bar Superior from recovering money damages as a result of any breach by TOUSA. In order to overcome the contractual Limitation Provisions, Superior cites to a Florida case law exception that allows for monetary damages in certain instances where specific performance under a contract is impossible and remedies are contractually limited. Under its analysis of those cases, Superior contends that Florida law allows it to quantify monetary damages based on its specific performance remedy, despite the Limitation Provision in the Contracts. If Florida law creates a right to payment that overcomes the Limitation Provision, it would permit this Court to calculate monetary damages under § 502(c), ultimately creating a claim under § 101(5)(b).

---

[4]Dischargeability is a meaningless question here. TOUSA's Chapter 11 plan is a liquidating plan and no discharge of debt results in a liquidation under 11 U.S.C. § 1141(d)(3). What is at stake here is Superior's entitlement *vel non* to distributions under the plan.

**Florida Law Analysis**

Superior primarily relies on *Schachter v. Krzynwek,* 958 So.2d 1061 (Fla. 4th DCA 2007), where a buyer's remedy for breach of contract was contractually limited to specific performance. In *Schachter*, the court found that the buyer was entitled to monetary damages notwithstanding the contractual limitation in a situation in which the seller intentionally breached the contract to take advantage of a higher purchase offer from a third party. The *Schachter* court held that the contractual limitation of remedies provision did not preclude the buyer from recovering damages in the amount of the difference between the original buyer's offer and the higher price paid by the third party.

The seller agreed to sell his home to the buyer in the *Schachter* case. The parties entered into a contract that limited the buyer's available remedy in the event of a breach to the return of a deposit or specific performance. Before closing under the contract, the seller received and accepted a better offer from a third party. With the sale of the home to the third party, the buyer was left without recourse to pursue the remedy of specific performance. *Id.* at 1064. The *Schachter* court applied a rule articulated by the Florida Supreme Court in *Coppola Enterprises, Inc. v. Alfone,* 531 So.2d 334 (Fla. 1988), "where a vendor is unable to perform a prior contract for the sale of the lands because of a subsequent sale of the same land, he should be held, to the extent of any profit in the subsequent sale, to be a trustee for the prior vendee and accountable to such vendee for any profit." *Coppola Enterprises,* 531 So.2d at 335 (Fla. 1988) (*quoting Gassner v. Lockett,* 101 So.2d 33, 34 (Fla. 1958)). As the *Schachter* court explains:

> The policy behind *Coppola Enterprises* is that "[a] seller will not be permitted to profit from his breach of a contract with a buyer, even absent proof of fraud or bad faith, when the breach is followed by a sale of the land to a subsequent purchaser." 531 So.2d at 335-36. This policy trumps the application of the limitation of remedies

9

clause; the award of damages in this case is part and parcel of the specific performance remedy.

*Schachter*, 958 So.2d at 1065. In effect, *Coppola Enterprises* and *Schachter* create a constructive trust remedy as an extension of a remedy for specific performance where the seller breached in order to sell to a third party at a higher price. Those cases in effect hold that the difference between the original buyer's offer and the higher price paid by the third party is held by the seller in trust for the original buyer.

The facts of the present case are clearly distinguishable from what took place in *Schachter*. Here, one large and sophisticated home builder contracted with another large and sophisticated home builder to develop substantial real property for eventual sale to the general public. As Superior acknowledges in its Response, "TOUSA did not take possession of any of the Oakmont lots and no part of the Oakmont project is property of TOUSA's bankruptcy estate." Response at 4. Since TOUSA never had possession of any of the Oakmont lots, *a fortiori* it could not have sold them at a profit over the pricing under TOUSA's contract with Superior. While TOUSA did take possession of a large number of Regal Oaks lots, it did not dispose of any of these properties to a third party until April 2010, when it was given permission by Order of this Court. *See* Order Pursuant to Section 363(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure Authorizing Tousa Homes, Inc. to Enter into Certain Agreements Relating to Regal Oaks at Old Town (the "Order Approving Regal Oaks Sale") [ECF 5423]. This is not a situation where TOUSA found a new buyer before closing and profited from the sale of the properties for a higher price, all to Superior's detriment. There is no evidence here that TOUSA sold any of the relevant Regal Oaks lots at a higher price than it had contracted to sell the property to Superior, which might have given

rise to a constructive trust under *Coppola Enterprises* and *Schachter.*  Instead, there is ample evidence that the declining housing market and concomitant collapse in real estate prices were driving factors in the failure of these deals and many others like them, leading to the eventual bankruptcies of both TOUSA and Superior. Because TOUSA did not sell any of the real estate lots at a higher price than that set forth in the Superior contract, there is no *res* over which a constructive trust could have been created. This is not the type of situation where the *Coppola Enterprises* rule should apply to overcome the Limitation Provision in the Contracts.

The contract at issue in *Schachter* contained no language explicitly barring money damages as part of any equitable remedy.  Instead, the *Schachter* contract only states in pertinent part under the provision for a seller default that, "if seller fails to perform…all money paid or deposited by buyer pursuant to this contract shall be returned to buyer upon demand, or buyer shall have the right of specific performance." *Schachter*, 958 So.2d at 1063. While the omission of money damages from the list of possible remedies in the *Schachter* contract implies that they are excluded, the Contracts here take a belt-and-suspenders approach and expressly exclude monetary damages in any form, whether they be "in equity or otherwise." Joint Stipulation at 2.  The relevant Eleventh Circuit case law interpreting Florida contract provisions is clear:  "Under Florida law, when the terms of a contract are unambiguous, the Court is bound to give the language therein its plain and ordinary meaning." *Vernon v. Resolution Trust Corp.,* 907  F.2d 1101, 1109 (11th Cir. 1990) (quoting *Quesada v. Director, Federal Emergency Mgmt. Agency,* 577 F.Supp. 695, 697 (S.D. Fla. 1983), *aff'd,* 753 F.2d 1011 (11th Cir. 1985)).  Accordingly, this Court concludes that *Coppola Enterprises* and *Schachter* provide no money damage remedy for Superior as a matter of Florida contract law.

**The Limitation Provision Is neither Unconscionable nor Illusory**

Other than its reliance on the limited exception under the *Coppola Enterprises* rule, Superior fails to identify any other provision of Florida law that can overcome the Limitation Provision and provide an affirmative right to payment so as to give rise to an allowable claim under § 502(c). Instead, Superior challenges the Limitation Provision as unconscionable and illusory, relying first upon Article 2 of the Uniform Commercial Code. UCC Article 2 applies solely to the sale of goods and is entirely inapplicable to a contract for the sale of real property.

Even if Article 2 of the UCC could be used by analogy or as a reference point, a finding of unconscionability under UCC § 2-302, *Fla. Stat.* § 672.302 requires the existence of two conditions precedent, neither of which has been shown to exist here: "Two elements must coalesce before a case for unconscionability is made out. The first is referred to as substantive unconscionability and the other procedural unconscionability." *Fotomat Corp. of Florida v. Chanda*, 464 So. 2d 626, 629 (Fla. 5th DCA 1985) (*citing Khol v. Bay Colony Club Condo., Inc.,* 398 So.2d 865 (Fla. 4th DCA 1981), *review denied,* 408 So. 2d 1094 (Fla. 1981)). In order for this Court to find that the Limitation Provision is unconscionable, evidence must be adduced to demonstrate that the contractual provision "is *both* procedurally and substantively unconscionable." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003). "The procedural component of unconscionability concerns the manner in which the contract was entered. It involves consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms." *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 265 (Fla. 2nd DCA 2004).

Superior fails on the procedural prong. Both parties were large and sophisticated home builders represented by counsel before they entered into the Contracts. Superior has put forth no

evidence that it was in any way inferior in its bargaining power or was unable to understand the meaning of the exact terms of the Contracts. Superior has acknowledged and agreed that TOUSA was materially induced to enter into the Contracts in reliance upon the limitation of remedies available. Joint Stipulation at 2.

Superior also fails to meet the substantive prong for a showing of unconscionability, which requires a determination that the terms are so "outrageously unfair" as to shock the "judicial conscience." *Weston*, 857 So.2d at 285. Nothing about the terms of the Limitation Provision is outrageously unfair. This Court's conscience is neither shocked nor troubled by the fact that sophisticated home builders entered into Contracts which included the Limitation Provision.

Superior also argues that the Limitation Provision should not be considered because it is illusory. "A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor – who says, in effect, 'I will if I want.'" *Princeton Homes, Inc. v. Virone,* 612 F.3d 1324, 1331 (11th Cir. 2010) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.* 162 F.3d 1290, 1311 (11th Cir. 1998)). The Limitation Provision does not alter the nature of the Contracts to such a degree that TOUSA could have walked away at any point without consequences. Rather, it limits the types of remedies available to Superior in the event of a TOUSA breach.

Superior cites to *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437 (Fla. 4th DCA 1985) to demonstrate an example of a case where the remedies available after contract default were so restricted that the developer could breach a condominium sale to a buyer by failing or refusing to perform without any real recourse. The facts in *Ocean Dunes* are readily distinguishable from the present case. In *Ocean Dunes*, specific performance was not an available

13

remedy for the buyer under the contract. The developer could "...opt to sell the unit to any new buyer willing to pay a higher price than the existing contract price, or even fail to show title to be vested in the developer as required by...the agreement, with absolutely no harmful consequences..." *Id.* at 439. This is different from the present situation where the Contracts allow for any equitable remedy available or for the return of deposits not already applied to the purchase price. TOUSA bargained for those terms and Superior agreed, knowing full well the risk that equitable relief could become more difficult as time progressed. TOUSA was bound by the Contracts in a meaningful way and could not willy-nilly choose to do whatever it wanted, at any time, all without remedy or recourse. If TOUSA had attempted to sell the properties to a third party for a higher price (the exact situation in *Ocean Dunes*), Superior had very real and enforceable equitable remedies available in addition to the remedy of return of unapplied deposits. As the *Ocean Dunes* Court states, "There is no question that parties to a contract may agree to limit their respective remedies and that those remedies need not be the same." *Id.* at 439 (citing *Jay Vee Realty Corp. v. Jaymar Acres, Inc.,* 436 So.2d 1053 (Fla. 4th DCA 1983); *Wright & Seaton v. Prescott,* 420 So.2d 623 (Fla. 4th DCA 1982)).

### Superior Could Have Taken Actions to Prevent the Perceived Unjust Result

In a further attempt to escape from the enforceability of the Limitation Provision under Florida contract law and the consequences that follow, Superior asserts that TOUSA's conduct renders the enforcement of the Limitation Provision unjust:

> …Tousa has elected to render its performance impossible, not only by rejection of the Contracts, but also by selling any and all of its interest in the property that was the subject of the Contracts, Tousa asks this Court to find that Superior's remedy is limited only to specific performance. In essence, Tousa seeks to impose a remedy that is not available, and asks this Court to condone the injustice of leaving Superior without any claim. Response at 7.

14

As noted above, TOUSA and Superior were both large and sophisticated home builders with significant industry experience; both were represented by counsel in the deals. A potential default by TOUSA was contractually contemplated and the remedies for a TOUSA breach were contractually limited.

Since TOUSA never bought or took possession of any of the Oakmont properties (and therefore never sold any of them to any other buyer), Superior's assertion that it would be unjust to enforce the Limitation Provision is presumably limited to the Regal Oaks Contract. After both TOUSA and Superior were in bankruptcy proceedings, TOUSA sought express authority from this Court for the sale of the Regal Oaks properties pursuant to its Motion [ECF 5363] to approve the Regal Oaks sale. TOUSA's counsel's certificate of service [ECF 5376] of that Motion indicates that proper service was provided to both Superior and its counsel. A notice of hearing [ECF 5388] set the matter before the Court on April 15, 2010. Following that hearing, an Order Approving Regal Oaks Sale [ECF 5423] was entered. At no time did Superior object to the sale of the properties in an effort to preserve its specific performance remedy or seek relief from the Order approving that sale. The Order is long since final. Counsel for TOUSA represented at the hearing on the Motion to approve the Regal Oaks sale that the Superior Trustee, TOUSA and a group of home owners at the Regal Oaks community had reached a three-way agreement to resolve several issues pertaining to the development. [ECF 5460], Tr. p. 18. This paved the way for the sale of the Regal Oaks properties to go forward. Superior waived its specific performance entitlement when it was put on notice of the Motion to approve the Regal Oaks sale and did not object, and it effectively waived its argument that the Limitation Provision is unjust by allowing the Regal Oaks property to be sold without objection.

While Superior is understandably unhappy that its equitable relief options are limited, Superior voluntarily agreed to the Limitation Provision. No provision of Florida law operates to limit the parties' contractual agreement. No provision of bankruptcy law operates to provide a money damage remedy for breach of specific performance unless "such breach gives rise to a right to payment."[5] Because the Limitation Provision expressly excludes any right seek or obtain money damages at law or in equity, money damages for breach of the Contracts are unavailable.

That is not to say that Superior's Claim 7574 is to be disallowed in its entirety. Although the parties' focus in connection with TOUSA's Objection to Claim 7574 was on the issue of money damages flowing from TOUSA's breach of the Contracts, Superior also asserts in Claim 7574 its alternative remedy to "receive from Escrow Agreement an immediate refund of so much of the Deposit as has not been applied to the Aggregate Purchase Price." Joint Stipulation at 2. At the summary judgment hearing, TOUSA's counsel conceded "that to the extent the deposits were not applied pursuant to the contract…[Superior] would be entitled to a return of those, that would be something the parties would have to work together to figure out what that number was." [ECF 9651], Tr. p. 75, 76. Assuming there are deposit funds still available that have not been applied to the purchase price, an issue as to which there is currently no evidence before the Court, this portion of Claim 7574 could provide the basis of an allowed claim.

## CONCLUSION

The Limitation Provision included in the Contracts between TOUSA and Superior is valid and enforceable in accordance with its terms. Claim 7574 is hereby **DISALLOWED** to the extent that it seeks money damages arising out of TOUSA's breach through its Court-authorized rejection

---

[5] 11 U.S.C. § 101(5)(B).

of the Contracts. The Court makes no determination of the amount allowable, if any, under the deposit provisions of the Contracts and will conduct a status conference on those claims asserted by Superior under Claim 7574 on **January 28, 2014** at **1:30 p.m.** in Courtroom 301, United States Courthouse, 200 East Broward Boulevard, Fort Lauderdale, Florida 33301.

**SO ORDERED.**

###